IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | | |
|---|---|---|
| EARL I. ANZAI, ATTORNEY GENERAL FOR THE STATE OF HAWAII, as *Parens Patriae* for the Natural Persons Residing in Hawaii, and on behalf of the State of Hawaii, its Political Subdivisions and Governmental Agencies, | ) ) ) ) ) ) ) ) | Civil No. 1:98-cv-00792-MWJS-WRP **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION; EXHIBITS A–F** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CHEVRON CORPORATION; CHEVRON U.S.A., INC.; TESORO HAWAII CORPORATION, as Successor-In-Interest to BHP PETROLEUM AMERICAS REFINING INC.; BHP HAWAII INC; SHELL OIL COMPANY; SHELL OIL PRODUCTS COMPANY; TEXACO, INC.; TEXACO REFINING AND MARKETING, INC.; TESORO PETROLEUM CORPORATION; TESORO HAWAII CORPORATION; TOSCO CORPORATION; UNION OIL COMPANY OF CALIFORNIA; and UNOCAL CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................... 1

BACKGROUND .........................................................................................................2

    A.    The *Anzai* Litigation and Settlement Broadly Released Liability. .................2

    B.    The New State Court Cases Seek to Impose Liability on Chevron for Alleged Conduct Stretching Back Decades..................................................5

LEGAL STANDARD...................................................................................................8

ARGUMENT ...............................................................................................................8

I.    The Settlement and Judgment Bar the State Court Claims. .....................................8

    A.    The Settlement and Judgment Apply to All State Court Plaintiffs.................9

    B.    The Settlement and Judgment Apply to All the State Court Claims. ...........10

    C.    The Settlement's Exclusion of "Environmental Claims" Does Not Apply. ...........................................................................................................14

    D.    The Settlement and Judgment Bar the State Court Claims Because They Arise From Alleged Pre-Settlement Conduct. ....................................18

II.    This Court Should Issue Injunctive Relief to Enforce the Judgment......................19

    A.    This Court Retains Jurisdiction to Enforce the Judgment............................20

    B.    The All Writs Act Authorizes an Injunction Consistent With the Anti-Injunction Act. .....................................................................................20

        1.    An injunction is needed to effectuate this Court's Judgment............21

        2.    An injunction is necessary and appropriate in aid of jurisdiction. ..................................................................................23

CONCLUSION...........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anzai v. Chevron Corp.*,
No. 1:98-cv-792 (D. Haw. July 23, 1999) ...................................................*passim*

*Battle v. Liberty Nat'l Life Ins. Co.*,
877 F.2d 877 (11th Cir. 1989) .......................................................................24

*Bennett v. Medtronic, Inc.*,
285 F.3d 801 (9th Cir. 2002) .........................................................................24

*City & County of Honolulu v. Sunoco LP*,
39 F.4th 1101 (9th Cir. 2022) ........................................................................15

*City & County of Honolulu v. Sunoco LP*,
537 P.3d 1173 (Hawai'i 2023).......................................................................16

*Convention Center Authority v. Anzai*,
890 P.2d 1197 (Haw. 1995).............................................................................9

*Flanagan v. Arnaiz*,
143 F.3d 540 (9th Cir. 1998) ..................................................................*passim*

*Golden v. Pacific Maritime Ass'n*,
786 F.2d 1425 (9th Cir. 1986) .......................................................................21

*In re Diet Drugs*,
369 F.3d 293 (3d Cir. 2004) ..........................................................................20

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375 (1994).................................................................................8, 20

*Mendoza v. Hyundai Motor Company, Ltd*,
No. 15-CV-01685-BLF, 2024 WL 37206 (N.D. Cal. Jan. 2, 2024)..................23

*Norfolk S. Corp. v. Chevron U.S.A. Inc.*,
   371 F.3d 1285 (11th Cir. 2004) ........................................................................22

*Reppun v. Board of Water Supply*,
   656 P.2d 57 (Haw. 1982) ................................................................................10

*U.S. ex rel. Barajas v. Northrop Corp.*,
   147 F.3d 905 (9th Cir. 1998) ..........................................................................22

*Wojciechowski v. Kohlberg Ventures, LLC*,
   923 F.3d 685 (9th Cir. 2019) ..................................................................8, 21, 22

CONSTITUTIONAL AND STATUTORY AUTHORITIES

Hawaiʻi Const. Article VIII, § 1................................................................................9

28 U.S.C. § 1651 ..................................................................................................8, 20

28 U.S.C. § 2283 ............................................................................................8, 20, 21

Honolulu Charter § 7-105 ........................................................................................10

HRS § 54-11.............................................................................................................10

HRS § 54-16.............................................................................................................10

HRS § 54-27.............................................................................................................10

HRS § 54-31.............................................................................................................10

HRS § 261-1...............................................................................................................9

HRS § 480-2....................................................................................................3, 6, 11

**INTRODUCTION**

Chevron respectfully moves this Court to enforce the settlement agreement that the State of Hawaiʻi signed decades ago to resolve claims alleging the deceptive manufacture, marketing, and sale of petroleum products. This Court expressly incorporated into its Final Judgment the terms of that settlement agreement and retained jurisdiction to enforce it. Now, contrary to that Judgment, Hawaiʻi has filed suit in state court seeking to hold Chevron (and others) liable for what it claims is the deceptive manufacture, marketing, and sale of petroleum products, all of which fall squarely within the terms of the settlement release. Accordingly, this Court should protect and effectuate its Judgment by enjoining the State's new state-court lawsuit as impermissibly arising out of pre-settlement conduct. Such relief is provided both by federal law and the State's express agreement in the settlement.

