IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EARL I. ANZAI, ATTORNEY GENERAL FOR THE STATE OF HAWAII, as *Parens Patriae* for the Natural Persons Residing in Hawaii, and on behalf of the State of Hawaii, its Political Subdivisions and Governmental Agencies,<br><br>           Plaintiff,<br><br>    v.<br><br>CHEVRON CORPORATION; CHEVRON U.S.A., INC.; TESORO HAWAII CORPORATION, as Successor-In-Interest to BHP PETROLEUM AMERICAS REFINING INC.; BHP HAWAII INC; SHELL OIL COMPANY; SHELL OIL PRODUCTS COMPANY; TEXACO, INC.; TEXACO REFINING AND MARKETING, INC.; TESORO PETROLEUM CORPORATION; TESORO HAWAII CORPORATION; TOSCO CORPORATION; UNION OIL COMPANY OF CALIFORNIA; and UNOCAL CORPORATION,<br><br>           Defendants. | Civil No. 1:98-cv-00792-MWJS-WRP<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ............................................................................................... 2

LEGAL STANDARD ........................................................................................ 5

ARGUMENT .................................................................................................... 6

I. The Settlement Agreement Bars the State Court Claims. .................................... 6

II. The Settlement Agreement and Judgment Bar the State Court Claims Against Shell Defendants Because They Arise From Alleged Pre-Settlement Conduct. ........................................................................................................ 9

III. This Court Should Issue Injunctive Relief to Enforce the Judgment. .............. 12

CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anzai v. Chevron Corp.*,
  No. 1:98-cv-792 (D. Haw. July 23, 1999) ..................................................... *passim*

*Battle v. Liberty Nat. Life Ins. Co.*,
  877 F.2d 877 (11th Cir. 1989) ........................................................................ 13

*Bennett v. Medtronic, Inc.*,
  285 F.3d 801 (9th Cir. 2002) .......................................................................... 13

*City & County of Honolulu v. Sunoco LP*,
  39 F.4th 1101 (9th Cir. 2022) .......................................................................... 9

*Flanagan v. Arnaiz*,
  143 F.3d 540 (9th Cir. 1998) ..................................................................... 6, 13

*Kokkonen v. Guardian Life Ins. Co. of America*,
  511 U.S. 375 (1994) .................................................................................. 5, 12

*Wojciechowski v. Kohlberg Ventures, LLC*,
  923 F.3d 685 (9th Cir. 2019) ........................................................................... 5

CONSTITUTIONAL AND STATUTORY AUTHORITIES

28 U.S.C. § 1651 ........................................................................................... 6, 12

28 U.S.C. § 2283 ........................................................................................... 6, 13

HRS § 480-2 ..................................................................................................... 1

**INTRODUCTION**

Defendants Shell USA, Inc. (f/k/a Shell Oil Company) and Shell Oil Products Company LLC (collectively, "Shell" or "Shell Defendants") respectfully move this Court to enforce the settlement agreement between the State of Hawai'i and Shell Defendants (and others) (the "Settlement Agreement"), which resolved claims alleging the deceptive manufacture, marketing, and sale of petroleum products. Hawai'i, the City and County of Honolulu, the Honolulu Board of Water Supply, and the County of Maui are all bound by the terms of that agreement, but have nevertheless filed state-court claims against a group of energy companies including Shell Defendants and their affiliates seeking to hold them liable for claims that the plaintiffs in those cases have explicitly styled as arising from an alleged decades-long campaign of deception related to the marketing and sale of petroleum products. For much the same reasons set forth in Chevron Defendants' Motion to Enforce the Judgment and Memorandum in Support of Motion, filed on January 30, 2026 (ECF 1204) ("Chevron Defendants' Memorandum"), and for the reasons set forth herein, those claims fall squarely within the scope of the settlement release. This Court should exercise its authority to protect and effectuate its Final Judgment, which incorporated the terms of the Settlement Agreement, and bar the state-court claims that arise from conduct pre-dating the 2002 Settlement Agreement and release.

1

## BACKGROUND

In 1998, Hawai'i's Attorney General sued Shell Defendants (and others) on behalf of Hawai'i's residents, the State itself, and the State's political subdivisions and agencies. The Complaint alleged that Shell Defendants and other energy companies deceived consumers by justifying higher "fuel prices in Hawaii as a function of higher Hawaii operating costs" in violation of state and federal antitrust statutes and HRS § 480-2. Ex. A, Second Amended Complaint, ¶¶ 2, 64, 67, 83-103, *Anzai v. Chevron Corp.*, No. 1:98-cv-792 (D. Haw. July 23, 1999) (ECF 166) (hereinafter "*Anzai* Complaint").

