Eliot Turner (Pro Hac Vice)
Rachel Roosth (Pro Hac Vice)
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Boulevard, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Email: eliot.turner@nortonrosefulbright.com
Email: rachel.roosth@nortonrosefulbright.com
*Attorneys for Defendant Woodside Energy Hawaii, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| **Anne E. Lopez, Attorney General for the State of Hawaii, as parens patriae for the natural persons residing in Hawaii, and on behalf of the State of Hawaii, its political subdivisions, and governmental agencies,** | Civil No. 1:98-cv-00792-MWJS-WRP |
| *Plaintiff*, | **Defendant Woodside Energy Hawaii, Inc.'s Memorandum in Support of its Motion to Enforce This Court's Judgment and its Settlement Agreement with the State of Hawaiʻi** |
| v. | |
| **Chevron Corporation, et al.,** | |
| *Defendants*. | |

**TABLE OF CONTENTS**

Page

Introduction ............................................................................................................1

Background ............................................................................................................3

1. Hawai'i sues WEH for antitrust and unfair and deceptive trade practices claims................................................................................................................3

2. WEH sells its assets to Tesoro and stops operating in Hawai'i. ........................3

3. Hawai'i and WEH settle this case and this Court enters a final judgment discharging WEH from any liability related to the Settled Claims. ..................4

4. Hawai'i sues WEH again, acknowledging that its new claims are for unfair and deceptive trade practices, based on acts that occurred before the parties settled this case. ...............................................................................................6

Argument and Authorities .................................................................................11

1. Hawai'i released its new claims and those of its political subdivisions, and this Court entered a final judgment permanently extinguishing liability for those claims.............................................................................................................13

2. This Court may enjoin the state court proceedings to prohibit Hawai'i and its political subdivisions from pursuing Settled Claims against WEH.................19

Conclusion ...........................................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brother Recs., Inc. v. Jardine*,
    432 F.3d 939 (9th Cir. 2005) ...................................................................19

*City & Cnty. of Honolulu v. Sunoco LP*,
    537 P.3d 1173 (Haw. 2023) ...............................................9, 10, 11, 16

*Convention Ctr. Auth. v. Anzai*,
    890 P.2d 1197 (Haw. 1995) .................................................................14

*Flanagan v. Arnaiz*,
    143 F.3d 540 (9th Cir. 1998) ...............................................................12

*Kokkonen v. Guardian Life Ins. Co. of America*,
    511 U.S. 375 (1994) ............................................................................11

*Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*,
    371 F.3d 1285 (11th Cir. 2004) ...........................................................12

*Sandpiper Village Condo. Ass'n v. Louisiana-Pacific Corp.*,
    428 F.3d 831 (9th Cir. 2005) ...............................................................19

*Sylvester v. Animal Emergency Clinic of Oahu*,
    825 P.2d 1053 (Haw. 1992) .................................................................15

*Wojciechowski v. Kohlberg Ventures, LLC*,
    923 F.3d 685 (9th Cir. 2019) ...............................................................12

*Wong v. Cayetano*,
    143 P.3d 1 (Haw. 2006) .......................................................................15

**Rules and Statutes**

28 U.S.C. § 1651 ........................................................................................12

28 U.S.C. § 2283 ........................................................................................12

Haw. Rev. Stat. § 480-14(a) .......................................................................14

Haw. Rev. Stat. § 261-1 ................................................................14

Haw. Rev. Stat. § 346C-6(a)(1)(B)................................................14

**Other Authorities**

Hawai'i Const. Art. VIII, § 1 .......................................................14

**INTRODUCTION**

In October 1998, the State of Hawai'i, on behalf of itself, its political subdivisions, its governmental agencies, as well as in its capacity as *parens patriae*, sued Woodside Energy Hawaii, Inc., then known as BHP Hawaii, Inc. (WEH) here. Hawai'i alleged WEH violated federal antitrust law and state deceptive trade practices law related to the sale of gasoline in Hawai'i. *See* Dkt. 1, ¶¶ 1-3.

In November 1999, Hawai'i and WEH settled. The settlement released WEH from liability to Hawai'i and its political subdivisions for "Settled Claims," which were defined to include, among other things, claims related to "the pricing, sale, purchase, manufacture, exchange, marketing, delivery, and/or offering of gasoline, diesel jet fuel and/or any other petroleum products." Ex. 1, Settlement Agreement ¶ 1.16.

