ANNE E. LOPEZ                        7609
Attorney General of Hawai‘i

MELISSA J. KOLONIE                   10209
Supervising Deputy Attorney General
WADE H. HARGROVE III                     7897
LYLE T. LEONARD                          9376
Deputy Attorneys General
Department of the Attorney General
State of Hawai‘i
425 Queen Street
Honolulu, Hawai‘i 96813
Telephone: (808) 587-3050
Facsimile: (808) 587-3077
Email: wade.h.hargrove@hawaii.gov

(Additional counsel listed on next page)

Attorneys for Respondent
STATE OF HAWAI‘I

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| EARL I. ANZAI, ATTORNEY GENERAL FOR THE STATE OF HAWAII, as *Parens Patriae* for the Natural Persons Residing in Hawaii, and on behalf of the State of Hawaii, its Political Subdivisions and Governmental Agencies,<br><br>Plaintiffs,<br><br>vs.<br><br>CHEVRON CORPORATION; CHEVRON U.S.A., INC.; TESORO HAWAII CORPORATION, as Successor-In-Interest to BHP PETROLEUM AMERICAS REFINING INC.; BHP HAWAII INC; SHELL OIL COMPANY; SHELL OIL PRODUCTS COMPANY; TEXACO, | CIVIL NO. 1:98-cv-00792-MWJS-WRP<br><br>**RESPONDENT STATE OF HAWAII'S CONSOLIDATED OPPOSITION TO DEFENDANTS CHEVRON CORPORATION, CHEVRON U.S.A. INC., SHELL USA, INC., SHELL OIL PRODUCTS COMPANY LLC, WOODSIDE ENERGY HAWAII, INC., CONOCOPHILLIPS, CONOCOPHILLIPS COMPANY, PHILLIPS 66, AND PHILLIPS 66 COMPANY'S MOTIONS TO** |

1

INC.; TEXACO REFINING AND
MARKETING, INC.; TESORO
PETROLEUM CORPORATION;
TESORO HAWAII CORPORATION;
TOSCO CORPORATION; UNION
OIL COMPANY OF CALIFORNIA;
and UNOCAL CORPORATION,

Defendants.

**ENFORCE THE JUDGMENT AND
SETTLEMENT; DECLARATION
OF WILLIAM LIANG; EXHIBITS 1-
10; CERTIFICATE OF SERVICE**

The Honorable Micah W. J. Smith
Trial Date: None.

SHER EDLING LLP
VICTOR M. SHER (*pro hac vice*)
MATTHEW K. EDLING (*pro hac vice)*
STEPHANIE D. BIEHL (*pro hac vice*)
WILLIAM LIANG (# 11790)
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
Telephone:  (628) 231-2500
Facsimile:  (628) 231-2929
Email:      vic@sheredling.com
            matt@sheredling.com
            stephanie@sheredling.com
            william@sheredling.com

2

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................4

    I.     The Price-Fixing Lawsuit Culminating in Two Settlements ...............4

    II.    The Hawaiʻi Climate Deception Suits ..................................................8

    III.   The Present Motions ...........................................................................11

LEGAL STANDARD ........................................................................13

ARGUMENT.....................................................................................15

    I.     The Court Cannot Grant the Requested Injunctions. ...........................15

         A.    The Anti-Injunction Act Prohibits the Injunctions. .................15

         B.    Movants Have Not Even Attempted to Show Their Equitable Entitlement to a Permanent Injunction. ...................................18

    II.    The Settlements Do Not Bar the State's Climate Deception Case Because    They Only Released Claims Relating to Price-Fixing in the Hawaiʻi Motor   Fuel Market. .....................................................22

         A.    The Settlements Expressly Do Not Release Claims Arising From Allegations Factually Unrelated to This Suit, Like Those in the State's Climate Deception Suit................................................23

             1.    The first paragraph does not include the State's climate deception claims because they could not have been brought in this suit. .......................................................23

             2.    The second paragraph excludes the State's climate deception claims because they are unrelated to several of the enumerated topics. .......................................................27

B.    The Parties' Intentions to Limit the Release Are Confirmed
By, and Consistent With, the Identical-Factual-Predicate
Doctrine. ...............................................................................31

III.   Movants' Requested Injunctions Would Intrude into State Court
Functions    and Would Be Unworkable, Impractical, and
Overbroad.....................................................................................38

A.    The Court Cannot Enjoin Claims Arising From Fraudulently
Concealed Conduct or Claims That Had Not Accrued at the
Time the Settlements Were Executed......................................40

B.    The Court Cannot Enjoin Claims Arising From Conduct After
2002 or Direct the Content of State Court Pleadings. .............43

C.    The Court Cannot Enjoin Claims by Nonparties.....................44

CONCLUSION....................................................................................45

# TABLE OF AUTHORITIES

## Cases

*Allstate Ins. Co. v. Preston*,
842 F. Supp. 1441 (S.D. Fla. 1992) ...................................................................20

*Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*,
398 U.S. 281 (1970) ...........................................................................................17

*Battle v. Liberty Nat. Life Ins. Co.*,
877 F.2d 877 (11th Cir. 1989).............................................................................18

*Bennett v. Medtronic, Inc.*,
285 F.3d 801 (9th Cir. 2002)...............................................................................18

*Breen v. Knapp*,
640 F. Supp. 3d 568 (E.D. La. 2022) ........................................................... 19, 22

*Butcher v. Gulf Ins. Co.*,
2005 WL 1514086 (N.D. Cal. June 15, 2005) .....................................................30

*California v. Randtron*,
69 F. Supp. 2d 1264 (E.D. Cal. 1999)..................................................................15

*Camacho v. Ess-A-Bagel, Inc.*,
2014 WL 6985633 (S.D.N.Y. Dec. 11, 2014) .....................................................34

*Chammami v. Acropolis Mediterranean Food Inc.*,
2020 WL 6586653 (M.D. Fla. Nov. 10, 2020) ....................................................34

*Chick Cham Koo v. Exxon Corp.*,
486 U.S. 140 (1988) ...........................................................................................19

*City & Cnty. of Honolulu v. Sunoco LP (Honolulu I)*,
39 F.4th 1101 (9th Cir. 2022)................................................................ 10, 25, 42

*City & Cnty. of Honolulu v. Sunoco LP (Honolulu II)*,
153 Hawai'i 326 (2023) ...................................................................................9, 10

*County of San Mateo v. Chevron Corp.*,
32 F.4th 733 (9th Cir. 2022)...................................................................... 25, 42

*Danny K. ex rel. Luana K. v. Dep't of Educ.*,
2011 WL 4527387 (D. Haw. Sept. 27, 2011) ......................................................20

*Dongbu Ins. Co. v. Hayes*,
2015 WL 12670499 (D. Haw. Mar. 31, 2015)......................................................29

3

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .................................................................................................19

*Feller v. Transamerica Life Ins. Co.*,
2016 WL 6602561 (C.D. Cal. Nov. 8, 2016)......................................... 33, 37, 38

*First City Bank v. Nat'l Credit Union Admin. Bd.*,
111 F.3d 433 (6th Cir. 1997).....................................................................................30

*Flanagan v. Arnaiz*,
143 F.3d 540 (9th Cir. 1998).....................................................................................18

*Flood v. Carlson Restaurants Inc.*,
2015 WL 4111668 (S.D.N.Y. July 6, 2015) .......................................................34

*Forauer v. Vermont Country Store, Inc.*,
2015 WL 225224 (D. Vt. Jan. 16, 2015)..............................................................34

*Forry, Inc. v. Neundorfer, Inc.*,
837 F.2d 259 (6th Cir. 1988)....................................................................................40

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013)..................................................................................21

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010)................................................................. 26, 32

*Illinois v. Abbott & Assocs., Inc.*,
460 U.S. 557 (1983) .................................................................................................36

*In re Am. Express Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011)....................................................................................33

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*,
85 F.4th 1070 (11th Cir. 2023) ...........................................................................36

*In re Conseco Life Ins. Co. Cost of Ins. Litig.*,
2005 WL 5678842 (C.D. Cal. Apr. 26, 2005) ..................................................37

*In re CPI Aerostructures S'holder Derivative Litig.*,
2023 WL 2969279 (E.D.N.Y. Feb. 14, 2023)....................................................34

*In re Davis*,
691 F.2d 176 (3d Cir. 1982).....................................................................................20

*In re Diet Drugs Prods. Liab. Litig.*,
369 F.3d 293 (3d Cir. 2004)................................................................. 39, 40, 43

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011).................................................................36

4

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
   2015 WL 1153864 (N.D. Cal. Mar. 13, 2015)......................................................34

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   91 F.4th 174 (4th Cir. 2024)................................................................. 32, 33

*In re Managed Care, Litig.*,
   756 F.3d 1222 (11th Cir. 2014)...........................................................................42

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   741 F. App'x 367 (9th Cir. 2018) .......................................................................40

*In re Walgreen Co. Wage & Hour Litig.*,
   747 F. App'x 619 (9th Cir. 2019) .......................................................................16

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005).............................................................................40

*Mata v. Manpower Inc.*,
   2016 WL 948997 (N.D. Cal. Mar. 14, 2016).......................................................37

*Mavrix Photographs LLC v. Intergroup Vista, LLC*,
   2015 WL 12832043 (C.D. Cal. June 2, 2015) ....................................................20

*Melton v. Alaska Career College, Inc.*,
   738 Fed. App'x 895 (9th Cir. 2018)....................................................................25

*Merle Norman Cosms., Inc. v. Victa*,
   936 F.2d 466 (9th Cir. 1991)...............................................................................21

*Mitchum v. Foster*,
   407 U.S. 225 (1972) ...................................................................................... 19, 39

*Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*,
   660 F.2d 9 (2d Cir. 1981)...................................................................................36

*Palekaiko Beachboys Club, Inc. v. City & Cnty. of Honolulu*,
   2026 WL 18748 (D. Haw. Jan. 2, 2026).............................................................26

*Pub. Access Trails Hawai'i v. Haleakala Ranch Co.*,
   153 Hawai'i 1 (2023) ..........................................................................................14