In addition, the City and County of Honolulu, the Honolulu Board of Water Supply, and the County of Maui have filed state-court lawsuits against Chevron (and others) that are functionally identical to the State's new complaint. While those political subdivisions and agencies were not named parties to the settled case before this Court, the State brought that now-settled action expressly on behalf of the State's political subdivisions and agencies. As a result, the City and County of Honolulu, the Honolulu Board of Water Supply, and the County of Maui are bound by this Court's Judgment, and their claims in state court should be similarly barred.

1

In sum, the State of Hawai'i, the City and County of Honolulu, the Honolulu Board of Water Supply, and the County of Maui are in violation of this Court's Final Judgment, having filed lawsuits in state court arising out of alleged acts and speech pre-dating the 2002 release executed in this action. As a result, those state-court complaints should be enjoined. This Court should order the Plaintiffs in those cases to dismiss their present complaints as against Chevron and file amended Complaints (if they so choose) that do not contain any allegations regarding pre-settlement conduct or speech. At minimum, the Court should grant injunctive relief barring the State Court Plaintiffs from pursuing claims based on allegations pre-dating the 2002 Settlement.

## BACKGROUND

### A.    The *Anzai* Litigation and Settlement Broadly Released Liability.

In the late 1980s, the Hawai'i Attorney General's office began to investigate whether oil companies were engaged in anticompetitive and deceptive trade practices. Ex. A, Second Amended Complaint, ¶¶ 58-62, *Anzai v. Chevron Corp.*, No. 1:98-cv-792 (D. Haw. July 23, 1999) (ECF 166) (hereinafter "*Anzai* Complaint"). In 1998, Hawai'i's Attorney General sued Chevron (and others) on behalf of Hawai'i's residents, the State itself, and the State's political subdivisions and agencies. ¶ 2. According to the Complaint, Chevron deceived consumers by justifying higher "fuel prices in Hawaii as a function of higher Hawaii operating

costs." ¶¶ 64-69. The Complaint thus asserted price-fixing claims under state and federal antitrust statutes, as well as claims for unfair and deceptive trade practices under HRS § 480-2. ¶¶ 83-103.

After four years of aggressive litigation, the parties settled and moved for court approval of the Settlement Agreement. *See* Motion for Approval of Settlement Agreement, *Anzai v. Chevron Corp.*, No. 1:98-cv-792 (D. Haw. March 8, 2002) (ECF 1176). The Court held a fairness hearing and approved the Settlement, which involved substantial monetary payments and other concessions from Chevron and the other defendants. Ex. B, Final Judgment, *Anzai v. Chevron Corp.*, No. 1:98-cv-792 (D. Haw. April 30, 2002) (ECF 1188).

The Settlement releases "Settled Claims" on behalf of a wide category of releasors: "the State of Hawaii and its departments, agencies, divisions and other entities," the "legal representatives, predecessors, successors, and assigns of Plaintiffs," and "all others on whose behalf" the Attorney General brought the lawsuit "as identified in" the complaint. Ex. C, Settlement Agreement, ¶ 1.12, *Anzai v. Chevron Corp.*, No. 1:98-cv-792 (D. Haw. April 30, 2002) (ECF 1188). The Attorney General brought the lawsuit "both as *parens patriae* for the natural persons residing in the State of Hawaii and on behalf of the State of Hawaii, its political subdivisions and governmental agencies." Ex. A, *Anzai* Complaint ¶ 2.

The scope of the "Settled Claims" released on behalf of these parties is both clear and broad. It applies to "all claims, causes of action and liabilities of whatever nature or origin, known and unknown, that have been, could have been, or could be asserted against" Chevron "that arise from any act or acts occurring prior to the date of the Settlement Agreement" (April 30, 2002, *see* Ex. C, Settlement Agreement ¶¶ 1.15, 3.7), as long as they "relate to," among other things, "the pricing, sale, purchase, manufacture, exchange, marketing, delivery, and/or offering of gasoline, diesel, jet fuel and/or any other petroleum product or products." Ex. B, Final Judgment at 3-4; Ex. C, Settlement Agreement ¶ 1.15. The only limit on the breadth of the release is that the category of "'Settled Claims' does not include claims substantially unrelated to . . . deceptive trade practices," among other things. Ex. B, Final Judgment at 3-4; Ex. C, Settlement Agreement ¶ 1.15.