After four years of litigation, the parties reached a settlement and jointly moved for court approval of the parties' Settlement Agreement. *See* Motion for Approval of Settlement Agreement, *Anzai v. Chevron Corp.*, No. 1:98-cv-792 (D. Haw. March 8, 2002) (ECF 1176). Following a fairness hearing, the Court approved the Settlement Agreement, dismissed with prejudice all "Released Defendant Parties," and expressly "retain[ed] continuing jurisdiction over . . . the Settlement Agreement." Ex. B, Final Judgment, ¶¶ 8, 11, *Anzai v. Chevron Corp.*, No. 1:98-cv-792 (D. Haw. April 30, 2002) (ECF 1188); Ex. C, Settlement Agreement, ¶¶ 3.5-3.6, *Anzai v. Chevron Corp.*, No. 1:98-cv-792 (D. Haw. April 30, 2002) (ECF 1188).

The Released Defendant Parties included Shell Oil Company, Shell Oil Products Company, and Equilon Enterprises LLC. *See* Ex. C, Settlement Agreement,

¶¶ 1.2, 1.14. The Shell entities named in the three Hawaiʻi state court actions are all parties to the Settlement Agreement or affiliates or successors of a party, and therefore qualify as Released Defendant Parties as that term is defined in the Agreement.

The Settlement Agreement released claims on behalf of "the State of Hawaii and its departments, agencies, divisions and other entities," the "legal representatives, predecessors, successors, and assigns of Plaintiffs," and "all others on whose behalf" the Attorney General brought the lawsuit "as identified in" the Complaint. Ex. C, Settlement Agreement ¶ 1.12. The Attorney General expressly brought the lawsuit "both as *parens patriae* for the natural persons residing in the State of Hawaii and on behalf of the State of Hawaii, its political subdivisions and governmental agencies." Ex. A, *Anzai* Complaint ¶ 2.

The scope of the release was broad: it covers "all claims, causes of action and liabilities of whatever nature or origin, known and unknown, that have been, could have been, or could be asserted against" the released parties "that arise from any act or acts occurring prior to the date of the Settlement Agreement," April 30, 2002, as long as they "relate to," among other things, "the pricing, sale, purchase, manufacture, exchange, marketing, delivery, and/or offering of gasoline, diesel, jet fuel and/or any other petroleum product or products." Ex. B, Final Judgment ¶ 1.7; Ex. C, Settlement Agreement ¶ 1.15. The only limits on the breadth of the release

were expressly defined and narrowly drawn. Ex. C, Settlement Agreement ¶ 1.15

("'Settled Claims' does not include claims substantially unrelated to either: (1) the

antitrust laws or regulations, (2) deceptive trade practices, (3) unfair acts or practices

raised in the Lawsuit, (4) trade regulation, or (5) claims in the Lawsuit.").

The parties agreed that this Court would retain jurisdiction "to order injunctive

relief for the purposes of enforcing, implementing, administering, construing, and

interpreting" the Settlement Agreement. *Id.* ¶ 3.6. The Judgment entered by this

Court dismissed with prejudice all Released Defendant Parties. Ex. B, Final

Judgment ¶ 8; *see also* Ex. C, Settlement Agreement ¶ 3.5. The Judgment also stated

that "[t]his Court shall retain continuing jurisdiction over the Settlement Amount,

the Settling Parties and the Settlement Claimants for the purposes of enforcing,

implementing, administering, construing and interpreting the Settlement

Agreement." Ex. B, Final Judgment ¶ 11; Ex. C, Settlement Agreement ¶ 3.6.

Despite the binding Settlement Agreement, the State, the City and County of

Honolulu, the Honolulu Board of Water Supply, and the County of Maui—all of

whom are bound by the Settlement Agreement by virtue of their status as

"departments, agencies, divisions and other entities" of the State of Hawaii, Ex. B,

Final Judgment ¶ 1.5—have filed materially identical state-court lawsuits against

Shell Defendants and their affiliates seeking to hold them and other energy

companies accountable for alleged deception related to the manufacture, marketing,

and sale of petroleum products (the "State Court Claims"). The State Court Claims stretch back decades and rest squarely on alleged conduct that long predates the 2002 Settlement Agreement.

The State Court Claims fall within the scope of the Court-approved Settlement Agreement and should therefore be enjoined. Accordingly, Shell Defendants respectfully request that this Court order the State Court Plaintiffs to dismiss their present Complaints against Shell Defendants and file amended Complaints (if they so choose) that do not contain any allegations regarding or arising from pre-settlement conduct or speech, or, at minimum, grant injunctive relief barring the State Court Plaintiffs from pursuing claims based on allegations pre-dating the 2002 Settlement Agreement.