In January 2000, this Court approved the settlement and entered a final judgment which, adopting the settlement's definition of "Settled Claims" word for word, "fully release[d] and discharge[d]" WEH "with respect to the Settled Claims." Dkt. 276 at 6. This Court's judgment also "release[d] [WEH] from liability for Settled Claims," and "extinguishe[d] any liability of Settling Defendants . . . with respect to the Settled Claims." *Id.*

This Court "retain[ed] continuing jurisdiction over . . . the Settling Parties . . . for the purposes of enforcing, implementing, administering, construing and interpreting the Settlement Agreement." *Id.* at 7.

Last year, Hawai'i sued WEH again – this time in state court – for allegedly failing to warn consumers about the link between fossil fuel combustion and

1

production of $CO_2$ and other greenhouse gases and, instead, "mount[ing] a decades-long campaign of deception to discredit the scientific consensus on climate change; create doubt in the minds of consumers, the media, business leaders, and the public about the climate change impacts of burning fossil fuels; and delay the energy economy's transition to a lower-carbon future while maximizing their own profits." Ex. 2, Hawai'i Compl. ¶ 1. The supposed purpose of "this successful climate deception campaign" was "to inflat[e] and sustain[] the market for fossil fuels." *Id.* ¶ 2.

Each of Hawai'i's claims in its new lawsuit is premised on WEH's alleged sale, marketing, and promotion of fossil fuels and WEH's alleged deception in those activities. *See*, *e.g.*, *id.* ¶ 331 (negligence) ("Defendants had a duty to the State and its residents to exercise due care in the marketing, sale, and/or labeling of fossil fuel products."). And each instance of allegedly deceptive activity by WEH that Hawai'i points to in the new lawsuit happened *before* WEH and Hawai'i settled this case. *See id.* ¶¶ 41(g), (h). Indeed, Hawai'i has acknowledged in both its new complaint and in this case that WEH "sold its operations" in 1998 – nearly two years *before* Hawai'i and WEH settled this case. *See id.* ¶ 41(h)(i); *see also* Dkt. 166 ¶ 17 ("BHP sold its Hawaii business to TESORO in May 1998."). Hawai'i's claims track nearly identical claims against WEH filed by three political subdivisions of the state, the County of Maui, the City and County of Honolulu, and the Honolulu Board of Water Supply. *See* Ex 3, Honolulu Compl., Ex. 4, Maui Compl.

Thus, whatever the merits of Hawai'i's newly-filed claims and those of the nearly identical claims filed by Hawai'i's political subdivisions, they cannot proceed

against WEH. They are barred by this Court's decades-old judgment approving the parties' settlement agreement and incorporating its terms. Moreover, as Hawai'i admits, WEH has not engaged in any conduct *since* that judgment and release, so none of the claims against WEH in the new lawsuit could credibly be based on actions that post-date the judgment and release. Because that is so, WEH asks the court to enforce its judgment and the parties' settlement agreement and enjoin Hawai'i and its political subdivisions from pursuing claims against WEH that have been settled and released.

## BACKGROUND

**1. Hawai'i sues WEH for antitrust and unfair and deceptive trade practices claims.**

In 1998, Hawai'i sued WEH and others, as *parens patriae*, on its own behalf and on behalf of its political subdivisions and governmental agencies, alleging that WEH and others violated the Sherman Antitrust Act as well as Hawai'i's state antitrust and deceptive and unfair practices laws. *See* Dkt. 1.

**2. WEH sells its assets to Tesoro and stops operating in Hawai'i.**

As Hawai'i acknowledged in its second amended complaint here, as well as in its newly filed state court complaint, by 1998 WEH was no longer actively operating in Hawai'i – having sold its refinery and gas stations to Tesoro, which was also named as a defendant in this case. *See* Dkt. 166 ¶ 17 ("BHP sold its Hawaiian refinery (and service stations) to TESORO in May 1998."); *id.* ¶ 18 ("BHP sold its Hawaii business to TESORO in May 1998."); *see also* Ex. 2, Hawai'i Compl. ¶ 41(h) ("Until approximately 1998, WEH owned and operated more than 30 gasoline

stations through Hawai'i under the BHP Gas Express network."); *id.* ¶ 41(i) ("WEH owned and operated Hawaii's largest crude oil refinery near Kapolei, O'ahu from approximately 1989 to 1998.").