*Sandpiper Vill. Condo. Ass'n, Inc. v. La.-Pac. Corp.*,
   428 F.3d 831 (9th Cir. 2005)........................................................... 13, 16, 17, 18

*Santiago v. Tanaka*,
   137 Hawai'i 137 (2016) .............................................................................. 14, 24, 31

*Seven Z Enters., Inc. v. Giant Eagle, Inc.*,
  379 F. Supp. 3d 455 (W.D. Pa. 2019)..............................................................20

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011) ........................................................ 13, 15, 19, 23

*Sonner v. Premier Nutrition Corp.*,
  49 F.4th 1300 (9th Cir. 2022)..........................................................13

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ......................................................................13

*Trs. of Constr. Indust. v. Desert Valley Landscape Maint., Inc.*,
  333 F.3d 923 (9th Cir. 2003)...........................................................25

*UniSuper Ltd. v. News Corp.*,
  2006 WL 4804015 (Del. Ch. May 31, 2006) ......................................40

*United States v. Purdue Frederick Co.*,
  963 F. Supp. 2d 561 (W.D. Va. 2013) ........................................ 20, 21

*United States v. Purdue Pharma L.P.*,
  737 F.3d 908 (4th Cir. 2013).............................................................14

*Valley Forge Ins. Co. v. Field*,
  670 F.3d 93 (1st Cir. 2012) ..............................................................29

*W. Sys., Inc. v. Ulloa*,
  958 F.2d 864 (9th Cir. 1992)............................................................16

*Williams v. Boeing Co.*,
  517 F.3d 1120 (9th Cir. 2008)............................................... 32, 33, 38

*Wojciechowski v. Kohlberg Ventures, LLC*,
  923 F.3d 685 (9th Cir. 2019)............................................................14

*Zepeda v. U.S. I.N.S.*,
  753 F.2d 719 (9th Cir. 1983)............................................................45

## Statutes

15 U.S.C. § 15c(a) ...................................................... 4, 5, 35

15 U.S.C. § 15c(b) ....................................................................5, 35

28 U.S.C. § 1367(a) ..............................................................25

28 U.S.C. § 2283..................................................... 1, 15, 17

29 U.S.C. § 201..............................................................34

6

H.R.S. § 480-14 ............................................................................... passim

H.R.S. § 480-2 ...........................................................................................5

**Legislative Enactments**

Pub. L. 94-435, tit. III § 301 ....................................................................4


**Rules**

Fed. R. Civ. P. 23 ............................................................... 33, 35, 36

Fed. R. Civ. P. 23.1 ...............................................................................34

Fed. R. Civ. P. 65(d) .............................................................................45

Haw. R. Civ. P. 8(c) ..............................................................................21

D. Haw. L. R. 7.2 ..................................................................................20


**Other Authorities**

6 Newberg on Class Actions §§ 18:19, 18:21 (6th ed. 2022) ...............33

*Class Action Settlements: Res Judicata, Release, and the Identical Factual
Predicate Doctrine,*
  55 Idaho L. Rev. 263 (2019) ...............................................................33

Restatement (Second) of Contracts § 203 ............................................14

Restatement (Second) of Torts § 943 ...................................................40

## INTRODUCTION

Last year, the State of Hawaiʻi brought suit in Hawaiʻi court against a group of oil and gas companies, including the moving defendants here, alleging they engaged in a decades-long campaign to deceive consumers about the central role of their fossil fuel products in causing climate change. Two Hawaiʻi local governments had brought separate cases alleging similar claims in 2020. Six years after the first of those climate deception suits, Movants now seek to enjoin prosecution of all three actions, arguing that the claims in each are barred by a pair of settlement agreements (the Settlements) that the Attorney General negotiated a quarter century ago to resolve this *parens patriae* antitrust case. According to Movants, the Settlements immunize them from all liabilities—against any claim by the State, its subdivisions, or any state resident—for any unfair or deceptive practice they committed before executing the Settlements. Not so. In resolving allegations that Movants (and others) conspired to fix gasoline prices in Hawaiʻi, the Settlements released only potential claims arising from the same set of facts that gave rise to the price-fixing claims. The State's climate deception case, by contrast (like the two similar local government suits), involves entirely distinct transactions, misconduct, and harms.

At the outset, the Court need not reach the merits of Movants' wildly overbroad release interpretation because their requested injunctive relief runs headlong into the Anti-Injunction Act, 28 U.S.C. § 2283, and equitable limitations.

1

Federal courts may enjoin state court proceedings only in narrow circumstances not present here, as Congress places trust in state courts' competence to adjudicate preclusion defenses arising from federal judgments. The proper forum for Movants to argue that the Settlements preclude the State's claims is the Hawai'i Circuit Court where the State's complaint is pending.

If this Court does reach the merits, Movants' reading must be rejected because it flouts two textual limitations in the Settlements that confirm the parties intended to release only claims arising from the same transactions as this suit's price-fixing claims. *First*, in binding a wide set of absent parties, the Settlements release only claims that "could have been brought . . . in the [price-fixing] Lawsuit" by "the Attorney General," in her distinct statutory capacity under federal antitrust law to represent and bind "all natural persons" (and others) in Hawai'i. The claims in the State's climate deception case could not have been brought in this suit, both because those unrelated state-law claims would have fallen outside this Court's subject matter jurisdiction, and because they would be beyond the scope of the Attorney General's representation. *Second*, the Settlements expressly do not release claims "substantially unrelated to" any of several enumerated topics—including "antitrust laws and regulations"—that define the key features of the allegations the State settled. Movants do not dispute that climate deception claims are unrelated to many of those categories, but instead urge a misreading of the exclusion that would,

among other flaws, give opposite effect to the same grammatical formulation when it appears in adjoining sentences.

Even if the Settlements were amenable to Movants' reading, moreover, the releases could not have the legal effects Movants assert because of a rule, grounded in due process, known as the "identical-factual-predicate doctrine." Under that doctrine, federal courts can approve and enforce a settlement agreement releasing unpleaded claims held by absent parties, but only to the extent those claims arise from the same factual predicate as the claims underlying the settlement. That doctrine was well-developed at the time of the Settlements, and the Settlements' language reflects the parties' intent to incorporate its guardrails.

Finally, this Court may also deny the instant motions—regardless of the Settlements' meanings or whether injunctive relief is categorically barred—because Movants' proposed relief would intrude on state court functions and is impermissibly imprecise, unworkable, and overbroad. This Court, for example, cannot enjoin claims the State alleges were fraudulently concealed when the Settlements were executed. Nor can the Court bar claims based largely on conduct postdating the Settlements, direct the content of state court pleadings, or enjoin non-parties from pursuing their own separate climate deception suits.

The Court should deny Movants' motions in full.

## BACKGROUND

### I.    The Price-Fixing Lawsuit Culminating in Two Settlements

In 1998, then-Hawaiʻi Attorney General Bronster—suing "both as *parens patriae* for the natural persons residing in the State of Hawaii and on behalf of the State of Hawaii, its political subdivisions, and government agencies"—filed this price-fixing lawsuit against several Hawaiʻi gasoline refiners and wholesalers. 2d Am. Complaint ("Compl.") ¶ 2. The suit alleges Defendants entered "a series of illegal agreements" to "fix[] retail gasoline prices at uncompetitive levels." *Id.* ¶ 1. According to the operative complaint, "Defendants agreed among themselves to allocate market shares and fix, control, stabilize, and maintain the price of motor fuel (both gasoline and diesel) sold to retail service stations and to consumers" in the Hawaiʻi market at artificially high levels. *Id.* ¶ 47.

To remedy that anticompetitive conduct, the Attorney General invoked this Court's jurisdiction under the federal Sherman Antitrust Act. Compl. ¶ 5; *see* 15 U.S.C. § 15c(a)(1). State attorneys general are authorized to bring claims in federal district court for Sherman Act violations "as parens patriae on behalf of natural persons residing in such State." 15 U.S.C. § 15c(a)(1))[1]; *see also* HRS

---

[1] The *parens patriae* cause of action codified at 15 U.S.C. § 15c was created by the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as an amendment to the Clayton Act. *See* Pub. L. 94-435, tit. III § 301 (Sept. 30, 1976). Case decisions refer to claims under that provision variously as Sherman Act claims, Clayton Act claims,

§ 480-14(a)–(b) (authorizing attorney general to recover damages for violations of federal antitrust law and to sue on behalf of subdivisions and state residents). The Act dictates procedures for such representative suits. Notably, the prosecuting attorney general must provide public notice and an opportunity for "[a]ny person on whose behalf [the] action is brought" to opt out of the case. 15 U.S.C. §§ 15c(a)(1), (b)(1)–(3). The Act further requires court approval and additional notice before claims may be "dismissed or compromised." *Id.* § 15c(c).

In addition to federal antitrust claims, the Attorney General invoked the Court's supplemental jurisdiction to hear state-law "claims [] so related to the Sherman Act [] claims that they form part of the same case and controversy." Compl. ¶ 6. Based on the same price-fixing activities alleged in support of the Sherman Act claim, the Attorney General asserted violations of several provisions of HRS Chapter 480, which codifies Hawaii's antitrust and unfair and deceptive practices laws. *See id.* ¶¶ 6, 86–103; *see also, e.g.*, *id.* ¶ 97 (describing deceptive trade practices claim under HRS 480-2 as arising from same conduct "as alleged in ¶¶ 47 through 82" of complaint, which collectively detail "the price fixing conspiracy" (*id.* at p.16)).[2]

---

or claims under the Hart-Scott-Rodino Act. For simplicity and consistency, the State herein refers to its cause of action under Section 15c as its Sherman Act claim.

[2] Akin to the Sherman Act, HRS 480 authorizes the Attorney General to bring a "class action on behalf of consumers . . . as parens patriae on behalf of natural

Across years of negotiations, the parties reached agreement on a pair of proposed settlements to collectively resolve the claims against all defendants. Before approving them, the court directed the Attorney General to publish in local newspapers "notice of [each] Settlement Agreement to natural persons residing in the State of Hawaii," to "compl[y] with 15 U.S.C. § 15c and the requirements of due process." *E.g.*, Order of Preliminary Approval of 2002 Settlement (Ex. 1) ¶ 3. The court allowed "natural persons residing in the State of Hawaii at any time to the present" to opt out (and thus avoid being bound by the Settlements) by sending a written request; several individuals exercised that right. *Id.* ¶ 5; *see also* Notice of 2002 Settlement (Ex. 2) at 1; Redacted List of Opt-Outs to 2002 Settlement (Ex. 3).