The parties agreed that this Court should retain jurisdiction "to order injunctive relief for the purposes of enforcing, implementing, administering, construing and interpreting" the Settlement Agreement. ¶ 3.6. The Judgment this Court entered "dismissed with prejudice" all Released Defendant Parties, including Chevron, and provided that "all claims in this lawsuit are dismissed with prejudice as to the Released Defendant Parties." Ex. B, Final Judgment ¶ 8; *see also* Ex. C, Settlement Agreement ¶ 3.5. The Judgment also expressly provided that "[t]his Court shall retain continuing jurisdiction over the Settlement Amount, the Settling

Parties and the Settlement Claimants for the purposes of enforcing, implementing, administering, construing and interpreting the Settlement Agreement." Ex. B, Final Judgment ¶ 11; Ex. C, Settlement Agreement ¶ 3.6.

**B.    The New State Court Cases Seek to Impose Liability on Chevron for Alleged Conduct Stretching Back Decades.**

In 2020, Maui and Honolulu sued a group of energy companies—including Chevron—alleging a "multi-front effort to conceal and deny" the link between fossil fuels and climate change. *See* Ex. D, Complaint, *County of Maui v. Sunoco LP*, 2CCV-20-283 (Oct. 12, 2020) (ECF 1) ("Maui Complaint"); Complaint, *City and County of Honolulu v. Sunoco LP*, 1CCV-20-380 (March 9, 2020) (ECF 1). The Honolulu Board of Water Supply later joined the Honolulu suit. *See* Ex. E, First Amended Complaint, *City and County of Honolulu v. Sunoco LP*, 1CCV-20-380 (March 22, 2021) ("Honolulu Complaint") (ECF 45). In 2025, the State of Hawai'i filed a materially identical lawsuit. *See* Ex. F, Complaint, *State of Hawai'i v. BP P.L.C.*, 1CCV-25-717 (May 1, 2025) (ECF 1) ("Hawai'i Complaint").

The State of Hawai'i, County of Maui, and the Honolulu entities (collectively the "State Court Plaintiffs") allege that the Defendants obscured the climatic effects of petroleum products through deceptive practices dating back to the 1960s. *See, e.g.*, Ex. E, Honolulu Complaint ¶¶ 12, 136 (alleging Defendants engaged in a "coordinated campaign of disinformation and deception" designed to "obscure the connection between their products and global warming"); Ex. D, Maui Complaint

5

¶¶ 12, 149 (same); Ex. F, Hawai'i Complaint ¶¶ 16, 156 (same). The State Court Plaintiffs seek damages for various common-law torts arising from what the State calls "a decades-long campaign of deception" relating to the sale and marketing of petroleum products. *See* Ex. F, Hawai'i Complaint ¶ 1. And Hawai'i seeks damages under the same deceptive-trade-practices statute, HRS § 480-2, that the Attorney General asserted in the *Anzai* litigation. *Id.* ¶¶ 407-420.

The State Court Plaintiffs assert claims based on two basic types of allegedly deceptive conduct (the "State Court Claims"). *First*, they allege that Chevron and others "affirmatively deceiv[ed] consumers and the public about the climatic dangers of fossil fuels" from the late 1980s until the late 1990s by denying the link between climate change and fossil fuels. Ex. F, Hawai'i Complaint ¶¶ 104-128; *see also* Ex. E, Honolulu Complaint ¶¶ 90-105; Ex. D, Maui Complaint ¶¶ 99-115. *Second*, the Plaintiffs allege that since the late 1990s Chevron and others have abandoned efforts to deny the climatic effects of fossil fuels and have instead engaged in "greenwashing"—that is, "promoting themselves as sustainable energy companies" while continuing "to ramp up fossil fuel production" and "to invest in new fossil fuel development." Ex. E, Honolulu Complaint ¶¶ 140-47; Ex. D, Maui Complaint ¶¶ 152-59; Ex. F, Hawai'i Complaint ¶¶ 160-73.

On February 2, 2024, the Defendants in the *Honolulu* action filed a motion for summary judgment based on the statute of limitations before discovery started in

earnest. *See* Def. Mot. for Summ. J., *City and County of Honolulu v. Sunoco LP*, 1CCV-20-380 (Feb. 11, 2025) (ECF 1536). That motion asserted both that the statute of limitations barred the bulk of Honolulu's claims and that Honolulu could have (but failed to) raise its claims earlier. *Id.* at 1. In particular, the motion highlighted that Plaintiffs' complaint "came almost two decades after [Honolulu's] then-Mayor Harris claimed *in 2001* that 'the paid propaganda and phony science of the . . . energy industr[y]' had led President Bush to deny 'the causal link between CO2 pollution and global warming,' which (according to Honolulu's Mayor) had already begun and would have a 'catastrophic impact' on Hawai'i." *Id.* at 1 (emphasis added).

On January 2, 2026, the *Honolulu* Circuit Court denied summary judgment, solely on the basis that "the Court cannot conclude continued discovery efforts would be futile." Order Denying Mot. for Summary Judgment, 2, *City and County of Honolulu v. Sunoco LP*, 1CCV-20-380 (Jan. 2, 2026) (ECF 2279). The court did not rule on "any of the other arguments raised in the briefs." *Id.* Accordingly, discovery into several decades' worth of alleged conduct and statements is now poised to begin for the first time.