## LEGAL STANDARD

A federal district court has inherent authority to issue orders necessary "to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 380 (1994). That authority includes "ancillary jurisdiction" to enforce the terms of its judgment if the court has retained jurisdiction. *Id.* at 381. When a court's judgment incorporates the terms of a settlement, those terms become enforceable as part of the judgment. *See Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 690-91 (9th Cir. 2019). The All Writs Act—subject to the limitations of the Anti-Injunction Act—authorizes

federal courts to enjoin state-court proceedings if "necessary in aid of [the federal court's] jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. §§ 1651, 2283; *see also Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998).

## ARGUMENT

### I.      The Settlement Agreement Bars the State Court Claims.

In 2020, Maui and Honolulu sued a group of energy companies—including certain of Shell Defendants and their affiliates—alleging a "multi-front effort to conceal and deny" the link between fossil fuels and climate change. *See* Ex. D, Complaint, *County of Maui v. Sunoco LP*, 2CCV-20-283 (Oct. 12, 2020) (ECF 1) ("Maui Complaint"); Complaint, *City and County of Honolulu v. Sunoco LP*, 1CCV-20-380 (March 9, 2020) (ECF 1). The Honolulu Board of Water Supply later joined the Honolulu suit. *See* Ex. E, First Amended Complaint, *City and County of Honolulu v. Sunoco LP*, 1CCV-20-380 (March 22, 2021) (ECF 45) ("Honolulu Complaint"). In 2025, the State of Hawai'i filed a materially identical lawsuit. *See* Ex. F, Complaint, *State of Hawai'i v. BP P.L.C.*, 1CCV-25-717 (May 1, 2025) (ECF 1) ("Hawai'i Complaint").

State Court Plaintiffs assert that the State Court Claims all relate to an alleged "decades-long campaign" by Shell Defendants and others "to maximize continued dependence on their products" by "concealing, discrediting, and/or misrepresenting information" related to those fossil fuel products. Ex. F, Hawai'i Complaint ¶¶ 105-

106, Ex. E, Honolulu Complaint ¶¶ 92-93; Ex. D, Maui Complaint ¶¶ 101-102. State Court Plaintiffs allege that Shell Defendants and others knew or should have known that fossil fuel products posed risks of "impacts on the global climate" for decades, but concealed those risks and failed to warn consumers—and instead, as climate change became an "increasingly prominent concern," "affirmatively deceiv[ed] consumers and the public about the climatic dangers of fossil fuels" from the late 1980s until the late 1990s by denying the link between climate change and fossil fuels. Ex. F, Hawai'i Complaint ¶¶ 59-65, 100-102, 104-28; *see also* Ex. E, Honolulu Complaint ¶¶ 90-105; Ex. D, Maui Complaint ¶¶ 99-115. Plaintiffs have explicitly characterized the State Court Claims as seeking to hold defendants liable for "continuously engag[ing] in an ongoing campaign of deceptive conduct[.]" Ex. G, Pls.' Mem. Opp. to Mot. for Summary Judgment Based on Statute of Limitations ("SOL Opp."), *City and County of Honolulu v. Sunoco LP*, 1CCV-20-380 (May 9, 2025) (ECF 1724).

These claims are barred by the Settlement Agreement and Judgment in *Anzai*. All of the State Court Plaintiffs fall within the definition of parties whose claims were released in *Anzai*, because the release binds not just the State of Hawaii but all of its political subdivisions as well. And the scope of the released claims includes the State Court Claims because Plaintiffs assert that the State Court Claims all concern alleged deceptive sales practices involving petroleum products. Plaintiffs'

claims that Shell Defendants and others orchestrated a massive disinformation campaign to mislead the public into purchasing fossil fuels by concealing and downplaying the causes and risks of climate change necessarily "relate to … the pricing, sale, purchase, manufacture, exchange, marketing, delivery, and/or offering of gasoline, diesel, jet fuel and/or any other petroleum product or products." Ex. B, Final Judgment at ¶ 1.7; Ex. C, Settlement Agreement ¶ 1.15.

While the State Court Claims come in different flavors in the three state-court Complaints—negligence, public and private nuisance, harm to public trust resources, unfair and deceptive trade acts or practices, trespass, and failure to warn— all arise from and revolve around this same central allegation: that Defendants engaged in a "decades-long campaign of deception" which allegedly "created, caused, contributed to, and assisted in creating" climate harms. Ex. E, Honolulu Complaint ¶¶ 155-207; Ex. D, Maui Complaint ¶¶ 204-55; Ex. F, Hawai'i Complaint ¶¶ 334-35, 343, 357, 372, 389. Because the State Court Plaintiffs have not asserted a single claim that falls outside the scope of the Settlement Agreement's release, the relief Shell Defendants seek from this Court should dispose of the State Court Plaintiffs' actions against Shell premised on pre-settlement conduct.