**3.     Hawai'i and WEH settle this case and this Court enters a final judgment discharging WEH from any liability related to the Settled Claims.**

In November 1999, the Attorney General and WEH settled this case. Tesoro was also a party to the settlement with WEH. WEH paid $12 million under the settlement and, in exchange, the Plaintiffs agreed to a broad-form release of virtually all claims that were or could have been made against WEH and its "affiliates." The "Settled Claims" Plaintiffs agreed to release were:

> [A]ll claims, causes of action and liabilities of whatever nature or origin, known and unknown, that have been or could be asserted against Released Parties (including, but not limited to, contract claims, tort claims, and claims arising under state or federal statute, regulation or antitrust law) that arise from any act or acts occurring prior to the date of this Settlement Agreement and that relate to (1) the pricing sale, purchase, manufacture, exchange, marketing, delivery, and/or offering of gasoline, diesel jet fuel and/or any other petroleum products; (2) the sale or purchase of assets located in the State of Hawaii, including the sale and purchase of the capital stock of BHP Petroleum Americas, Inc. and BHP Petroleum South Pacific Inc. and any government review process with respect to the sale and purchase of any assets; (3) any antitrust violation; (4) any allegation contained in the Lawsuit; or (5) any petroleum products that have been brought or could have been brought by or on behalf of Plaintiffs in the Lawsuit.

Ex. 1, Settlement Agreement ¶ 1.16. The parties intended the release to be broad, acknowledging in the settlement that it was "expressly understood that this settlement is to take place prior to the completion of discovery, and that the releases herein apply to all such Settled Claims, whether known or unknown, and regardless

of whether after-discovered facts, if known, would have altered the decision to enter into this agreement." *Id.* ¶ 3.8.

Both the settlement and judgment defined "Plaintiffs" as all those "on whose behalf the Attorney General of the State of Hawaii brought this lawsuit as identified in the Complaint, the First Amended Complaint, and the Second Amended Complaint; and the legal representatives, predecessors, successors, and assigns of Plaintiffs." *Id.* ¶ 1.6. And in each complaint filed in this case, the Attorney General represented that the case was filed "both as *parens patriae* for the natural persons residing in the State of Hawaii and on behalf of the State of Hawaii, its political subdivisions and governmental agencies." *See* Dkt. 166, Second Am. Compl. ¶ 2.

This Court approved the settlement and entered a final judgment on January 28, 2000. The final judgment "fully release[d] and discharge[d] Settling Defendants with respect to the Settled Claims belonging to Plaintiffs" and "release[d] Released Parties from liability for Settled Claims belonging to Plaintiffs." Doc. 276 at 6 (Jan. 28, 2000); *id.* ("This Final Judgment extinguishes any liability of Settling Defendants and Released Parties with respect to the Settled Claims."). That was consistent with the parties' settlement, where they agreed that "[t]he Judgment shall extinguish any liability of Settling Defendants with respect to the claims made in the Lawsuit *and with respect to Settled Claims*" Ex. 1, Settlement Agreement ¶ 3.5 (emphasis added).

This Court retained jurisdiction to enforce the settlement agreement. Dkt. 276 at 7 ("This Court shall retain continuing jurisdiction over the Settlement Amount, the Settling Parties and the Settlement Claimants for the purposes enforcing,

implementing, administering, construing and interpreting the Settlement Agreement."). This Court's retention of jurisdiction was a key term in the parties' settlement: "The parties agree that (i) the Judgment shall provide that, notwithstanding the entry of the Judgment, the District Court shall retain continuing jurisdiction over the Settlement Amount and the Settling Parties; (ii) the District Court's continuing jurisdiction shall include jurisdiction to order injunctive relief for the purposes of enforcing, implementing, administering, construing and interpreting this Settlement Agreement . . . ." Ex. 1, Settlement Agreement ¶ 3.7.

**4. Hawaiʻi sues WEH again, acknowledging that its new claims are for unfair and deceptive trade practices, based on acts that occurred *before* the parties settled this case.**

Last year, Hawaiʻi sued WEH in state court for allegedly deceptive trade practice related to the "marketing" and "sale" of petroleum products. In its new lawsuit, Hawaiʻi claims that WEH and its codefendants "mounted a decades-long campaign of deception to discredit the scientific consensus on climate change; create doubt in the minds of consumers, the media, business leaders, and the public about the climate change impacts of burning fossil fuels; and delay the energy economy's transition to a lower-carbon future while maximizing their own profits." *See* Ex. 2, Hawaiʻi Compl. ¶ 1. According to Hawaiʻi, WEH and its codefendants' "aim has been and continues to be to deceive consumers and the public about the harms of their fossil fuel products and their corporate activities for the purpose of maintaining their business and economic interests, driving up sales, and increasing profits." *Id.* ¶ 9; *id.* ¶ 41(e) ("WEH has purposefully directed its tortious conduct toward Hawaiʻi

by distributing, marketing, advertising, promoting and supplying its fossil fuel products in Hawai'i.").