The court also held hearings to "consider whether the proposed settlement[s] should be approved as fair, adequate, and reasonable." Partial Final Judgment Approving 2000 Settlement (Ex. 4) at 2 ("2000 Final Judgment"); Final Judgment Approving 2002 Settlement (Ex. 5) at 2 ("2002 Final Judgment"). At the first hearing, Professor Samuel Issacharoff—an expert on civil procedure, antitrust litigation, and class actions—explained that an attorney general in a federal *parens patriae* antitrust suit serves as "the representative" of "absent consumers" bound by the judgment. Transcript of 2000 Fairness Hearing (Ex. 6) at 6–8, 17–18. To assist

---

persons residing in the State" for injuries caused by violations of Chapter 480. *Id.* § 480-14(b).

the court in its duty to "make sure that the overall structure of the settlement . . . is fair to Hawaii consumers," Professor Issacharoff testified favorably about the settlement terms and process. *Id.* at 9–27.

On January 28, 2000, the court entered a partial final judgment approving an initial $15 million settlement with defendants BHP Hawaii, Inc. (now known as Movant Woodside Energy Hawai'i), Tesoro Hawaii Corp., and associated entities. 2000 Final Judgment; *see also* 2000 Settlement Agreement and Mutual Release (Ex. 7) ("2000 Settlement").[3] On April 30, 2002, the court entered a final judgment approving a $20 million settlement with the remaining defendants, including the three other Movants here or their purported corporate predecessors. 2002 Final Judgment; *see also* 2002 Settlement Agreement and Mutual Release (Ex. 8) ("2002 Settlement"). The same day, the Court approved a *cy pres* distribution of Settlement funds to the State Highway Fund and the Attorney General's Antitrust Fund. *See* Order for Distribution of 2002 Settlement Funds (Ex. 9) ¶¶ 2, 4.

Through similarly worded provisions, both Settlements released a set of "Settled Claims" on behalf of the State, its subdivisions, and all "natural persons residing in Hawaii from any time to the present" who had not opted out. 2002

---

[3] The Final Judgments reiterate some—but not all—of their respective Settlements' terms. Except as otherwise noted, all references to the Settlements are to the settlement agreements themselves.

Settlement ¶¶ 1.12, 1.15, 3.7(a); *see also* 2000 Settlement ¶¶ 1.13, 1.16, 3.8(a). The

present motions turn on the legal effect of those provisions.

## II.      The Hawaiʻi Climate Deception Suits

In 2020, nearly two decades after final judgment in this case, the City and

County of Honolulu (later joined by the Honolulu Board of Water Supply) and the

County of Maui brought the first two climate deception lawsuits in Hawaiʻi state

court against fossil fuel companies, including Movants and/or their corporate

successors. The State filed its own climate deception suit in 2025, and expressly

carved out from that suit's geographic scope the harms sought to be redressed in the

*Honolulu* and *Maui* actions.[4] *See Hawaiʻi v. BP P.L.C.*, No. 1CCV-25-0000717

(Haw. Cir. Ct.), Dkt. 1, ¶ 22 (Ex. 10) ("State Complaint").

The thrust of all three suits is that the "Defendants knew of the dangers of

using their fossil fuel products, knowingly concealed and misrepresented the

---

[4] The State Complaint provides: "This suit shall not preempt, displace, or subsume
the climate-deception suits brought by the City and County of Honolulu or the
County of Maui ('Local Government Entities'), which are *City and County of
Honolulu et al. v. Sunoco LP et al.*, No. 1CCV-20-0000380, and *County of Maui v.
Sunoco LP et al.*, No. 2CCV-20-0000283, respectively. The geographic areas
covered by those suits are excluded from, and not subsumed by, this action, except
as to state-owned property and assets, and except as to harms or violations for which
the State or State agencies (i) have exclusive authority to recover damages or obtain
injunctive relief and/or (ii) have concurrent, supplementary, complementary, and/or
overlapping authority to recover damages or obtain injunctive relief with the Local
Government Entities if the Local Government Entities are unable to pursue claims
for such harms or violations."

climate impacts of their fossil fuel products, and engaged in sophisticated disinformation campaigns to cast doubt on the science, causes, and effects of global warming, causing increased fossil fuel consumption and greenhouse gas emissions, which then caused property and infrastructure damage" in Hawai'i. *City & Cnty. of Honolulu v. Sunoco LP*, 153 Hawai'i 326, 334 (2023) (*Honolulu II*), *cert. denied*, 145 S. Ct. 1111 (Jan. 13, 2025) (quotations omitted); *see also, e.g.*, State Compl. ¶¶ 1–2, 7–13. While Defendants' tactics—which began in earnest in the 1980s— have shifted over time, their "coordinated campaign of disinformation and deception continues today," largely through Defendants' "greenwashing" of their brands and products as climate-friendly. *Id.* ¶ 160; *see, e.g.*, *id.* ¶¶ 182–191, 201–212, 218–222.

As the State Complaint details, the consequences of Defendants' still-ongoing misconduct have been, and will continue to be, catastrophic for Hawai'i. By artificially inflating and sustaining the market for fossil fuels, Defendants have caused or exacerbated sea level rise, fire risk, more frequent extreme weather events, and other injuries that will collectively require the State to spend massive sums on mitigation and adaptation. *See id.* ¶ 2.[5]

---

[5] Numerous State-owned facilities have already experienced flooding from sea level rise and extreme weather events; future sea level rise already locked in by Defendants' past conduct threatens at least 43 miles of roads and 105 bridges in the State, and has been estimated to displace 20,000 residents and impact $19 billion in

For nearly six years, no defendant raised the price-fixing Settlements as a purported bar to any of the Hawaiʻi climate deception suits—all of which, as Movants do not contest, involve different factual predicates, alleged misconduct, and harms than this action. In *Honolulu*, the first-filed and most procedurally advanced of the suits, Movants have never mentioned the Settlements or any defense arising from them, despite pressing dozens of other arguments at every level of the state and federal judiciary. The *Honolulu* defendants removed the case to federal court, appealed the order remanding the case, and petitioned for certiorari from the Ninth Circuit opinion affirming remand. *See City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101 (9th Cir. 2022) (*Honolulu I*), *cert. denied*, 143 S. Ct. 1795 (Apr. 24, 2023). Back in Hawaiʻi Circuit Court, they filed multiple motions to dismiss, appealed the denial of the motions to dismiss, and again petitioned for certiorari from the Hawaiʻi Supreme Court's opinion affirming the denial. *See Honolulu II*, 153 Hawaiʻi 326 (2023). While that appeal was pending, the *Honolulu* defendants, including all Movants, answered the complaint. *See Honolulu v. Sunoco LP*, No. 1CCV-20-0000380 (Haw. Cir. Ct.), Dkt. 734, 742, 744, 746, 748, 752 (all filed Sep. 12, 2022). Finally, they pressed a slew of summary judgment motions,

---

structures. State Compl. ¶¶ 280, 282. Sea level rise threatens hundreds of acres of public beaches and parks, hundreds of cultural sites, and many Hawaiian Home Lands communities. *Id.* ¶¶ 285–286.

10

which the court denied before setting a trial date. *See Honolulu* Dkt. 2273, 2275, 2277, 2279, 2299.[6]

In the State's case, similarly, no Movant mentioned the Settlements until February 2026, seven months after the State filed its complaint, when the defendants moved to extend a temporary stay. *See Hawai'i v. BP P.L.C.*, Dkt. 474 (March 4, 2026).[7] Judge Kimura rejected the defendants' argument that it should await, among other things, this Court's ruling on the present enforcement motions and lifted the stay on April 8, 2026. *See Hawai'i v. BP P.L.C.*, Dkt. 514 (April 8, 2026). The State's action is now moving forward.

## III.    The Present Motions

On January 30, 2026, Chevron moved this Court to enforce the 2002 Settlement that had become final twenty-four years earlier. ECF 1204. Shell filed a similar motion on March 11, 2026, ECF 1263, followed by ConocoPhillips and

---

[6] In denying a summary judgment motion on statute of limitations grounds, the court held it was premature to determine before discovery if Honolulu's claims were timely, leaving for later disposition when the claims accrued and if any tolling doctrine applied. *See Honolulu* Dkt. 2279.

[7] The court had earlier issued a stay to await potential guidance from a collateral suit the United States had filed against the State. *See Hawai'i v. BP P.L.C.*, Dkt. 406 (August 18, 2025) (granting temporary stay in light of complaint filed in *United States v. Hawai'i*, No. 1:25-cv-00179 (D. Haw. April 30, 2025)). After the state court declined to extend the stay in the State's action, the federal district court dismissed the United States' collateral challenge against the State for lack of jurisdiction. *See* Order Granting Defendants' Motion for Judgment on the Pleadings, *United States v. Hawai'i*, ECF 43 (April 15, 2026).

Phillips 66 (collectively, "ConocoPhillips") on May 20, 2026, ECF 1300.[8] Woodside Energy Hawaiʻi filed a motion to enforce the 2000 Settlement on May 14, 2026. ECF 1298.

According to Movants, they now belatedly realize—six years after the first climate deception suit was filed in Hawaiʻi—that the two Settlements released not only potential claims related to gas price-fixing allegations, but also a vast body of claims based on unrelated transactions, including the allegations underlying the State's climate deception suit. Movants contend that the releases equally bind the State, its subdivisions, and all natural persons in Hawaiʻi, and even bar claims that rely substantially on allegations postdating the Settlements. Movants ask this Court to enjoin the State, as well as the other non-party governmental entities who have filed their own separate climate deception suits, from pursuing any aspects of the state-court complaints they have filed, or from subsequently pursuing any similar claims to the extent based on pre-Settlement conduct.