## LEGAL STANDARD

A federal district court has inherent authority to issue orders necessary "to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 380 (1994). That authority includes "ancillary jurisdiction" to enforce the terms of its judgment if the court has retained jurisdiction. *Id.* at 381. When a court's judgment incorporates the terms of a settlement, those terms become enforceable as part of the judgment. *See Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 690 (9th Cir. 2019). The All Writs Act—subject to the limitations of the Anti-Injunction Act—authorizes federal courts to enjoin state-court proceedings if "necessary in aid of [the federal court's] jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283; 28 U.S.C. § 1651; *see also Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998).

## ARGUMENT

### I.    The Settlement and Judgment Bar the State Court Claims.

By its plain terms, the *Anzai* Settlement (incorporated into the Final Judgment) bars the State Court Claims that relate to alleged pre-settlement conduct. All of the State Court Plaintiffs fall within the definition of parties whose claims were released in *Anzai*, because the release applies to the State and all of its political subdivisions. And the Settlement's definition of released claims covers all of the State Court Claims because they all relate to alleged deceptive practices involving petroleum products and all arise from conduct before the Settlement's effective date.

8

A.    **The Settlement and Judgment Apply to All State Court Plaintiffs.**

As an initial matter, the Settlement squarely applies to all the State Court Plaintiffs. Anzai sued on behalf of the people of Hawaiʻi, the State itself, and the State's "political subdivisions and governmental agencies." Ex. A, *Anzai* Complaint ¶ 2. And the Settlement Agreement releases claims on behalf of "Plaintiffs," defined in relevant part as "the State of Hawaii and its departments, agencies, divisions and other entities," the "legal representatives, predecessors, successors, and assigns of Plaintiffs," as well as "all others on whose behalf" the Attorney General brought the lawsuit "as identified in" the complaints. Ex. B, Final Judgment at 3; Ex. C, Settlement Agreement ¶¶ 1.12, 3.7.

The State of Hawaiʻi is clearly a Plaintiff whose claims were released under the Settlement Agreement. And because Hawaiʻi law treats counties and municipalities as political subdivisions of the State, the City and County of Honolulu and the County of Maui are also "Plaintiffs" whose claims were released. *See* Hawaiʻi Const. Art. VIII, § 1; HRS § 261-1; *Convention Center Authority v. Anzai*, 890 P.2d 1197, 1199 (Haw. 1995). The Honolulu Board of Water Supply is likewise a covered political subdivision because it is "a duly authorized department of the City and County of Honolulu." *Reppun v. Board of Water Supply*, 656 P.2d 57, 60 n.1 (Haw. 1982); *see* HRS §§ 54-11 to 54-34.[1]

---

[1] In addition, the Board falls within the category of entities whose claims were

B.      The Settlement and Judgment Apply to All the State Court Claims.

All of the State Court Claims fall squarely within the definition of released

claims. The *Anzai* Settlement released Chevron from liability for "all claims" "of

whatever nature or origin, known and unknown, that have been, could have been, or

could be asserted" against the company "that arise from any act or acts occurring

prior to the date of the Settlement Agreement and that relate to" (among other things)

the "sale," "manufacture," and "marketing" of "gasoline, diesel, jet fuel and/or any

other petroleum product or products," as long as the claims are not "substantially

unrelated to" . . . "deceptive trade practices." Ex. B, Final Judgment at 3-4; Ex. C,

Settlement Agreement ¶ 1.15.

The released claims were not limited to the antitrust theories that animated the

*Anzai* litigation. On the contrary, the *Anzai* Settlement provided both sides a release

of all claims "of whatever nature or origin, known and unknown" at the time of the

settlement. *Id.* Although the Settlement Agreement carves out certain "substantially

---

released under the Settlement Agreement because the Board is one of the "legal
representatives . . . and assigns of" Honolulu County. Ex. B, Final Judgment at 3;
Ex. C, Settlement Agreement ¶ 3.7. The Board acts as Honolulu County's assigned
agent and legal representative regarding water affairs—including suing and being
sued in that capacity, HRS § 54-31, and exercising the county's power to "acquire
and take" property "in the name of the county," HRS § 54-27; *see also* Honolulu
Charter § 7-105 (giving the Board "the authority to acquire [real property] by
eminent domain, purchase, lease or otherwise, in the name of the city"); HRS § 54-
16 (providing that by default Honolulu County Attorney represents Board in
litigation).

10

unrelated" claims, that carve-out is narrow: it covers only claims that are "substantially unrelated to," among other things, "deceptive trade practices." *Id.*

All of the State Court Claims are substantially related to alleged "deceptive trade practices." They all depend on the overarching theory that Defendants "mounted a decades-long campaign of deception to discredit the scientific consensus on climate change," thereby "sustaining the market for fossil fuels," which in turn supposedly "accelerated global warming" by increasing worldwide carbon emissions and thereby "brought about devastating climate change impacts to Hawaiʻi." Ex. F, Hawaiʻi Complaint ¶¶ 1-2; *see also* Ex. E, Honolulu Complaint ¶¶ 1-3; Ex. D, Maui Complaint ¶¶ 1-4.