The scope of the release extends to claims "of whatever nature or origin, known and unknown" as of the time of the settlement. Ex. B, Final Judgment at 3-4; Ex. C, Settlement Agreement ¶ 1.15. Although there is a narrow exception for

claims that are "substantially unrelated to," *inter alia*, "deceptive trade practices," *id.*, here there can be no serious dispute that all of the State Court Claims, as pled, relate directly to allegations that Shell Defendants and others engaged in deceptive marketing practices that allegedly contributed to climate change. As such, the claims are squarely precluded by the *Anzai* settlement.[1]

**II.      The Settlement Agreement and Judgment Bar the State Court Claims Against Shell Defendants Because They Arise From Alleged Pre-Settlement Conduct.**

Because the *Anzai* Settlement Agreement and Final Judgment release claims based on alleged deception occurring before April 2002, they bar the State Court Claims against Shell Defendants, all of which rest in substantial and essential part on conduct that allegedly occurred before April 2002.

The State Court Plaintiffs' theory that Shell Defendants and others engaged in a campaign of deception turns on allegations that the defendants denied and/or downplayed climate change. These allegations of climate denialism are based *entirely* on alleged conduct from the 1980s and 1990s. *See, e.g.*, Ex. F, Hawai'i

---

[1] The Settlement's exclusion of "environmental claims" does not apply per the State Court Plaintiffs' own construction of their claims. Plaintiffs maintain that the State Court Claims at issue here involve allegations of deceptive trade practices related to marketing, manufacture, and sale of fossil fuels, not pollution regulation. *See* Maui's Mot. to Remand, 6, *County of Maui v. Sunoco LP*, 1:20-cv-470 (Nov. 25, 2020) (ECF 74); Honolulu's Mot. to Remand, 7, *City & County of Honolulu v. Sunoco LP*, 1:20-cv-163 (Sep. 11, 2020) (ECF 116); *City & County of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1113 (9th Cir. 2022).

Complaint ¶¶ 104-128; Ex. E, Honolulu Complaint ¶¶ 90-105; Ex. D, Maui Complaint ¶¶ 99-115. According to Plaintiffs, Shell and others allegedly deceived consumers by concealing what they knew about the relationship between fossil fuel combustion and climate change in the years preceding the Settlement Agreement. Specifically, the State of Hawaii alleges that Shell Defendants and others began "affirmatively deceiving consumers and the public" in the period "between 1988 and 1992," citing alleged statements and conduct by the defendants in the early 1990s. Ex. F, Hawai'i Complaint ¶ 104. The State then pleads that defendants "shifted *away* from openly denying anthropogenic warming" by the late 1990s. *Id.* ¶ 128 (emphasis added). It follows that the Settlement Agreement precludes the State Court Claims to the extent they are based on the theory that defendants affirmatively denied anthropogenic climate change, as that denial allegedly occurred prior to the Agreement's execution.

As to Shell Defendants specifically, the State Court Claims rely almost exclusively on pre-settlement conduct in support of their allegations that Shell deceived the public. The State Court Plaintiffs highlight advertisements by Shell Defendants going back decades that allegedly contained "false or misleading statements, misrepresentations, and/or material omissions." *See, e.g.*, Ex. F, Hawai'i Complaint ¶ 38(j)-(k). The State Court Plaintiffs further allege that Shell Defendants "shaped a series of influential industry-backed publications that downplayed or

omitted key risks; emphasized scientific uncertainties; and pushed for more fossil fuels, particularly coal," citing Shell publications from 1985, 1992, and 1994. Ex. F, Hawai'i Complaint ¶¶ 110-11; Ex. D, Maui Complaint ¶ 106; Ex. E, Honolulu Complaint ¶ 96. And they employ pre-settlement allegations to purportedly evidence Shell Defendants' knowledge that their statements were false, claiming they show Shell's "awareness of [climate change and its likely consequences] and intent to profit from the unabated use of fossil fuel products." Ex. E, Honolulu Complaint ¶¶ 84, 96, 118, 122-23; *see also* Ex. F, Hawai'i Complaint ¶¶ 93-94, 97, 139, 143-44; Ex. D, Maui Complaint ¶¶ 87-88, 93, 135-36 (citing a 1984 patent for an Arctic offshore platform, 1989 design alterations to a natural gas platform in the North Sea, and internal reports from 1988 and 1998 as evidence of Shell Defendants' deception). The State Court Claims based on these allegations of disinformation in service of fossil-fuel sales in the years preceding 2002 are all precluded by the Settlement Agreement.