Among the claims that Hawai'i asserts in its new state court complaint is one alleging that WEH violated the very same state unfair and deceptive practices law – Chapter 480 – that Hawai'i brought claims under in *this* case. *Compare id.* ¶ 407 (Hawai'i Unfair or Deceptive Acts or Practices Statute), ¶ 408 (citing Hawai'i Rev. Stat. § 480-2) *with* Dkt. 166 ¶ 95 ("Deceptive Trade Practices"), ¶ 96 (citing Hawai'i Rev. Stat. § 480-2), ¶ 99 ("Unfair Trade Practices"), ¶ 103 (citing Hawai'i Rev. Stat. § 4802.").

Each of Hawai'i's other claims in its new lawsuit is likewise premised on WEH's sale, marketing, and promotion of fossil fuels and WEH's alleged deception in those activities.

Take Hawai'i's negligence claim. Hawai'i alleges WEH "had a duty to the State and its residents to exercise due care in the marketing, sale, and/or labeling of fossil fuel products" as well as a "duty to the State and its residents to honestly communicate their knowledge about the hazards of fossil fuel products and a duty not to make false and misleading statements about the hazards of fossil fuel products." Ex. 2, Hawai'i Compl. ¶ 331-32. Hawai'i similarly asserts that WEH breached its alleged duty of care when it "advertised, promoted, and/or sold fossil fuel products, while failing to include warnings of the risk of harm associated with fossil fuel products . . . ." *Id.* ¶ 334. Hawai'i also claimed that WEH breached its alleged duty of care "by waging a years-long deceptive marketing and public relationships campaign to discredit climate science." *Id.* ¶ 335.

7

Hawai‘i's other claims are likewise premised on allegations that WEH engaged in deceptive trade practices:

- **Public nuisance**: "Defendants, individually and in concert with each other, *through their decades-long campaign of deception; their failure to include warnings of the risk of harm associated with fossil fuel products; and their affirmative promotion, advertisement, sale, and/or distribution of fossil fuel products*, including in the State, have created, caused, contributed to, and assisted in creating a public nuisance . . . ." *Id.* ¶ 343 (emphasis added).

- **Private nuisance**: "Defendants individually and collectively created, caused, contributed to, and assisted in the creation of Climate-Related Harms in the State *by*, among other things, a*ffirmatively advertising, marketing, and promoting the sale and use of fossil fuel products within and outside the State*, which Defendants knew would cause or exacerbate Climate-Related Harms in the State and elsewhere, while simultaneously engaging in the decades-long tortious campaign of deception described herein and failing to include warnings of the risk of harm associated with fossil fuel products." *Id.* ¶ 360 (emphasis added).

- **Trespass**: "Defendants, individually and in concert with each other, *through their decades-long campaign of deception, their failure to include warnings of the risk of harm associated with fossil fuel products; and their affirmative advertisement, marketing, promotion, advertisement, sale, and/or distribution of fossil fuel products* within and outside the State, acted intentionally and in a manner that created, caused, contributed to, and assisted in creating Climate-Related Harms that have entered and invaded, and will enter and invade, State property." *Id.* ¶ 372 (emphasis added).

- **Public trust**: "Defendants, individually and in concert with each other, *through their decades-long campaign of deception, their failure to include warnings of the risk of harm associated with fossil fuel products, and their affirmative promotion, advertisement, sale, and/or distribution of fossil fuel products*, including in the State, have harmed and threatened the State's public trust resources and unreasonably interfered with the public's use and enjoyment of public trust resources." *Id.* ¶ 389 (emphasis added).

- **Failure to warn**: "*As manufacturers, marketers, distributors, promoters, and/or sellers of fossil fuel products*, Fossil Fuel Defendants had a duty to

8

warn the State and its residents (both of whom are users and consumers) of the risks posed by fossil fuel products." *Id.* ¶ 424 (emphasis added).

Furthermore, there can be no dispute that all of the alleged wrongdoing attributable to WEH occurred *before* the settlement and judgment in this case. To be sure, Hawai'i makes general allegations against all defendants collectively to suggest that some number of them may have continued the alleged acts of deception after that time. But, as to WEH specifically, Hawai'i has expressly acknowledged the undisputable fact that WEH sold its business and engaged in no further business of any kind in Hawai'i after 1998. Not surprisingly, the fewer-than-a-dozen allegedly deceptive acts by WEH that Hawai'i points to in its new complaint all occurred *before* the November 1999 settlement. *See id.* nn. 82-87 (citing advertisements from 1988 through 1998).