The State believes the present motions should be denied in their entirety, but advances its arguments herein only with respect to the State's climate deception case. The State makes no representations on behalf of the City & County of

---

[8] ConocoPhillips filed a motion to intervene, which included a proposed motion to enforce as an attachment, on March 10, 2026. ECF 1262. Although ConocoPhillips was not a party to the Settlements, it asserts a right to enforce based on its status as successor in liability to settling defendant Tosco and its then-parent.

Honolulu, the Honolulu Board of Water Supply, or the County of Maui, which are not parties to this case and are not before this Court. *See* Argument § III.C & n.33, *infra*.

## LEGAL STANDARD

The Anti-Injunction Act broadly prohibits federal courts from enjoining pending state court proceedings. To come within one of the Act's three narrow exceptions, a movant must make "a strong and unequivocal showing" that injunctive relief is "necessary." *Sandpiper Vill. Condo. Ass'n, Inc. v. La.-Pac. Corp.*, 428 F.3d 831, 842 (9th Cir. 2005). "[A]ny doubts . . . will be resolved in favor of permitting the state courts to proceed," *id.*, and an injunction to effectuate a prior federal court judgment "can issue only if preclusion is clear beyond peradventure," *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011). Even when an injunction is permissible under the Act, the movant must still establish its right to equitable relief, and federal courts retain wide equitable discretion to deny relief based on "respect for the state court" and "the strong presumption against issuing an injunction." *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300, 1308 (9th Cir. 2022).

A court evaluating the "preclusive effect of a federal-court judgment" applies the "federal common law of preclusion[, which] is, of course, subject to due process limitations." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Because a judgment

13

based on a settlement "receives its legitimating force from the fact that the parties consented to it," courts "look[] to the intent of the settling parties to determine [its] preclusive effect." *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 689 (9th Cir. 2019) (quotations omitted). Thus, "the preclusive effect of a judgment based on such an agreement can be no greater than the preclusive effect of the agreement itself." *United States v. Purdue Pharma L.P.*, 737 F.3d 908, 913 (4th Cir. 2013).

The Settlements are governed by "federal law where applicable, and otherwise" by Hawai'i law. 2002 Settlement § 6.6; 2000 Settlement § 7.6. Under Hawai'i law, settlement agreements are interpreted as ordinary contracts. *Pub. Access Trails Hawai'i v. Haleakala Ranch Co.*, 153 Hawai'i 1, 26 (2023). "[A]n agreement should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase, or clause." *Id.* (quotations omitted). To the extent an agreement is "ambiguous," a court may "consider evidence beyond the four corners of the contract." *Id.* (cleaned up). And "[s]ince an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous." *Santiago v. Tanaka*, 137 Hawai'i 137, 155 (2016) (quoting Restatement (Second) of Contracts § 203, cmt. b (1981)).

## ARGUMENT

### I.      The Court Cannot Grant the Requested Injunctions.

This Court need not reach the merits of Movants' arguments about the Settlements' meaning because threshold obstacles bar the injunctive relief they seek. While Movants could seek to raise the Settlements as defenses to liability *in Hawaiʻi state court*, the Anti-Injunction Act bars *this* Court from enjoining the State's action. And even if an exception to the Act applied, Movants still could not (and have not tried to) satisfy the factors necessary to obtain equitable relief.

### A.      The Anti-Injunction Act Prohibits the Injunctions.

The Anti-Injunction Act bars federal courts from enjoining state-court proceedings in most circumstances, to effectuate the "core message" of "respect for state courts." *Smith*, 564 U.S. at 306. None of the Act's three "narrow" exceptions allow this Court to enjoin the State's suit or issue a declaration about the Settlements' preclusive scope. *Id.* (quotations omitted).[9]

Movants first invoke the re-litigation exception, which permits a federal court to enjoin a state suit where necessary "to protect or effectuate its judgments." 28 U.S.C. § 2283; *see* Chevron Mot. at 21–23; Shell Mot. at 12–13; ConocoPhillips

---

[9] "[T]he Anti–Injunction Act applies to declaratory relief if it would have the same effect as an injunction," such as "an order declaring the proper preclusive scope of the [Settlements,] . . . since the state court would be obligated to give the declaratory judgment preclusive effect." *California v. Randtron*, 69 F. Supp. 2d 1264, 1270 n.5 (E.D. Cal. 1999), *aff'd*, 268 F.3d 891 (9th Cir. 2001).

Mot. at 24–26; Woodside Mot. at 19. An "essential prerequisite" to that exception is that "the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Sandpiper Village*, 428 F.3d at 847 (cleaned up). Thus, "a subsequent action may be barred only when it arises from the same transaction, or series of transactions," to ensure the plaintiff attains a "full and fair opportunity" to litigate its claims. *Id.* at 847–848 (cleaned up); *see also W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 869 (9th Cir. 1992) (the Ninth Circuit has "applied the [re-litigation] exception as long as [the parties] had a full and fair opportunity to litigate the issue in the prior proceeding" (emphasis omitted)).

The exception cannot apply here because "[t]he two actions do not arise from the same transactional nucleus of facts, involve the purported infringement of the same right, or require substantially the same evidence." *See In re Walgreen Co. Wage & Hour Litig.*, 747 F. App'x 619, 620 (9th Cir. 2019) (exception did not apply even though "release's language encompasses" state claims). The Settlements resolved allegations that Movants conspired to fix motor fuel prices in Hawai'i above competitive levels between approximately 1989 and 1998. *See* Background § I, *supra*. The State's climate deception claims, in contrast, allege that beginning as early as the 1960s, intensifying in the late 1980s, and continuing through the present, Movants orchestrated a campaign to deceive consumers about their

16

products' climate risks, thereby causing ongoing harms to Hawaiʻi and its residents. *See* Background § II, *supra*. Separately, Movants cannot possibly argue that the State had a "full and fair opportunity" to litigate its climate deception claims, *Sandpiper Village*, 428 F.3d at 848, when, as explained below, *see infra* § III.A, Movants were fraudulently concealing those claims at the time of the Settlements.

Movants' invocation of the necessary-in-aid-of-jurisdiction exception is equally unavailing. *See* 28 U.S.C. § 2283; Chevron Mot. at 23–24; Shell Mot. at 12–13; ConocoPhillips Mot. at 22–24; Woodside Mot. at 19. That exception applies only where a state proceeding "so interfer[es] with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970). Because this action had "long since been resolved"—for more than twenty years—when the State filed its 2025 climate deception suit, the State's suit cannot possibly pose "an actual threat to an ongoing case." *Sandpiper Village*, 428 F.3d at 844, 847; *see id.* at 848 (exception inapplicable where federal suit was "not winding its way to trial," but had "achieved final judgment status more than six years before" state action resolved).

Movants argue that the exception automatically applies because the Court retained continuing jurisdiction to interpret the Settlements. *See* Chevron Mot. at 23–24; Shell Mot. at 13; ConocoPhillips Mot. at 22–24. But the Ninth Circuit has

17

held that a court's continuing jurisdiction over a settlement alone, even if expressly exclusive, does not suffice. *Sandpiper Village*, 428 F.3d at 846 (rejecting argument that provision "retaining 'exclusive and continuing' jurisdiction . . . provides a sufficient basis for the invocation of the 'necessary in aid of jurisdiction' exception" (quotations omitted)). The Settlements' continuing jurisdiction provisions confer subject matter jurisdiction to decide these motions, but they "do[] not allow the district court to enjoin any proceeding it wants to enjoin." *Id.* Movants cite no case holding that the exception applies whenever a party may have an affirmative defense in state court based on a prior federal judgment over which a district court has continuing jurisdiction, and the State has found none.[10]

### B.   Movants Have Not Even Attempted to Show Their Equitable Entitlement to a Permanent Injunction.

In only arguing (wrongly) that an injunction is permitted by the Anti-Injunction Act, Movants wholly fail to explain why they are entitled to such

---

[10] The cases Movants cite are inapposite. As the Ninth Circuit has explained, *Flanagan v. Arnaiz*, 143 F.3d 540 (9th Cir. 1998), turned on the fact that the federal plaintiffs' "*concurrent* state court action threatened the district court's jurisdiction over an *ongoing case* in which they were also parties"; *Flanagan* does not govern where, as here, there is an "absence of an actual threat to an ongoing case." *Sandpiper Village*, 428 F.3d at 847 (emphases added). *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 806 (9th Cir. 2002), does not mention continuing jurisdiction, apart from a passing citation to *Flanagan*, and in any case *reversed* the grant of an injunction under the Anti-Injunction Act. And *Battle v. Liberty Nat. Life Ins. Co.*, 877 F.2d 877, 881–82 (11th Cir. 1989) provides no support because its injunction was necessary to protect a highly complex and broad class settlement from being "destroy[ed]" via collateral state litigation—an imperative that is not present here.

equitable relief. That omission is fatal because "the fact that an injunction *may* issue under the Anti–Injunction Act does not mean that it *must* issue." *Chick Cham Koo v. Exxon Corp.*, 486 U.S. 140, 151 (1988). The opposite is true: the "heavy artillery" of enjoining state court proceedings is a last resort, as state courts are fully competent to "decid[e] whether and how [a consent judgment] has preclusive effect." *Smith*, 564 U.S. at 307. Indeed, assessing "preclusive effect is usually the bailiwick of the *second* court." *Id.*

Yet Movants do not even mention the familiar four-factor test that any party "seeking a permanent injunction must satisfy." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see, e.g.*, *Breen v. Knapp*, 640 F. Supp. 3d 568, 579 (E.D. La. 2022) (denying injunction of state court action in part because movant "did not address relevant factors").[11] They thus have not addressed: (1) irreparable injury; (2) lack of adequate remedies at law; (3) balance of hardships; or (4) the public interest. *See eBay*, 547 U.S. at 391. Movants have not carried the threshold burden of establishing an equitable basis for the injunction they seek in their opening briefs,

---

[11] Anti-suit injunctions are no exception. *See Mitchum v. Foster*, 407 U.S. 225, 243 (1972) ("[W]e do not question or qualify in any way the principles of equity . . . that must restrain a federal court when asked to enjoin a state court proceeding," even where the requested injunction would not violate "the anti-injunction statute.").