Hawaiʻi packages that overarching theory into claims for (1) negligence, (2) public nuisance, (3) private nuisance, (4) trespass, (5) harm to public trust resources, (6) civil aiding and abetting (against co-defendant API only), (7) unfair or deceptive acts or practices under HRS § 480-2, and (8) strict liability for failure to warn. Ex. F, Hawaiʻi Complaint ¶¶ 327-448. Although these causes of action have differing elements under state law, they all share the same common overarching theory: that Chevron's sale and marketing of fossil fuels was a deceptive trade practice causing climate change.

As to negligence, Hawaiʻi claims that the Defendants breached their "duty of care when they advertised, promoted, and/or sold fossil fuel products" without

11

"warnin[g] of the risk of harm associated with fossil fuel products" and "by waging a years-long deceptive marketing and public relations campaign to discredit climate science." ¶¶ 334-35. Similarly, Hawaiʻi bases its claims for nuisance, trespass, and harm to public trust resources on the Defendants' alleged "campaign of deception," which allegedly "created, caused, contributed to, and assisted in creating" "Climate-Related Harms." ¶¶ 343 (public nuisance), 357 (private nuisance), 372 (trespass), 389 (public trust). Hawaiʻi's claim for deceptive trade practices rests on allegations of Defendants' deceptive "marketing, advertising, and promotion of fossil fuel products." ¶ 410. And Hawaiʻi bases its failure-to-warn claim on allegations that "fossil fuel products" Defendants "advertised, promoted, and/or sold . . . were not reasonably safe . . . because they lacked adequate warnings and instructions" due to a "decades-long campaign of intentional deception." ¶¶ 435, 448.

The *Honolulu* and *Maui* complaints, which are nearly identical to each other, assert claims for (1) public nuisance, (2) private nuisance, (3) strict liability for failure to warn, (4) negligent failure to warn, and (5) trespass. Ex. D, Maui Complaint ¶¶ 204-55; Ex. E, Honolulu Complaint ¶¶ 155-207. Like the causes of action asserted in Hawaiʻi's complaint, the plaintiffs insist that these causes of action also share the same common overarching theory that Chevron deceived the public in selling and marketing fossil fuels.

12

The nuisance claim alleges Defendants "created, contributed to, and/or assisted, and/or were a substantial contributing factor in the creation of [a] public nuisance by . . . promoting the sale and use of fossil fuel products," "misrepresenting and casting doubt on the integrity of scientific information related to climate change," and campaigning "against the regulation of their fossil fuel products." Ex. D, Maui Complaint ¶¶ 207, 216; Ex. E, Honolulu Complaint ¶¶ 158, 167.

The failure-to-warn claims (strict liability and negligence) allege Defendants deceived the public through "marketing" and "public relations materials" that denied risks allegedly associated with fossil fuels and by "introducing fossil fuel products into the stream of commerce"—that is, by manufacturing, marketing, and selling fossil fuel products—without adequate warnings. Ex. D, Maui Complaint ¶¶ 228-29, 240-41; Ex. E, Honolulu Complaint ¶¶ 180-81, 192-93.

Finally, Maui and Honolulu ground their trespass claims on allegations that the Defendants "caused flood waters, extreme precipitation, saltwater, and other materials" to enter the Plaintiffs' property "by distributing, analyzing, recommending, merchandising, advertising, promoting, marketing, and/or selling fossil fuel products" without warning consumers about the risk. Ex. D, Maui Complaint ¶ 249; Ex. E, Honolulu Complaint ¶ 201.

\*        \*        \*

13

In sum, the allegations in all three complaints make clear that Plaintiffs maintain that all of the State Court Claims against Chevron are substantially related to allegedly "deceptive trade practices" involving "the pricing, sale, purchase, manufacture, exchange, marketing, delivery, and/or offering of gasoline, diesel, jet fuel and/or any other petroleum product or products." Ex. C, Settlement Agreement ¶ 1.15. Accordingly, the *Anzai* Settlement squarely precludes these claims. *See* Ex. B, Final Judgment at 5-7.

### C. The Settlement's Exclusion of "Environmental Claims" Does Not Apply.

To be sure, the preclusive effect of the *Anzai* Settlement is not boundless. As noted above, the Settlement Agreement does not preclude claims that are "substantially unrelated" to "deceptive trade practices." Ex. C, Settlement Agreement § 1.15. As an "example" of unrelated claims that are beyond the scope of the settlement release, the Agreement lists "environmental claims brought by the Plaintiffs." *Id.* But the State Court Claims at issue here do not fall within that exclusion because—as the State Court Plaintiffs have insisted—they involve allegations of deceptive trade practices related to the marketing, manufacture, and sale of fossil fuels. Accordingly, the exclusion of "environmental claims" does not apply to the State Court Claims.

The *Anzai* Settlement lists "environmental claims" as an "example" of claims "substantially unrelated" to "deceptive trade practices." Ex. C, Settlement

14

Agreement ¶ 1.15. Thus, to fall within the exclusion, any claim—environmental or not—must be substantially unrelated to deceptive trade practices. Here, *all* of the State Court Claims are—by Plaintiffs' own admissions—substantially related to alleged deceptive trade practices.