The only remaining allegations made against Shell Defendants by the State Court Plaintiffs relate to instances of so-called "greenwashing," whereby Shell supposedly employed deception to boost fossil fuel sales by claiming to be "substantially invested in lower carbon technologies," while at the same time "continuing to expand [their] fossil fuel production." Ex. E, Honolulu Complaint ¶¶ 137-47; Ex. F, Hawai'i Complaint ¶¶ 182-91. These allegations, too, relate back

11

to pre-settlement conduct; in the State Court Plaintiffs' telling, the later statements are supposedly a *continuation* of the campaign of deception that began with climate denialism and morphed into a different guise once anthropogenic climate change was widely known and acknowledged. *See*, *e.g.*, Ex. E, Honolulu Complaint ¶ 137 ("Defendants' coordinated campaign of disinformation and deception *continues* today, even as the scientific consensus about the cause and consequences of climate change has strengthened.") (emphasis added); Ex. F, Hawai'i Complaint ¶ 160 (same). Absent the allegations relating to pre-settlement conduct, these later manifestations of a supposedly continuing disinformation campaign do not state a coherent actionable claim.

III.    **This Court Should Issue Injunctive Relief to Enforce the Judgment.**

A federal court has authority to enforce a settlement agreement if it (1) incorporated the agreement into its dismissal order or (2) expressly retained jurisdiction to enforce it. *Kokkonen*, 511 U.S. at 381. Here, the Court did both. *See* Ex. B, Final Judgment at ¶¶ 2-7, 11. Accordingly, there is no question the Court has the authority and jurisdiction to grant the requested relief.

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). That authority is limited by the Anti-Injunction Act, which prohibits federal courts from enjoining state-court

proceedings; but an exception applies for injunctions that are "expressly authorized by Act of Congress, or where necessary in aid of [the federal court's] jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Here, the "necessary in aid of its jurisdiction" exception to the Anti-Injunction Act applies because an injunction is both necessary and appropriate to effectuate a Settlement Agreement that this Court approved. Indeed, having expressly retained jurisdiction to enforce the Settlement Agreement, this Court's jurisdiction is presumptively "exclusive," such that this is the only proper forum in which to determine whether and to what extent the Settlement Agreement bars the State Court Claims. *See Flanagan*, 143 F.3d at 545. In the absence of an injunction, Shell Defendants would have to assert the Settlement Agreement as a defense in state court, leaving the state court as the arbiter of an agreement this Court has exclusive jurisdiction to enforce. This is just the situation the "in aid of jurisdiction" exception is designed to avoid. *See Bennett v. Medtronic, Inc.*, 285 F.3d 801, 806 (9th Cir. 2002); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989).

In the exercise of its exclusive jurisdiction, and to enforce its Final Judgment, this Court should order the State Court Plaintiffs to dismiss the current State Court Complaints against Shell Defendants and enjoin the State Court Plaintiffs from pursuing claims based on alleged deceptive trade practices that pre-dated the Settlement Agreement. The State Court Plaintiffs should be specifically enjoined

from pursuing their "climate deception" theory that rests entirely on alleged conduct that ended in the 1990s, before the Settlement Agreement was executed.

## CONCLUSION

Shell Defendants respectfully request that the Court grant injunctive relief to enforce the Settlement Agreement and Final Judgment as follows:

- Enjoin the State Court Plaintiffs to dismiss the current State Court Complaints against Shell, which rely substantially on allegations of deceptive speech and conduct that occurred on or before April 30, 2002;

- Enjoin the State Court Plaintiffs from filing any amended complaint or pursuing any claim against Shell that relies on allegations of deceptive speech or conduct regarding the sale, marketing, or promotion of petroleum products that occurred on or before April 30, 2002;

- Enjoin the State Court Plaintiffs from pursuing claims based on the theory that Shell engaged in denial of anthropogenic global warming, which they allege ended in the late 1990s.

DATED:  Honolulu, Hawaiʻi, March 11, 2026.

*/s/ Joachim P. Cox*

JOACHIM P. COX
RANDALL C. WHATTOFF
JOSH COHEN (*Pro Hac Vice)*
NICHOLAS FOLLY (*Pro Hac Vice)*
ELIZABETH COSTELLO (*Pro Hac Vice)*
Attorneys for Defendants
SHELL USA, INC. (f/k/a SHELL OIL COMPANY) AND SHELL OIL PRODUCTS COMPANY LLC