Hawai'i's new state court complaint closely tracks two nearly identical complaints against WEH by three political subdivisions of the state: one by the County of Maui (the "*Maui* case") and the other by the City and County of Honolulu and the Honolulu Board of Water Supply (the "*Honolulu* case"). Apart from the Chapter 480 and public trust claims, both the *Maui* and *Honolulu* cases make the same claims as those in Hawai'i's new case: public and private nuisance, failure to warn, and trespass. And like the claims against WEH in Hawai'i's new case, the claims in the *Maui* and *Honolulu* cases are based on allegations that WEH "tortiously distributed, marketed, advertised, and promoted its products in Hawai'i, with knowledge that those products have caused and will continue to cause climate crisis-related injuries in Hawai'i." Ex. 3, Honolulu Compl. ¶ 23(h); Ex. 4, Maui Compl. ¶

23(i) (similar). Indeed, at every stage of the proceedings in the *Honolulu* and *Maui* cases, those plaintiffs have argued that their cases are likewise about deceptive trade practices. The Hawai'i Supreme Court put it this way in describing how *plaintiffs* characterized their claims in the *Honolulu* case:

> Plaintiffs argue this is a traditional tort case alleging that Defendants engaged in a deceptive promotion campaign and misled the public about the dangers of using their oil and gas products. Plaintiffs claim their theory of liability is simple: Defendants knew of the dangers of using their fossil fuel products, "knowingly concealed and misrepresented the climate impacts of their fossil fuel products," and engaged in "sophisticated disinformation campaigns to cast doubt on the science, causes, and effects of global warming," causing increased fossil fuel consumption and greenhouse gas emissions, which then caused property and infrastructure damage in Honolulu. Simply put, Plaintiffs say the issue is whether Defendants misled the public about fossil fuels' dangers and environmental impact.

*City & Cnty. of Honolulu v. Sunoco LP*, 537 P.3d 1173, 1180–81 (Haw. 2023).

And in opposing WEH and others' petition for certiorari before the United States Supreme Court, the *Honolulu* plaintiffs reaffirmed their characterization of their claims (as well as the Hawai'i Supreme Court's characterization of them):

> This case seeks to hold petitioners liable under Hawai'i tort law for deliberately concealing and misrepresenting the climate-change impacts of their fossil-fuel products. Although deceptive commercial practices fall squarely within the core interests and historic powers of the states, petitioners moved to dismiss this lawsuit on the theory that federal law exclusively governs any 'claim[] involving transboundary pollution.'

> \* \* \*

> As the Hawai'i Supreme Court explained, petitioners mischaracterize the complaint as seeking to regulate pollution. This suit does not request

relief for "all effects of climate change," but "only for the effects of climate change allegedly caused by [petitioners'] breach of Hawai'i law regarding failures to disclose, failures to warn, and deceptive promotion." Because "liability is causally tethered to [petitioners'] failure to warn and deceptive promotion," "nothing in this lawsuit incentivizes—much less compels—[petitioners] to curb their fossil fuel production or greenhouse gas emissions." Based on that accurate characterization of the complaint, the Hawai'i Supreme Court rejected petitioners' preemption defenses, which rest on the Clean Air Act (CAA) and a congressionally displaced body of federal common law that once "governed 'suits brought by one State to abate pollution emanating from another State.'"

Ex. 5, Case Nos. 23-974 & 23-952, Br. for Respondents City and County of Honolulu and Honolulu Board of Water Supply at 1 (U.S. S. Ct. May 1, 2024) (citations omitted). Hawai'i has endorsed these theories beyond its newly filed complaint. In seeking to consolidate its state court case with the *Honolulu* case, Hawai'i admitted that "[t]he State's case addresses the same conduct at issue in Honolulu's case: Defendants' failure to warn and efforts to deceive the public about climate change and the climate change impacts of their products." Ex. 6, Mem. in Support of Mot. to Consolidate Cases at 2, Civ. No. 1CCV-20-0000380 (LWC).

**ARGUMENT AND AUTHORITIES**

As required by the settlement and by the judgment, this Court retained "continuing jurisdiction over the Settlement Amount, the Settling Parties and the Settlement Claimants for the purposes of enforcing, implementing, administering, construing and interpreting the Settlement Agreement." Dkt. 276 at 7; *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994) (court authorized to retain jurisdiction over settlement agreement setting forth retention of jurisdiction in its order or "embody[ing] terms of settlement contract in its dismissal order"); *see*

*also Flanagan v. Arnaiz*, 143 F.3d 540, 544 (9th Cir. 1998) (affirming district court's finding that it retained jurisdiction to enforce settlement agreement given "express provision" in order dismissing claims). This Court's jurisdiction to enforce the settlement is exclusive. *See Flanagan*, 143 F.3d at 545.