so they have forfeited any argument on that score. *See* D. Haw. L. R. 7.2 ("Any argument raised for the first time in the reply shall be disregarded.").[12]

Forfeiture aside, Movants could not make the necessary equitable showing because they cannot show, for example, that an injunction is necessary to avert irreparable harm. As other courts have explained when denying anti-suit injunctions, the mere "'cost, anxiety, and inconvenience' of being required to defend in state court does not rise to the level of irreparable injury" warranting injunctive relief, even where the Anti-Injunction Act might otherwise permit an injunction. *Seven Z Enters., Inc. v. Giant Eagle, Inc.*, 379 F. Supp. 3d 455, 460 (W.D. Pa. 2019) (after concluding Anti-Injunction Act exception applied, denying "extraordinary relief" of anti-suit injunction based on failure to satisfy equitable factors) (quoting *In re Davis*, 691 F.2d 176, 178 (3d Cir. 1982)); *see also, e.g.*, *Allstate Ins. Co. v. Preston*, 842 F. Supp. 1441, 1445–1446 (S.D. Fla. 1992) (similarly concluding that although "exception to the Anti-Injunction Act applies," injunction not warranted because "plaintiff's alleged harm . . . does not constitute irreparable injury"); *United States v. Purdue Frederick Co.*, 963 F. Supp. 2d 561,

---

[12] *Accord Danny K. ex rel. Luana K. v. Dep't of Educ.*, 2011 WL 4527387, at *7 n.17 (D. Haw. Sept. 27, 2011); *see also Mavrix Photographs LLC v. Intergroup Vista, LLC*, 2015 WL 12832043, at *1 (C.D. Cal. June 2, 2015) ("Arguments not raised by a party in its opening brief are waived.").

578 (W.D. Va. 2013) (explaining need to establish "irreparable injury" and other equitable factors even when Anti-Injunction Act exception applies).

Movants' failure is particularly acute here, because "[w]hen a state is significantly involved in a litigation, a litigant seeking to enjoin the proceedings must show the possibility of great and immediate irreparable injury that cannot be eliminated by his defense to the state proceeding." *Purdue Frederick Co.*, 963 F. Supp. 2d at 579 (parenthetical quoting 17A James William Moore, *Moore's Federal Practice* ¶ 121.09 (3d. ed. 2013)). But any potential judgment imposing liability on Movants in state court is years away, and Hawaiʻi procedural rules afford Movants numerous opportunities to raise defenses based on the Settlements in the state proceedings. *E.g.*, Haw. R. Civ. P. 8(c) (affirmative defenses of release and res judicata). And there is no question that "[s]tate courts are just as capable as federal courts in applying applicable law," including to adjudicate the type of preclusion defenses Movants may seek to raise. *Merle Norman Cosms., Inc. v. Victa*, 936 F.2d 466, 468 (9th Cir. 1991) (district court had discretion to refuse injunction when "nothing prevented [movant] from raising its defenses . . . in the California courts").

Movants' request for injunctive relief also founders on the time-honored principle that "one who seeks the help of a court of equity must not sleep on his rights." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1246 (9th Cir. 2013). If Movants believed that climate deception claims like the State's were

21

barred by the Settlements, they could have litigated that issue at any time since 2020, when the *Honolulu* and *Maui* cases were filed. But Movants have not raised the Settlements as defenses in those cases in six years, passing up numerous opportunities to do so in motions to dismiss, answers, and motions for summary judgment. *See* Background § II, *supra*. Nor have Movants raised the Settlements as defenses in the State's case, but instead have sought from the beginning to stay the case to litigate key issues in any forum *but* the Hawai'i Circuit Court. *See id.* Their unexplained and unjustified delay forecloses Movants' attempt to invoke equity. *See Breen*, 640 F. Supp. 3d at 579 (refusing injunction when state suits were long pending and movant "could have sought an injunction . . . years ago").

## II.     The Settlements Do Not Bar the State's Climate Deception Case Because They Only Released Claims Relating to Price-Fixing in the Hawai'i Motor Fuel Market.

This Court need not reach the merits for the reasons explained above, but if it does, it should reject Movants' interpretation of the Settlements. Suing as *parens patriae* on behalf of all Hawai'i residents, and on behalf of the State and its political subdivisions, the Attorney General carefully negotiated release language that would not bar the extensive set of persons and entities it represented from bringing factually unrelated claims. That intent is embodied in textual limitations on the definition of "Settled Claims," which Movants mostly fail to address. If the release language leaves any doubt, the parties' intent is confirmed by, and conforms to,

22

background legal principles controlling the scope of enforceable releases in representative suits. Movants have not come close to satisfying their burden to show that "preclusion [of the State's climate deception claims] is clear beyond peradventure." *Smith*, 564 U.S. at 307.

### A. The Settlements Expressly Do Not Release Claims Arising From Allegations Factually Unrelated to This Suit, Like Those in the State's Climate Deception Suit.

The State's climate deception claims do not fall within the scope of "Settled Claims" that the parties released, a phrase defined using materially identical language in both Settlements. *See* 2000 Settlement § 1.16; 2002 Settlement § 1.15. The definition's first paragraph presumptively releases claims arising from pre-settlement conduct that "relate to" any of several enumerated topics, *and* that were "brought or could have been brought . . . in the Lawsuit." Claims that come within the first paragraph are nonetheless excluded from release by the second paragraph if they are "substantially unrelated" to any of several other enumerated topics. The State's climate deception claims are not "Settled Claims" both because they fall outside the first paragraph and because they are excluded by the second.

### 1. The first paragraph does not include the State's climate deception claims because they could not have been brought in this suit.

The first paragraph of both Settlements' "Settled Claims" definition presumptively releases "all claims" arising from pre-settlement acts relating to any

of several enumerated topics,[13] but only insofar as those claims "have been brought or . . . could have been brought by or on behalf of Plaintiffs in the Lawsuit."[14] 2000 Settlement § 1.16; 2002 Settlement § 1.15. Because the State's climate deception claims arise from wholly different conduct than the transactions giving rise to the Settlements, they could not have been brought "in" this federal lawsuit by these "Plaintiffs."

That conclusion must be correct for two reasons. *First*, the Attorney General could not have brought her state-law climate deception claims "in the Lawsuit" because, even if those claims had accrued by the time the suit was resolved in 2002 (*but see* Argument § III.A, *infra*), this Court would have lacked subject-matter jurisdiction over them.[15] As the Attorney General emphasized in the Complaint

---

[13] The 2000 Settlement lists five topics; the 2002 Settlement lists five similar topics as well as an additional sixth addressing "the State's investigation . . . and/or the conduct of the parties and their attorneys in the Lawsuit." 2000 Settlement § 1.16; 2002 Settlement § 1.15.

[14] "Lawsuit" is defined as "Civil No. 98-00792-SPK, in the United States District Court for the District of Hawaii." 2000 Settlement § 1.6; 2002 Settlement § 1.6.

[15] To the extent Movants may argue that "in the Lawsuit" is meant to specify which "Plaintiffs" are being referenced, as opposed to where the claims "could have been brought," such an interpretation is untenable. Because "Plaintiffs" is a defined term referencing the plaintiffs in this litigation, *see* 2000 Settlement § 1.13; 2002 Settlement § 1.12 (same), such a reading would make "in the Lawsuit" superfluous, contrary to basic interpretive principles, *see Santiago*, 137 Hawai'i at 155. And indeed, across dozens of other references to "Plaintiffs" throughout the Settlements, there is no instance where the parties used any additional phrasing to clarify that they are referring to the plaintiffs "in this Lawsuit," rather than some other group of plaintiffs.

24

here, the Court's supplemental jurisdiction extended only to state-law claims "so related to [the Sherman Act] claims . . . that they form[ed] part of the same case and controversy." Compl. ¶ 6 (citing 28 U.S.C. § 1367(a)). The court thus had jurisdiction over the complaint's state-law claims because, as the court recognized, they all targeted Movants' price-fixing conduct and thus "ar[o]se from the same nucleus of operative facts . . . as the federal claims." 2002 Final Judgment at 6 (¶ 10). But the court would not have had jurisdiction over any claims raised in the State's climate deception suit[16] because, as Movants cannot dispute, those state-law claims do not "arise[] from a common nucleus of operative fact as the federal [Sherman Act] claims." *Melton v. Alaska Career College, Inc.*, 738 Fed. App'x 895, 897 (9th Cir. 2018); *see also, e.g.*, *Trs. of Constr. Indust. v. Desert Valley Landscape Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) ("Nonfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." (cleaned up)).

---

[16] The Ninth Circuit has repeatedly confirmed the absence of federal jurisdiction over climate deception claims in its multiple decisions rejecting fossil fuel industry defendants' attempts to remove similar claims from state to federal court. *See, e.g.*, *Honolulu I*, 39 F.4th at 1106 ("Defendants cannot show federal jurisdiction"); *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 744 (9th Cir. 2022) (affirming that federal district court "lacked subject matter jurisdiction").

*Second*, the Attorney General, acting as a representative Plaintiff in this action, was operating in a discrete statutory capacity authorizing the prosecution and compromise of federal antitrust claims on behalf a wide set of absent parties, subject to statutorily mandated procedures. *See* Background § I, *supra*; 2002 Settlement § 1.12 ("'Plaintiffs' means the Attorney General of the State of Hawaii as *parens patriae* for the natural persons residing in the State of Hawaii," as well as "the State of Hawaii and its departments, agencies, divisions and other entities"); 2000 Settlement § 1.13 (similar). As explained in more detail below, Argument § II.B, *infra*, the scope of the Attorney General's representation would not have extended to prosecuting and compromising claims unrelated to Movants' price-fixing conduct. Climate deception claims thus could not have been brought "by or on behalf of Plaintiffs."

Movants inexplicably ignore the final clause of the "Settled Claims" definition's first paragraph. But it does critical work, effectively "adopting the familiar rule that [future] claims are barred *if based on the 'same set of facts as the claims that gave rise to the settlement.'" Palekaiko Beachboys Club, Inc. v. City & Cnty. of Honolulu*, 2026 WL 18748, at *7 (D. Haw. Jan. 2, 2026) (emphasis added) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)); *see* Argument § II.B, *infra* (cases applying rule under identical-factual-predicate doctrine).