The State Court Plaintiffs have themselves argued repeatedly and consistently that their claims are based on alleged "deceptive trade practices." After Chevron removed the State Court lawsuits to federal court based on federal preemption, Plaintiffs successfully obtained a remand to state court by telling the federal courts that the lawsuits do "not seek to limit extraction of fossil fuels or otherwise regulate greenhouse gas emissions" but to recover damages related to Defendants' alleged "tortious campaign to mislead and conceal the dangers of their fossil-fuel products." Maui's Mot. to Remand, 6, *County of Maui v. Sunoco LP*, 1:20-cv-470 (Nov. 25, 2020) (ECF 74); Honolulu's Mot. to Remand, 7, *City & County of Honolulu v. Sunoco LP*, 1:20-cv-163 (Sep. 11, 2020) (ECF 116). The federal courts granted Plaintiffs' motions to remand on that basis, holding that these cases are not about regulating pollution, but rather are "about whether oil and gas companies misled the public about dangers from fossil fuels." *City & County of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1113 (9th Cir. 2022).

After remand, Chevron renewed its federal-law preclusion and preemption arguments in state court in Chevron's motions to dismiss. Here again, Plaintiffs

15

opposed dismissal by telling the state courts that their lawsuits are about purportedly deceptive conduct. For example, Honolulu opposed Chevron's motion to dismiss by arguing that "the specific conduct that triggers Defendants' liability is their use of deception to promote the unrestrained consumption of their fossil fuel products . . . . As pleaded then, this lawsuit does not—and cannot possibly—regulate pollution of any kind." Honolulu's Opp'n to Mot. to Dismiss, 9, *City & County of Honolulu v. Sunoco LP*, 1CCV-20-380 (March 22, 2021) (ECF 375); Maui's Opp'n to Mot. to Dismiss, 39, *County of Maui v. Sunoco LP*, 2CCV-20-283 (June 24, 2022) (ECF 456) (same).

On appeal from the trial court's order denying the motion to dismiss, Plaintiffs told the Hawaiʻi Supreme Court that "the only problem this lawsuit seeks to address is the use of deception to promote fossil fuel products," and that Plaintiffs seek to hold Defendants "liable under Hawaiʻi common law for misleading consumers and the public for decades about the climate impacts of fossil fuels." Honolulu's Answering Brief, 1, 26, *City & County of Honolulu v. Sunoco LP*, CAAP-22-429 (Jan. 18, 2023) (ECF 65); Transfer Order, SCAP-22-429 (ECF 7) (transferring case as briefed to Hawaiʻi Supreme Court). And here again those arguments have been successful so far, persuading the state courts not to dismiss—at the pleadings stage—Plaintiffs' lawsuits based on federal preemption. *City & County of Honolulu v. Sunoco LP*, 537 P.3d 1173, 1196 (Hawaiʻi 2023) (characterizing Plaintiffs' claims

16

as challenging "the promotion and sale of fossil-fuel products without warning and abetted by a sophisticated disinformation campaign" (internal quotation marks omitted)); Order Denying Mot. to Dismiss, 7, *City & County of Honolulu v. Sunoco LP*, 1CCV-20-380 (March 29, 2022) (ECF 618) (denying preemption argument for lack of "concrete showing that a damages award in this case would somehow regulate emissions").

And most recently, in successfully opposing Chevron's early, pre-discovery motion for summary judgement on the ground that the claims are barred by the statute of limitations, Plaintiffs argued that they are "suing Defendants to 'challenge the promotion and sale of fossil-fuel products without warning and abetted by a sophisticated disinformation campaign.'" Honolulu's Opp'n to Mot. for Summ. J., 1, *City & County of Honolulu v. Sunoco LP*, 1CCV-20-380 (May 9, 2025) (ECF 1724). And, again quoting the Hawai'i Supreme Court, Plaintiffs argue that "this is a traditional tort case alleging Defendants misled consumers and should have warned them about the dangers of using their products." *Id*. at 3.

In short, the State Court Plaintiffs have continuously argued their claims are about deceptive trade practices. The State Court Plaintiffs should not now be heard to argue that their claims are "substantially unrelated" to "deceptive trade practices."

17

**D.**    **The Settlement and Judgment Bar the State Court Claims Because They Arise From Alleged Pre-Settlement Conduct.**

By releasing claims based on alleged deception that occurred before April 2002, the *Anzai* Settlement and Judgment eviscerate the State Court Claims. All of the State Court Claims rest, in substantial and essential part, on alleged deception that supposedly occurred before April 2002. In all of the State Court Complaints, the theory of the case is that Chevron engaged in decades of deceptive practices starting before 2002 that caused *cumulative* global warming. For example, the State of Hawaiʻi alleges a "decades-long campaign of deception" that "had, and continues to have, the purpose and effect of inflating and sustaining the market for fossil fuels, which drove up [greenhouse gas] emissions, accelerated global warming, and brought about devastating climate change impacts to Hawaiʻi." Ex. F, Hawaiʻi Complaint ¶¶ 1-2. As a result, it would be impossible for the State Court Complaints in their current form to proceed in a manner consistent with the Anzai Settlement's pre-2002 release.