When, like here, a final judgment incorporates the terms of a settlement, its preclusive effect "is not determined by the claims specified in the original complaint, *but instead by the terms of the Settlement Agreement*, as interpreted according to traditional principles of contract law." *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004) (emphasis added); *see also Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 688 (9th Cir. 2019) ("[T]he settlement agreement – and in particular, the intent of the settling parties – determines the preclusive effect of the previous action.").

Under the All Writs Act, 28 U.S.C. § 1651, courts "may issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law." That power extends to enjoining proceedings in state courts where doing so is "necessary in aid of [the federal court's] jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283; *see also Flanagan*, 143 F.3d at 546 (holding that court may enjoin state court proceedings pursuing settled claims where it has retained jurisdiction over settlement to "aid its jurisdiction" and "to protect and effectuate its judgments").

**1. Hawaiʻi released its new claims and those of its political subdivisions, and this Court entered a final judgment permanently extinguishing liability for those claims.**

      **A.     The release and judgment cover claims brought both by Hawaiʻi and its political subdivisions.**

The settlement and the judgment discharged claims on behalf of the "Plaintiffs" in this case. *See* Ex. 1, Settlement Agreement ¶ 3.8. ("As of the Effective Date, Plaintiffs on behalf of themselves and their predecessors, successors, assigns and legal representatives (i) release Settling Defendants from liability with respect to the Settled Claims, and (ii) release the Released Parties from liability with respect to the Settled Claims."); *see* Doc. 276 ¶ 6 ("The approval of the Settlement Agreement and the entry of this Final Judgment (i) fully releases and discharges Settling Defendants with respect to the Settled Claims belonging to Plaintiffs and Settlement Claimants, (ii) releases the Released Parties from liability for Settled Claims belong to Plaintiffs and Settlement Claimants."). Both the settlement and the judgment defined "Plaintiffs" as "the Attorney General of the State of Hawaii as *parens patriae* . . . and all others on whose behalf the Attorney General of the State of Hawaii brought this lawsuit as identified in the Complaint, the First Amended Complaint, the Second Amended Complaint; and the legal representatives, predecessors, successors, and assigns of Plaintiffs." *See* Doc. 276 ¶ 1.6; Ex. 1, Settlement Agreement¶ 1.13 (same).

The Attorney General brought the claims in this case not just on behalf of the State of Hawaiʻi, but also on behalf of all its political subdivisions and government agencies. *See, e.g.*, Doc. 166 ¶ 2 ("Plaintiff is the Attorney General for the State of

Hawaii. Plaintiff brings this action both as *parens patriae* for the natural persons residing in the State of Hawaii and on behalf of the State of Hawaii, *its political subdivisions* and governmental agencies.") (emphasis added); *see also* Haw. Rev. Stat. § 480-14(a) (authorizing attorney general to sue for violations of Chapter 480 on behalf of state and political subdivisions). The three other entities that sued WEH in state court in climate change cases – the County of Maui, the City and County of Honolulu, and the Honolulu Board of Water Supply – are all political subdivisions of the state. *See* Hawai'i Const. Art. VIII, § 1; Hawai'i Rev. Stat. § 261-1; *Convention Ctr. Auth. v. Anzai*, 890 P.2d 1197, 1199 (Haw. 1995) ("The defendant counties of Hawai'i, Maui, and Kaua'i, and the City and County of Honolulu are political subdivisions of the state."); *see also* Haw. Rev. Stat. § 346C-6(a)(1)(B) (referring to the Board of Water Supply as "political subdivision" of the state).

Based on the release's terms and the express provisions of this Court's final judgment, there can be no dispute that claims brought by the County of Maui, the City and County of Honolulu, and the Honolulu Board of Water Supply are covered by the release and this Court's judgment.

> **B.      Hawai'i's and its political subdivisions' claims are covered by the release and judgment entered in this case.**

Courts look to the "intent of the settling parties to determine the preclusive effect of a dismissal with prejudice entered in accordance with a settlement agreement. . . ." *Wojiechowski*, 923 F.3d 689. The "best evidence" of that intent "is . . . the settlement agreement itself . . . , as interpreted according to traditional principles of contract law." *Id.* at 690 (quoting *Norfolk Southern*, 371 F.3d at 1289)

(alterations in original); *see also Sylvester v. Animal Emergency Clinic of Oahu,* 825 P.2d 1053, 1059 (Haw. 1992) ("A compromise or settlement agreement disposes of all issues the parties intended to settle.").