Consistent with due process limitations discussed below, the Settlements thus could

not have released climate deception claims founded on wholly distinct facts.

> **2.    The second paragraph excludes the State's climate deception claims because they are unrelated to several of the enumerated topics.**

Even if the State's Claims could be construed to fall within the first paragraph

of the "Settled Claims" definition, the Settlements still would not release those

claims because the second paragraph excludes them. That paragraph carves out

from release any otherwise-covered claims that are "substantially unrelated to . . .

antitrust laws or regulations, . . . *or*" any of several other enumerated categories.[17]

---

[17] The second paragraphs of the two Settlements' cognate sections are worded slightly differently, but none of the differences materially affect the analysis. For example, the 2000 Settlement lists four categories as implicating the carve-out; the 2002 Settlement includes those same four plus an additional fifth category. For ease of the reader, both paragraphs are reproduced here in full.

The second paragraph of Section 1.15 of the 2002 Settlement reads: "'Settled Claims' does not include claims substantially unrelated to either: (1) the antitrust laws or regulations, (2) deceptive trade practices, (3) unfair acts or practices raised in the Lawsuit, (4) trade regulation, or (5) claims in the Lawsuit. 'Settled Claims' does not include, for example, environmental claims brought by the Plaintiffs and contractual claims of the Defendants for monies owed by the Plaintiffs for the purchase of petroleum products by the Plaintiffs from the Defendants. Without regard to the scope of the first paragraph of this section, the Release does not include the claims asserted by Chevron or the State in *Chevron U.S.A., Inc. v. Cayetano,* Civil No. 97-0093."

The second paragraph of Section 1.16 of the 2000 Settlement reads: "'Settled claims' does not include claims substantially unrelated to antitrust laws or regulations, deceptive trade practices, trade regulation or to claims in the Lawsuit, including, without limitation, environmental claims brought by the Plaintiffs and

2002 Settlement § 1.15 (emphasis added); 2000 Settlement § 1.16. Thus, a claim that arises from conduct "relate[d] to" any categories listed in the first paragraph is nonetheless excluded from the release if the claim is "substantially unrelated to" any categories in the second paragraph. That reading makes eminent sense. It releases all potential claims against Movants arising out of the alleged fuel price-fixing scheme, but would not release an unrelated hypothetical claim untethered to the key defining features of the settled litigation. *See* Argument § II.B, *infra* (explaining how this reading accords with well-recognized due process limitations on releasing unpleaded claims held by interested non-parties).

The definition's second paragraph provides two examples of claims that could fall within the topics covered by the first paragraph but are nevertheless carved out of the release: "environmental claims brought by the Plaintiffs and contractual claims of the Defendants for monies owed by the Plaintiffs for the purchase of petroleum products." 2002 Settlement § 1.15; 2000 Settlement § 1.16. Both types of claims may relate to "petroleum products" under the first paragraph, but (regardless of other first paragraph requirements) would still be excluded from release by the second paragraph because they are "substantially unrelated to," at a minimum, "the antitrust laws or regulations." *Id.* The State's climate deception

---

contractual claims of the Settling Defendants for monies owed by the Plaintiffs for the purchase of petroleum products by the Plaintiffs from the Settling Defendants."

claims likewise fall outside the definition of Settled Claims because they are "substantially unrelated to" "the antitrust laws or regulations," "trade regulation," and "claims in the Lawsuit." *Id.*[18]

Movants' contrary arguments misread the second paragraph as carving out only claims that are "substantially unrelated to" *all* of the listed topics. *See* Chevron Mot. at 14–15; Shell Mot. at 3–5; ConocoPhillips Mot. at 17–18; Woodside Mot. at 17. On that view, the State's climate deception claims were released because they are not "unrelated to" one topic, "deceptive trade practices." But the exclusion is phrased disjunctively: "claims substantially unrelated to *either*" the first item in the list "*or*" any of the other listed items are excluded from the release. *See* 2002 Settlement § 1.15 (emphasis added).[19] It is a well-settled principle of contract interpretation that when "words are connected by the disjunctive 'or,' [it] signal[s] they are to be read separately," *Valley Forge Ins. Co. v. Field*, 670 F.3d 93, 99 (1st Cir. 2012), and "only one clause need apply" to satisfy the disjunction, *Dongbu Ins. Co. v. Hayes*, 2015 WL 12670499, at *5 (D. Haw. Mar. 31, 2015). Thus, "[o]nce one subpart of the definition has been satisfied . . . there is no need to consider the

---

[18] They are also unrelated to "unfair acts or practices raised in the Lawsuit," an additional fifth category listed only in the 2002 Settlement.

[19] The definition's second paragraph in the 2000 Settlement does not use the word "either," but uses the same disjunctive formulation as the 2002 Settlement. *See* n.17, *supra*.

others." *Butcher v. Gulf Ins. Co.*, 2005 WL 1514086, at *15 (N.D. Cal. June 15, 2005). Because the State Claims are "substantially unrelated to . . . the unfair acts or practices raised in the Lawsuit"—and every other topic enumerated in the exclusion but for deceptive trade practices—they fall outside the definition of Released Claims.

Movants' interpretation cannot be correct because it would give different meanings to the two disjunctive lists in the definition of Settled Claims. According to Movants, a Settled Claim need only "relate to" *one* of the first paragraph's topics to be released, but must be "substantially unrelated to" *all* topics in the second paragraph to satisfy the exclusion. But the two paragraphs use the same words and sentence structure: a disjunctive list separated by commas and an "or."[20] Basic rules of construction preclude construing the same grammatical formulation, in adjacent sentences, as having effectively opposite effect. *See, e.g.*, *First City Bank v. Nat'l Credit Union Admin. Bd.*, 111 F.3d 433, 438 (6th Cir. 1997) (affirming that clauses that "share the same syntactical structure . . . ought to be interpreted consistently").

Movants' reading—where the second paragraph serves largely as an inverse of the first paragraph—would also render the exclusion mostly ineffective, running

---

[20] By including the word "either," the 2002 Settlement emphasizes the disjunctive nature of the second paragraph's list. In effect, Movants would rewrite the second paragraph's "either:  . . . or" formulation, which is satisfied so long as any of the enumerated criteria is present, into an "all of the following: . . ." formulation, which would require satisfaction of every listed element.

afoul of the familiar presumption "that no part of [a contract] is superfluous." *Santiago*, 137 Hawaiʻi at 155 (quotation omitted). In Movants' view, for example, a claim that satisfies the first paragraph because it "relate[s] to . . . any antitrust violation" could never be excluded by the second paragraph, since such a claim definitionally cannot be "substantially unrelated to . . . the antitrust laws or regulations." The parties surely would have used a clearer formulation if, as Movants suggest, they intended to eliminate all of Defendants' potential antitrust liabilities statewide—even liability for anticompetitive acts in entirely unrelated markets for entirely unrelated products.[21] The parties did not intend such a result and, for the reasons discussed next, the Court could not enter or enforce such a release even if the parties had so intended.

### B.    The Parties' Intentions to Limit the Release Are Confirmed By, and Consistent With, the Identical-Factual-Predicate Doctrine.

The only reasonable reading of the "Settled Claims" definition is that the parties intended to release all potential claims related to the gasoline price-fixing scheme alleged in this case. They did not intend to release claims having nothing to

---

[21] It is of no moment that the State's climate deception suit includes claims under HRS Chapter 480, "the very same state unfair and deceptive practices law" allegedly violated in this case. *See* Woodside Mot. at 7. The Settlements do not limit the definition of Settled Claims to specific causes of action, but instead release claims arising from the same set of operative facts. Stated differently, the Settlements definitively resolve all controversies concerning the defendants' alleged price-fixing scheme, not every conceivable pre-settlement act that might violate some prohibition of Chapter 480.

31

do with that set of facts, like the State's climate deception claims. Even if there were any doubt based on text alone, the State's interpretation is confirmed by a federal common law principle known as the identical-factual-predicate doctrine. Under that doctrine, settlements that control the rights of absent individuals—as the Settlements here do—can only release unpleaded claims that arise from the same nucleus of operative facts as the settled claims. Movants' overbroad interpretation would introduce grave due process concerns by releasing a virtually boundless universe of hypothetical claims held by every natural person in Hawai'i. The identical-factual-predicate doctrine exists to avoid precisely those concerns and applies here to render Movants' interpretation unenforceable (even if it were textually plausible, which it is not).

It is well established that federal courts may enter and enforce settlement agreements that release claims held by absent parties "only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled'" suit. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)); *see In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 91 F.4th 174, 182–184 (4th Cir. 2024) (discussing history of and basis

32

for the doctrine).[22] Even where settling parties "have drafted the settlement agreement to include as broad a release as possible, the release w[ill] only be[] *enforceable* as to subsequent claims . . . depending upon the same set of facts." *Williams*, 517 F.3d at 1134 (quotation omitted); *see also* 6 Newberg on Class Actions §§ 18:19, 18:21 (6th ed. 2022) (updated June 2026). The doctrine "makes good sense" because binding absent parties to a "settlement that seeks to settle materially distinct and non-litigated claims" would, at a minimum, "present serious due process concerns." *Lumber Liquidators*, 91 F.4th at 183.

The identical-factual-predicate doctrine arises most commonly in federal class actions, *see* Fed. R. Civ. P. 23, but it is not limited to that context. Courts regularly apply the doctrine across contexts where a plaintiff pursues relief on behalf of absent individuals, based on the principle that a representative plaintiff has power to release only those claims within the scope of representation. After all, "[i]t is elementary that a settlement agreement cannot release claims that the parties were not authorized to release." *In re Am. Express Fin. Advisors Sec. Litig.*, 672

---

[22] The identical-factual-predicate doctrine is a "widely accepted principle." *Feller v. Transamerica Life Ins. Co.*, 2016 WL 6602561, at *6 (C.D. Cal. Nov. 8, 2016). In addition to the Ninth Circuit, "[a]t least six other circuits—the First, Second, Third, Sixth, Seventh, and [Fourth]—recognize and apply" the doctrine and its controlling "effect on settlement agreements." *Lumber Liquidators*, 91 F.4th at 183 n.3 (collecting cases). "[N]o circuit has rejected it." Kris J. Kostolansky & Diane R. Hazel, *Class Action Settlements: Res Judicata, Release, and the Identical Factual Predicate Doctrine*, 55 Idaho L. Rev. 263, 270 (2019).