Most notably, the State Court Plaintiffs' theory of climate-change denial relies entirely on alleged conduct from the 1980s and 1990s. *See, e.g.,* Ex. F, Hawaiʻi Complaint ¶¶ 104-128; Ex. E, Honolulu Complaint ¶¶ 90-105; Ex. D, Maui Complaint ¶¶ 99-115. The State alleges a "pivot . . . to affirmatively deceiving consumers and the public" in the period "between 1988 and 1992," citing alleged statements and conduct by the defendants in the early 1990s. *Id*. ¶ 104. And the State

18

admits Defendants "shifted away from denying anthropogenic warming" in the late 1990s. *Id.* ¶ 128. The Settlement Agreement thus precludes all of the State Court Claims to the extent they are based on the theory that Chevron affirmatively denied anthropogenic climate change.

As to Chevron specifically, the State Court Complaints rely almost entirely on pre-settlement allegations, invoking advertising by Chevron "[o]ver the last several decades" and a patent Chevron obtained in 1974. Ex. F, Hawai'i Complaint ¶¶ 36, 141; *see also* Ex. E, Honolulu Complaint ¶¶ 23, 120; Ex. D, Maui Complaint ¶¶ 22, 133. And Hawai'i highlights Chevron's alleged participation in organizations engaged in purportedly deceptive conduct beginning in the 1980s, Ex. F, Hawai'i Complaint  ¶¶ 119, 123, and advertisements by Chevron in 1970 and 1996, *id.* ¶¶ 202, 237. . Without this alleged conduct stretching back decades and pre-dating the 2002 settlement, the few allegations as to Chevron's more recent speech and conduct do not state coherent or actionable claims.

## II.    This Court Should Issue Injunctive Relief to Enforce the Judgment.

To enforce the Judgment, this Court should order the State Court Plaintiffs to dismiss their present Complaints as against Chevron and file amended Complaints (if they so choose) that do not contain allegations regarding pre-settlement conduct or speech. The State Court Plaintiffs should be specifically enjoined from pursuing their "climate deception" theory that rests entirely on alleged conduct that ended in

the 1990s. And at a minimum, the Court should enjoin the State Court Plaintiffs from pursuing claims based on allegations pre-dating the 2002 Settlement.

## A.    This Court Retains Jurisdiction to Enforce the Judgment.

A federal court has authority to enforce a settlement agreement if it (1) incorporated the agreement into its dismissal order or (2) expressly retained jurisdiction to enforce it. *Kokkonen*, 511 U.S. at 381. Here, the Court did both: It expressly incorporated the terms of the Settlement Agreement into its final judgment and appended the Agreement as an exhibit, and it also "retain[ed] continuing jurisdiction over the Settlement Amount, the Settling Parties and the Settlement Claimants for the purposes of enforcing, implementing, administering, construing and interpreting the Settlement Agreement." Ex. B, Final Judgment at 2-5, 7.

## B.    The All Writs Act Authorizes an Injunction Consistent With the Anti-Injunction Act.

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). That authority is limited by the Anti-Injunction Act, which prohibits federal courts from enjoining state-court proceedings except where "expressly authorized by Act of Congress, or where necessary in aid of [the federal court's] jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "[I]f an injunction falls within one of the Anti-Injunction Act's three exceptions, the All-Writs Act provides the positive authority

20

for federal courts to issue injunctions of state court proceedings." *In re Diet Drugs*, 369 F.3d 293, 305 (3d Cir. 2004); *see also Flanagan*, 143 F.3d at 545.

### 1. An injunction is needed to effectuate this Court's Judgment.

The Anti-Injunction Act allows this Court to issue injunctive relief against state proceedings to "effectuate its judgments." 28 U.S.C. § 2283. That includes the authority to enjoin state-court proceedings that violate the settlement terms this Court incorporated into its final judgment. And that is exactly what Chevron is requesting here: This Court approved the *Anzai* Settlement and incorporated its terms into a final judgment. Thus, because the State Court Plaintiffs are seeking to press claims in state court that violate the Settlement Agreement, this Court should enjoin them to effectuate its final judgment.

There is no question this Court has the power to issue injunctive relief to enforce a settlement agreement when it "has expressly retained jurisdiction to construe and enforce [that] agreement." *Flanagan*, 143 F.3d at 546. The Anti-Injunction Act "allows federal courts to enjoin state court proceedings to protect the res judicata effect of their judgments." *Golden v. Pacific Maritime Ass'n*, 786 F.2d 1425, 1427 (9th Cir. 1986). And "when a court dismisses an action because of a settlement, the settlement and release of claims . . . become a final judgment and not simply a contract entered into by private parties." *Wojciechowski*, 923 F.3d at 690.

The terms of the agreement—not "general principles of claim preclusion"—thus define the judgment's preclusive effect. *Id.* at 689.