Here the release language is broad.

The release and judgment cover "all claims, causes of action and liabilities of whatever nature or origin, known and unknown, that have been or could be asserted against Released Parties (including, but not limited to, contract claims, tort claims, and claims arising under state or federal statute, regulation or antitrust law)" provided that they meet certain conditions. Doc. 276 ¶ 1.8; Ex. 1, Settlement Agreement ¶ 1.15 (same); *see also Wong v. Cayetano*, 143 P.3d 1, 20 (Haw. 2006) (describing release covering all claims "whether known or unknown, arising or to arise in the future" as "unambiguously sweeping and broad"). The parties' intent that the release be broad is further confirmed by their acknowledgement in the settlement agreement that they might be releasing claims that they did not know they had. *See* Ex. 1, Settlement Agreement ¶ 3.8 (parties "expressly understood that this settlement is to take place prior to the completion of discovery, and that the releases herein apply to all such Settled Claims, whether known or unknown, *and regardless of whether after-discovered facts, if known, would have altered the decision to enter into this agreement*") (emphasis added).

The release's further conditions are only that the claims must "arise from any act or acts occurring prior to the date of the settlement agreement" and "relate to" several categories of claims. Doc. 276 ¶ 1.8; Ex. 1, Settlement Agreement ¶ 1.15. Both conditions are satisfied here.

First, Hawai'i's and its political subdivisions' claims against WEH all arise "from any act or acts occurring prior to the date of the settlement agreement." As explained above, *see supra* p.4, Hawai'i has acknowledged both in its complaints in this case, as well as in its newly-filed state court case that WEH sold its Hawai'i operations in 1998 – that is more than a year *before* the settlement agreement. *See* Dkt. 166 ¶ 17 ("BHP sold its Hawaiian refinery (and service stations) to TESORO in May 1998."); *id.* ¶ 18 ("BHP sold its Hawaii business to TESORO in May 1998."); *see also* Ex. 2, Compl. ¶ 41(h) ("Until approximately 1998, WEH owned and operated more than 30 gasoline stations through Hawai'i under the BHP Gas Express network."); *id.* ¶ 41(i) ("WEH owned and operated Hawaii's largest crude oil refinery near Kapolei, O'ahu from approximately 1989 to 1998."). In the *Honolulu* case, Judge Crabtree found that WEH "has been inactive since 1998." Ex. 7, Doc. 593, Ruling on Mot. to Dismiss for Lack of Personal Jurisdiction ¶ 6 (Feb. 28, 2022). Thus, the only acts that plaintiffs could point to by WEH had to have occurred *before* WEH's settlement. And indeed, the *latest* act by WEH that Hawai'i points to in its newly filed state court complaint are two *January 1998* advertisements. Ex. 2, Hawai'i Compl. ¶ 41(g) & nn. 84-85.

The second condition, that the claims "relate to" certain activities is also met. The "Settled Claims" definition includes five such categories that the claims must relate to. Two are relevant here:

> (1) the pricing, sale, purchase, manufacture, exchange, marketing, delivery, and/or offering of gasoline, diesel jet fuel and/or any other petroleum products; . . . or (5) any petroleum products that have been brought or could have been brought by or on behalf of Plaintiffs in the Lawsuit.

16

Doc. 276 ¶ 1.8; Ex. 1, Settlement Agreement ¶ 1.16. The release does contain a narrow carve out for certain types of claims, but only for "claims *substantially unrelated* to antitrust laws or regulations, *deceptive trade practices, trade regulations* or claims in the Lawsuit, including environmental claims brough by the Plaintiffs." Doc. 276 ¶ 1.8 (emphasis added); Ex. 1, Settlement Agreement ¶ 1.16. That exception does not apply because Hawaiʻi's and its political subdivisions' claims are, by their own telling, claims about deceptive trade practices.

Hawaiʻi's state court complaint could hardly be clearer that its claims are Settled Claims:

> WEH has purposefully directed its tortious conduct toward Hawaiʻi *by distributing, marketing, advertising, promoting, and supplying its fossil fuel products* in Hawaiʻi with knowledge that the intended use of those products for combustion has caused and will continue to cause climate change-related harms in Hawaiʻi . . .

Ex. 2, Hawaiʻi Compl. ¶ 41(e) (emphasis added). According to Hawaiʻi, its new state court "case is fundamentally about shifting the costs of climate change-related harms back onto the entities whose *failure to warn* and *deception* caused and exacerbated them. Hawaiʻi seeks to ensure that the parties who have profited from *deceiving consumers and the public* about climate change bear the costs of *that deceptive commercial activity.*" *Id.* ¶ 23 (emphasis added).