33

F.3d 113, 135 (2d Cir. 2011). Courts have thus routinely applied the doctrine in shareholder derivative actions under Fed. R. Civ. P. 23.1,[23] and collective actions under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201, *et seq.*[24]

The doctrine necessarily applies here, where the State pleaded antitrust claims as *parens patriae* under 15 U.S.C. § 15c and negotiated a release that binds not only the State but a vast set of absent parties—including all natural person

---

[23] *See, e.g.*, *In re CPI Aerostructures S'holder Derivative Litig.*, 2023 WL 2969279, at *8 (E.D.N.Y. Feb. 14, 2023) ("the Proposed Settlement only releases those claims that relate to, arise out of, or could have been raised as part of the Federal Derivative Action or the State Court Actions, which suggests the release is proper"); *In re Hewlett-Packard Co. S'holder Derivative Litig.*, 2015 WL 1153864, at *5 (N.D. Cal. Mar. 13, 2015).

[24] *See, e.g.*, *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (applying identical-factual-predicate doctrine in nine-plaintiff FLSA case, and noting that "broad releases are 'doubly problematic' in the FLSA context, where courts have a duty to police unequal bargaining power between employees and employers"); *Camacho v. Ess-A-Bagel, Inc.*, 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014) ("[T]he Court will not countenance employers using FLSA settlements to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute."); *Chammami v. Acropolis Mediterranean Food Inc.*, 2020 WL 6586653, at *2 (M.D. Fla. Nov. 10, 2020) (approving FLSA settlement release "because it encompasses only those unpleaded wage claims arising out of the identical factual predicate as the settled claims"); *Forauer v. Vermont Country Store, Inc.*, 2015 WL 225224, at *8 (D. Vt. Jan. 16, 2015) (applying identical-factual-predicate doctrine because "FLSA plaintiffs may consent to a broad release of any and all FLSA claims only if the parties provide evidence that each Plaintiff has a full understanding of what they are releasing in exchange for a settlement payment" (citation and quotations omitted)).

34

residents of Hawai'i—whose interests the State represented. *See* Compl. ¶¶ 3, 5.[25]

Indeed, in authorizing state attorneys general to enforce federal antitrust violations "as *parens patriae* on behalf of natural persons residing in such State," 15 U.S.C. § 15c(a)(1), the Sherman Act imposes procedural requirements for releasing and settling claims that mirror Rule 23 class protections. Individuals "on whose behalf an action is brought" must receive reasonable notice and an opportunity to opt out of the action, and any settlement requires court approval and additional notice.[26] As detailed above, *see* Background § I, *supra*, the State followed those requirements: Hawai'i residents received notice and an opportunity to opt out, and the Court approved the Settlements after hearings where it confirmed that the Settlements were fair to absent consumers.

---

[25] Like the State's natural residents, the local governmental bodies who brought their own climate deception suits—the City and County of Honolulu, the Honolulu Board of Water Supply, and the County of Maui—were not parties to this action. The identical-factual-predicate doctrine protects them as well by ensuring alignment of Settlements negotiated on their behalf with the scope of the Attorney General's representation of their interests. *See* H.R.S. § 480-14 (authorizing antitrust suits by "attorney general . . . on behalf of . . . political subdivisions or governmental agencies"). That protection means the Settlements cannot have released any of their climate deception claims either.

[26] *Compare* 15 U.S.C. § 15c(b)(1)–(2), (c) ("An action under subsection (a)(1) shall not be dismissed or compromised without the approval of the court, and notice of any proposed dismissal or compromise shall be given in such manner as the court directs."); *with* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval," after "notice in a reasonable manner to all class members who would be bound . . . .").

These procedural protections reflect that Congress enacted the *parens patriae* provision to stand in the place of private consumer antitrust class actions, which had proven ineffective for prosecuting violations. *See Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 573 n.29 (1983).[27] By providing the same procedural guardrails—notice and court approval—Congress confirmed that the same fairness and due process concerns that arise in private Rule 23 consumer class antitrust settlements are likewise present in settling *parens patriae* antitrust claims brought by a state attorney general. In both instances, the identical-factual-predicate doctrine necessarily protects the rights of absent consumers by limiting a representative plaintiff's ability to release unpleaded claims.

Applying the doctrine, numerous courts have explained that releases using the same broad language as the Settlements—even without the clear textual limitations the parties negotiated here—cannot be read to bar future claims arising from distinct, unrelated facts.[28] As one example, a settlement in *Feller v.*

---

[27] The *parens patriae* cause of action was created "to enhance the effectiveness of antitrust enforcement on behalf of small consumers," which had been stymied by "the difficulty of achieving class certification of consumer actions" and "the complexity of measuring and distributing damages in such cases." *Id.*

[28] *See, e.g.*, *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 400 (S.D.N.Y. 2011) ("That this complaint, like the complaint in [an earlier settled class action], also alleges anticompetitive effects in the CD market or a motive to maintain higher CD prices is insufficient; a release bars future suits that depend on 'the very same set of facts.'" (quoting *Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9, 18 n.7 (2d Cir. 1981)); *In re Blue Cross Blue Shield*

*Transamerica Life Insurance Co.* purported to release "any and all causes of action

. . . that have been, could have been, may be or could be alleged or asserted" by

class member insureds against the defendant insurer, that "related to, in whole or in

part," an extremely broad category of "Released Transactions." 2016 WL 6602561,

at *3.[29] When defendants raised the settlement as a defense in a later action, the

court explained that because the new claims were not "premised on an 'identical

factual predicate' as the [prior] action," the release could not bar those claims. *Id.*

at *6. The release was "not reasonably susceptible to the [defendants' contrary]

---

*Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1091 (11th Cir. 2023) (broadly worded release "d[id] not extend beyond claims arising from the common nucleus of operative fact" and did not bar "any claims related to conduct that was not challenged in the underlying lawsuit"); *Mata v. Manpower Inc.*, 2016 WL 948997, at *7 (N.D. Cal. Mar. 14, 2016) (earlier settled case was "based on different factual predicates, so it would have been impermissible for [those] parties to obtain a release broad enough to cover the claims in the instant case"); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 2005 WL 5678842, at *7 (C.D. Cal. Apr. 26, 2005) ("broad" prior release could not bar breach of contract claims "not based on the identical factual predicate as" claims in earlier settled class action).

[29] "Related transactions" were defined as "the marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, or replacement . . . [of] the Policies . . . [including] without limitation" a long exemplary list of topics, such as "any or all of the acts, omissions, facts, matters, transactions or occurrences that have been, could have been, may be or could be directly or indirectly alleged, asserted, described, set forth or referred to in the Action," and "any or all of the acts, omissions, . . . or representations allegedly made in connection with or . . . relating to . . . the interest rate credited or to be credited to premiums, . . . cost of insurance and administrative charge policies and practices; policy or premium charges and monthly deductions;" and other enumerated topics. *Id.* at *3–4.

interpretation" because that reading would have left absent class-member insureds covered by the prior settlement "without recourse for any number of intentional, unlawful acts so long as they could be construed as 'related to' plaintiffs' policies" issued by the defendant insurers. *Id.* at \*5.

Similar to *Feller*, Movants' reading of the Settlements here would strip "[every] natural person[] residing in the State of Hawaii" of all remedies for pre-Settlement misconduct that could be construed as "related to" topics as amorphous as "any petroleum products" and all "deceptive trade practices." *See* 2000 Settlement §§ 1.13, 1.16; 2002 Settlement §§ 1.12, 1.15; *Feller*, 2016 WL 6602561, at \*3. If, for example, a hypothetical Hawaiʻi service station owner discovered in 2002 that a Movant fraudulently induced her to execute a franchise agreement in 1999, she would have no remedy because her claims would "relate to" the "marketing, delivery, and/or offering of gasoline," and "deceptive trade practices." *See* 2002 Settlement § 1.15; *see also* 2000 Settlement § 1.16. That is not what the parties bargained for, and the release cannot plausibly—or enforceably—be read that way. *See Feller*, 2016 WL 6602561, at \*6 (a release that might bar claims based on different facts "would be unenforceable"); *Williams*, 517 F.3d at 1134.

## III. Movants' Requested Injunctions Would Intrude into State Court Functions and Would Be Unworkable, Impractical, and Overbroad.

Independent of the Anti-Injunction Act's prohibitions or the Settlements' meaning, the Court should deny the instant motions because Movants' requested

injunctive relief would intrude into the functioning of Hawaiʻi state courts and would be unworkable, impractical, and overbroad. Even under Movants' interpretation, determining the Settlements' effects (if any) on the State's case turns on interwoven questions of fact and law—like whether Movants fraudulently concealed their misconduct and whether the State's claims against them had accrued by 2002—that only the state court hearing the claims, with the benefit of case-specific discovery, can resolve. Similarly, the Settlements cannot authorize this Court to dictate to the state court what claims are viable under Hawaiʻi law even if pre-Settlement conduct is excised as a basis for liability, nor to enjoin claims by non-parties to this suit.

The "principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding" thus weigh heavily against injunctions that would entangle this Court in the minutiae of the State's case. *Mitchum*, 407 U.S. at 243 (collecting cases).[30] And because any injunction would depend on answers to factual questions that no court has yet addressed, on records no court has yet compiled, it would be impossible for this Court to craft injunctive relief that is "enforceable, workable, and capable of court supervision," *In re Diet*

---

[30] *See also In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 315–16 (3d Cir. 2004) (injunction raises "practical and institutional concerns" if it would "disrupt[] the state court's ability to manage its own judicial process" because federal courts must "presume[] that the state judge is capable and willing to enforce [a] settlement without close and intrusive supervision by the District Court").