The Ninth Circuit has made clear that "the best evidence of [the parties'] intent is . . . the settlement agreement itself . . . as interpreted according to traditional principles of contract law." *Id.* at 690 (quoting *Norfolk S. Corp. v. Chevron U.S.A. Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004)). Parties can thus limit the preclusive effect of a judgment by reserving claims. *See U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 911 (9th Cir. 1998). Or they can settle and ask the court to approve a broad release of related claims. *See Flanagan*, 143 F.3d at 542. Either way, when a federal court makes the settlement terms a part of the court's judgment, it will enforce the terms as part of the judgment. *See Wojciechowski*, 923 F.3d at 691.

Here, the terms of the Settlement—and thus the Judgment that incorporated it—are broad. The Settlement released Chevron from liability for all claims arising from pre-settlement conduct related to (among other things) "deceptive trade practices" involving the "sale" or "marketing" of petroleum products. Ex. B, Final Judgment at 3-4; Ex. C, Settlement Agreement ¶ 1.15. As discussed above, all of the State Court Claims fall squarely within that definition. The All Writs Act and the Anti-Injunction Act thus authorize this Court to enforce the judgment by enjoining the State Court Plaintiffs from continuing to assert claims released by the *Anzai* Settlement. *See, e.g.*, *Flanagan*, 143 F.3d at 546. Accordingly, the Court should

22

enjoin the State Court Plaintiffs to dismiss their current Complaints against Chevron because they seek to establish liability based on pre-settlement allegations, and bar them from pursuing claims based on pre-settlement conduct or speech.

### 2. An injunction is necessary and appropriate in aid of jurisdiction.

The "necessary in aid of jurisdiction" exception to the Anti-Injunction Act independently allows a federal court to issue an injunction when a pending state case would impair the court's continuing authority to interpret and enforce its prior judgments. *See Flanagan*, 143 F.3d at 545. That is precisely the situation here.

When this Court approved the *Anzai* Settlement and incorporated its terms into its final judgment, it expressly stated that it retained jurisdiction to enforce the agreement. Ex. B, Final Judgment at 7. When a district court retains jurisdiction to enforce a settlement, that jurisdiction is presumptively "exclusive." *Flanagan*, 143 F.3d at 545; *see also Mendoza v. Hyundai Motor Company, Ltd*, No. 15-CV-01685-BLF, 2024 WL 37206, at *5 (N.D. Cal. Jan. 2, 2024). Here, the Court gave no indication that its retention of jurisdiction was anything other than exclusive. Accordingly, this Court is the only proper forum to resolve whether the *Anzai* judgment precludes the State Court Claims. Having "a state court construing what the federal court meant in the judgment" would "frustrate the federal district court's purpose" in retaining jurisdiction. *Flanagan*, 143 F.3d at 545.

23

Allowing the State Court Claims to proceed would require Chevron to assert the *Anzai* Settlement as a defense in state court, and the state court would then have to interpret the agreement to determine whether it bars the State Court Claims. That would undermine this Court's exclusive jurisdiction to interpret the Settlement. That is especially true because the state court's interpretation could have preclusive effect, which would not only intrude on this Court's exclusive jurisdiction but could leave this Court powerless to interpret the Agreement and to vindicate its own judgment— precisely the harm the "in aid of jurisdiction" exception is intended to prevent. *See Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989). It would render this Court's exclusive authority to enforce its prior judgment effectively "nugatory." *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 806 (9th Cir. 2002).

## CONCLUSION

Chevron respectfully requests that the Court grant injunctive relief to enforce the Settlement and Final Judgment. In particular, the Court should:

- Enjoin the State Court Plaintiffs to dismiss the current State Court Complaints against Chevron, which rely substantially on allegations of deceptive speech and conduct that occurred on or before April 30, 2002;

- Enjoin the State Court Plaintiffs from filing any amended complaint or pursuing any claim against Chevron that relies on allegations of deceptive speech or conduct regarding the sale, marketing, or promotion of petroleum products that occurred on or before April 30, 2002;

- Enjoin the State Court Plaintiffs from pursuing claims based on the theory that Chevron engaged in denial of anthropogenic global warming, which they allege ended in the late 1990s.

24

DATED:  January 30, 2026
Honolulu, Hawaiʻi

Respectfully submitted,

/s/  *Steven K. S. Chung*

Steven K. S. Chung
Anthony F. T. Suetsugu
IMANAKA ASATO, LLLC
745 Fort Street Mall, 17th Floor
Honolulu, HI 96813
Telephone:  (808) 521-9500
Facsimile:   (808) 541-9050
Email: schung@imanaka-asato.com
            asuetsugu@imanaka-asato.com

Anthony J. Dick*
Christopher S. Dinkel*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001.2113
Telephone: (202) 879-3939

Theodore J. Boutrous Jr.*
William E. Thomson*
GIBSON DUNN
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  (213) 229-7000

Caroline N. Mitchell*
Jerry C. Ling (8260)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939

Andrea E. Smith*
GIBSON DUNN
811 Main Street, Suite 3000
Houston, TX 77002-6117
Telephone:  (346) 718-6600

David Phillips*
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Telephone: (858) 314-1200

Joshua D. Dick*
GIBSON DUNN
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:  (415) 393-8200

Attorneys for Defendants
CHEVRON CORPORATION and CHEVRON U.S.A. INC.
*pro hac vice pending