The complaint then goes on to allege that "WEH has *advertised* on television, newspaper, online, and outdoor advertisements in the Hawaiʻi market *related to its fossil fuel products*" and "WEH's advertisements contain false or misleading statements, misrepresentations, and/or material omissions *obfuscating* the

*connection* between the production and use of WEH's fossil fuel products and climate change, and/or *misrepresenting* WEH's products or WEH itself as environmentally friendly." *Id.* ¶ 41(f) (emphasis added). The Honolulu and Maui complaints likewise focus on WEH's distribution, marketing, advertising, promotion, and supply of petroleum products. *See, e.g.*, Ex. 3, Honolulu Compl. ¶ 23(h) (WEH "has tortiously distributed, marketed, advertised, and promoted its products in Hawai'i, with knowledge that those products have caused and will continue to cause climate crisis-related injuries" and "marketed fossil fuel products to Hawai'i consumers through more than thirty BHP-branded retail petroleum service stations throughout Hawai'i"); Ex. 4, Maui Compl. ¶ 23(i) (WEH "has tortiously distributed, marketed, advertised, and promoted its products in Hawai'i" and); *id.* ¶ 23(j) (WEH "has advertised in print publications circulated widely to Hawai'i consumers . . . . [t]hese advertisements contained no warning commensurate with the risks of [WEH's] products. Moreover, these advertisements also contained false or misleading statements, misrepresentations, and/or material omissions obfuscating the connection between [WEH's] fossil fuel products and climate change, and/or misrepresenting [WEH's] products or [WEH] itself as environmentally friendly"). In short, it is clear from the types of claims the plaintiffs have brought and the allegations in the complaints themselves, that the claims in all three state court cases relate to "the pricing, sale, purchase, manufacture, exchange, marketing, delivery, and/or offering of gasoline, diesel jet fuel and/or any other petroleum products" and thus plaintiffs are precluded from bringing such claims against WEH.

**2.** **This Court may enjoin the state court proceedings to prohibit Hawaiʻi and its political subdivisions from pursuing Settled Claims against WEH.**

Because this Court retained "continuing jurisdiction over the Settlement Amount, the Settling Parties and the Settlement Claimants for the purposes of enforcing, implementing, administering, construing and interpreting the Settlement Agreement," Dkt. 276 at 7, under the All Writs Act, it is "empower[ed] . . . to protect its judgment from a subsequent action that frustrates the purpose of the settlement agreement and order." *Sandpiper Village Condo. Ass'n v. Louisiana-Pacific Corp.*, 428 F.3d 831, 841 (9th Cir. 2005); *see also Brother Recs., Inc. v. Jardine*, 432 F.3d 939, 943 (9th Cir. 2005) (district court can "enjoin state court litigation if that litigation is barred by the res judicata effect of the district court's earlier judgment"*)*.

Here Hawaiʻi's and its political subdivisions' lawsuits do just that. All three state court cases have made claims against WEH that are based on WEH's alleged deceptive marketing and sale of petroleum products *before* the date of the settlement. In short, Hawaiʻi, Honolulu, Maui, and the Honolulu Board of Water Supply are all pursuing claims that were settled and released, which violates this Court's final judgment "fully releas[ing] and discharge[ing] [WEH] with respect to Settled Claims belonging to Plaintiffs" and "extinguish[ing] any liability of [WEH] and Released Parties with respect to the Settled Claims." Doc. 276 ¶¶ 6, 9. To allow their claims to proceed would be to ignore the Court's judgment. Thus, their claims should be enjoined.

## CONCLUSION

Because Hawai'i's and its political subdivisions' claims against WEH are precluded by the judgment in this case, Doc. 276, and the release that Hawai'i negotiated and agreed in the parties' settlement, *see* Ex. 1, WEH asks that this Court enjoin Hawai'i and its political subdivisions, the County of Maui, the City and County of Honolulu, and the Honolulu Board of Water Supply, from pursuing the claims in their pending state court cases against WEH that are precluded by this Court's final judgment.

Dated: May 14, 2026

Respectfully submitted,

*/s/ Eliot F. Turner*
Eliot F. Turner (pro hac vice)
Rachel Roosth (pro hac vice)
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Boulevard
Suite 2000
Houston, Texas 77010
Tele: 713.651.5151

*Attorneys for Defendant*
*Woodside Energy Hawaii Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

/s/ Eliot F. Turner
Eliot F. Turner