39

*Drugs*, 369 F.3d at 315, which means "'the injunction should not be granted,'" *id.*

(parenthetical quotation from Restatement (Second) of Torts § 943 cmt. a.)).

### A.    The Court Cannot Enjoin Claims Arising From Fraudulently Concealed Conduct or Claims That Had Not Accrued at the Time the Settlements Were Executed.

To determine the permissibility or scope of an injunction, this Court would

have to make myriad factual findings about whether (and to what extent) Movants

were fraudulently concealing the conduct alleged in the State's case at the time of

the Settlements. That is because settlements, no matter how broad, cannot release

claims that were fraudulently concealed. *E.g.*, *In re Volkswagen "Clean Diesel"*

*Mktg., Sales Pracs., & Prods. Liab. Litig.*, 741 F. App'x 367, 371 (9th Cir. 2018)

(unpublished) (settlement that expressly released all claims "'concealed or hidden'"

covered "only claims of which class members are not yet aware, not claims that

Volkswagen has actively or fraudulently concealed").[31]

---

[31] *See also, e.g.*, *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 371 (9th Cir. 2005) (general release does not "release[] a claim of which [a person] has no knowledge, when the ignorance of such a claim is attributable to fraudulent conduct by the released party"); *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 263 (6th Cir. 1988) (release of "'any and all claims . . . of any nature whatsoever, whether or not now known' . . . will not encompass claims . . . if the releasee concealed them"); *UniSuper Ltd. v. News Corp.*, 2006 WL 4804015, at *3 (Del. Ch. May 31, 2006) (requiring deletion of clause releasing "'hidden or concealed' claims" because "it can only operate to release claims that the defendants have *affirmatively concealed* ").

The thrust of the State's complaint is that Movants (and others) engaged in exactly such fraudulent conduct, going to great lengths "to conceal their role in obfuscating [climate] science, their knowledge, and their role in bringing about catastrophic climate harms to consumers in Hawai'i." State Compl. ¶ 258. For instance, they "used front groups . . . to obscure their involvement" in spreading deception about their products' dangers, "which put the public off the trail." *Id.* ¶ 259(c); *see id.* ¶ 43(l) (front groups were designed to look like "objective source[s]"). These tactics were in full swing when the Settlements were negotiated and executed. *See id.* ¶¶ 123–127 (Global Climate Coalition, at the direction of Chevron, Shell, and Phillips Petroleum Company, among others, spread climate deception through the late 1990s); ¶¶ 133–134 (defendants paid scientist over $1.2 million between 2001 and 2012 to publish misleading research); ¶ 136 (2007 statement by defendant's attorney that it was "typical" for it to "fund think tanks and advocacy groups that minimized fossil fuels' role in causing climate change"). As litigation in the *Honolulu* and *Maui* suits illustrates, fraudulent concealment is an appropriate subject of discovery and ultimately factual findings in a climate deception case.[32]

---

[32] In *Honolulu*, Judge Cataldo denied the defendants' motion for summary judgment on statute of limitations grounds because further factual development was needed to assess the plaintiffs' arguments that the limitations period had been tolled by (among other things) fraudulent concealment. *See Honolulu* Dkt. 2279. In *Maui*,

Because the Settlements cannot release claims arising from fraudulently concealed conduct, the Court must, at minimum, ensure that an injunction does not cover such claims. That, in turn, would require this Court to resolve complicated questions of fact and law, effectively trying major portions of the State's case in federal court, even though the Ninth Circuit has repeatedly held that such claims belong in state court. *Honolulu I*, 39 F.4th 1101; *San Mateo*, 32 F.4th 733; *see* n.16, *supra*. And doing so would take years. The Hawaiʻi state court that will preside over discovery in the State's case and make the relevant findings of fact is far better positioned to determine the Settlements' effects, if any, on the State's claims.

Similarly, this Court cannot grant any injunctive relief without first determining precisely when the State's claims accrued. The Settlements, by their plain terms, do not release claims that had not accrued by their respective execution dates, but only claims that "have been brought or that could have been brought . . . in the Lawsuit" that was finally resolved in April 2002. *See* 2000 Settlement § 1.16; 2002 Settlement § 1.15; *In re Managed Care Litig.*, 756 F.3d 1222, 1237–38 (11th Cir. 2014) (release of claims that "could have been asserted" did not release claims that had not accrued). Just as in the *Honolulu* and *Maui* cases, where the parties

---

the parties have disputed fraudulent concealment in briefing on the defendants' motions to dismiss. *See County of Maui v. Sunoco LP*, No. 2CCV-20-0000283 (Haw. Cir. Ct.), Dkt. 456 at 29 (county's opposition); *Maui* Dkt. 487 at 4–5 (defendants' joint reply).

42

have already started to dispute accrual in the context of timeliness defenses, the state court will be positioned to address claim accrual disputes after a full record is compiled. *See* n.32, *supra.* That inquiry will turn on fact-intensive questions, like when the State had actual or constructive knowledge of its claims, that this Court cannot answer on the present motion and without a developed record.

**B.    The Court Cannot Enjoin Claims Arising From Conduct After 2002 or Direct the Content of State Court Pleadings.**

At the very least, the Court cannot direct wholesale dismissal of the State's claims against Movants, as each requests. *See* Chevron Mot. at 24; Shell Mot. at 13–14; ConocoPhillips Mot. at 26; Woodside Mot. at 19–20. The State's complaint alleges that Movants' misconduct continues to this day, identifying extensive actionable conduct after both Settlements' effective dates. *E.g.*, State Compl. ¶¶ 259–60; *id.* ¶¶ 36(l), 201–212 (Chevron); *id.* ¶¶ 38(k), 182–191 (Shell); *id.* ¶¶ 40(k), 218–222 (ConocoPhillips).

It is not this Court's role to determine whether the State can allege actionable claims under Hawai'i law even if pre-Settlement conduct is excised as a basis for liability. Movants' assertion that "[a]bsent the allegations relating to pre-settlement conduct," the State's suit cannot "state a[ny] coherent actionable claim," *e.g.*, Shell Mot. at 12, is both wrong and—more importantly—an issue for the state court to decide. *See In re Diet Drugs*, 369 F.3d at 316–17 (vacating injunction that would "remove from the state judge a whole panoply of decisions that he or she would

43

normally be authorized—indeed obligated—to make"); State Compl. ¶¶ 407–420 (UDAP claim seeking civil penalties for deceptive acts committed both before and after Settlement dates). Likewise, it would not be appropriate to dictate what allegations the State may include in subsequent pleadings, as Chevron, Shell, and ConocoPhillips request. *See* Chevron Mot. at 24; Shell Mot. at 14; ConocoPhillips Mot. at 26–27. Pre-2002 conduct may remain relevant—for example, as evidence of Movants' knowledge—even if liability cannot attach to that conduct.

### C.    The Court Cannot Enjoin Claims by Nonparties.

Lastly, Movants are also incorrect that this Court can enjoin the *Honolulu* and *Maui* plaintiffs, without joining them as parties in this action, simply because the Attorney General negotiated the Settlements on behalf of, among others, its "political subdivisions." *See* Chevron Mot. at 9 & n.1; Shell Mot. at 4–5; ConocoPhillips Mot. at 9–10; Woodside Mot. at 13–14. The State's representation of its subdivisions in this litigation was limited to seeking remedies for Defendants' gasoline price-fixing under the Sherman Act and HRS Chapter 480, *see* Background § I, *supra*, and the *Honolulu* and *Maui* climate deception cases do not involve overlapping factual allegations, antitrust theories, or any claims under those statutes. *See* Compl. ¶¶ 2–3 (citing 15 U.S.C. § 15c and HRS § 480-14 as bases for suit).

More fundamentally, regardless of the capacity in which the Attorney General negotiated the Settlement, the State is not appearing on behalf of its subdivisions in opposing Movants' collateral attack on the State's suit in the present enforcement motions. The *Honolulu* and *Maui* plaintiffs have separate climate deception claims, in separate courtrooms, for separate relief expressly carved out of the State's case. *See* Background § II & n.4, *supra*. They may also have arguments they are uniquely positioned to advance—for example, potential arguments that Movants' requests to enjoin their separate climate deception suits, filed many years before the State's, are time barred. The State is simply not "in active concert or participation" with the *Honolulu* and *Maui* plaintiffs, as would be necessary for the State to adequately represent their interests here or for this Court enjoin them. Fed. R. Civ. P. 65(d); *see Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).[33]

## CONCLUSION

This Court should deny Movants' motions to enforce in full.

---

[33] The State responds to the present motions to defend its climate deception suit from injunction, not to defend any other entity's separate suit. *See* 11A Wright & Miller's Federal Practice & Procedure § 2956 (3d ed.) (At its broadest, the "active concert or participation" language in Rule 65(d) permits enjoining "persons so identified in interest with those named in the decree that it would be reasonable to conclude that their rights and interests have been represented.").

45

DATED: June 3, 2026          **ANNE E. LOPEZ**
Honolulu, Hawai'i             **ATTORNEY GENERAL**

                        By:  MELISSA J. KOLONIE
                             Supervising Deputy Attorney General

                              */s/ Wade H. Hargrove III*
                             WADE H. HARGROVE III
                             LYLE T. LEONARD
                             Deputy Attorneys General
                             Department of the Attorney General
                             State of Hawai'i
                             425 Queen Street
                             Honolulu, Hawai'i 96813
                             Telephone:  (808) 587-3050
                             Facsimile:   (808) 587-3077
                             Email: wade.h.hargrove@hawaii.gov

DATED: June 3, 2026           */s/ William Liang*
San Francisco,               VICTOR M. SHER (*pro hac vice*)
California                   MATTHEW K. EDLING (*pro hac vice*)
                             STEPHANIE D. BIEHL  (*pro hac vice*)
                             WILLIAM LIANG (#11790)
                             **SHER EDLING LLP**
                             100 Montgomery St., Ste. 1410
                             San Francisco, CA 94104
                             Telephone:  (628) 231-2500
                             Facsimile:   (628) 231-2929
                             Email: vic@sheredling.com
                                     matt@sheredling.com
                                     stephanie@sheredling.com
                                     william@sheredling.com

                             *Attorneys for Respondent State of Hawai'i*

46