# EXHIBIT 7

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARGERY S. BRONSTER, ATTORNEY GENERAL FOR THE STATE OF HAWAII, As *Parens Patriae* for the Natural Persons Residing in Hawaii, and on behalf of the State of Hawaii, its Political Subdivisions and Governmental Agencies,<br><br>   Plaintiff,<br><br> vs.<br><br>CHEVRON CORPORATION; CHEVRON U.S.A., INC.; TESORO HAWAII CORPORATION, as Successor-In-Interest to BHP PETROLEUM AMERICAS REFINING INC.; BHP HAWAII INC.; SHELL OIL COMPANY; SHELL OIL PRODUCTS COMPANY; TEXACO, INC.; TEXACO REFINING AND MARKETING, INC.; TESORO PETROLEUM CORPORATION; TESORO HAWAII CORPORATION; TOSCO CORPORATION; UNION OIL COMPANY OF CALIFORNIA; and UNOCAL CORPORATION,<br><br>   Defendants. | ) CIVIL NO. CV 98-00792-SPK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

The Attorney General of the State of Hawaii; BHP Hawaii Inc.; Tesoro Hawaii Corporation; BHP Petroleum Americas Refining Inc.; and Tesoro Petroleum Corporation enter into this Settlement Agreement and Mutual Release ("Settlement Agreement") settling the claims brought by Plaintiffs against BHP Hawaii, Inc., Tesoro Hawaii Corporation, BHP Petroleum Americas Refining Inc., and Tesoro Petroleum Corporation, in the lawsuit Civil No. 98-00792-

1

11959\7_C404!.DOC:358132

SPK, in the United States District Court for the District of Hawaii ("District Court"), styled *Margery S. Bronster, Attorney General for the State of Hawaii, as parens patriae for the natural persons residing in Hawaii. and on behalf of the State of Hawaii, its Political Subdivisions and Governmental Agencies v. Chevron Corporation; Chevron U.S.A. Inc.; Tesoro Hawaii Corporation, as successor-in-interest to BHP Petroleum Americas Refining Inc.; BHP Hawaii Inc.; Shell Oil Company; Shell Oil Products Company; Texaco, Inc.; Texaco Refining and Marketing, Inc.; Tesoro Petroleum Corporation; Tesoro Hawaii Corporation; Tosco Corporation; Union Oil Company of California; and Unocal Corporation* ("Lawsuit").

This Settlement Agreement is made following arm's-length negotiations between and among the Settling Parties. It takes into consideration the expense of further proceedings, the strengths and weaknesses of the claims against Settling Defendants, the defenses thereto, the timing of the settlement, and such other factors as are appropriate in evaluating the matter.

In consideration of the mutual covenants set forth below, the Settling Parties agree that, subject to prior final approval by the District Court and the entry of Final Judgment, the Settled Claims shall be settled and the Settling Defendants dismissed with prejudice, subject to the following terms and conditions.

1.    **DEFINITIONS**

As used in this Settlement Agreement and the Exhibits hereto, the following terms have the meanings specified below.

1.1    Affiliates. "Affiliates" means those entities which were either (i) A Settling Defendant's direct or indirect parent entity(ies), or (ii) entities in which that Settling Defendant or its direct or indirect parent entities own, directly or indirectly, 50 percent or more of the

11959\7_C404!.DOC:358132

ownership interest. Notwithstanding the foregoing, Affiliates of Settling Defendants do not include any Non-Settling Defendant or any Non-Settling Defendant's Affiliates.

1.2     Defendants. "Defendants" means Chevron Corporation; Chevron U.S.A., Inc.; BHP Hawaii Inc.; BHP Petroleum Americas Refining Inc.; Shell Oil Company; Shell Oil Products Company; Texaco Inc.; Texaco Refining and Marketing, Inc.; Tesoro Hawaii Corporation; Tesoro Petroleum Corporation; Tosco Corporation; Union Oil Company of California; and Unocal Corporation.

1.3     Effective Date. "Effective Date" means the date on which the Judgment becomes the Final Judgment.

1.4     Final Judgment. If no direct appeal or mandamus from the Judgment has been filed, the Judgment becomes "Final" upon the expiration of the time under Fed. R. App. P. 4(a)(1) for filing a notice of direct appeal from the Judgment. If a timely direct appeal from the Judgment is filed and either the Judgment is affirmed or the appeal is dismissed, the Judgment becomes the Final Judgment when all appeals are completed or when the time for seeking all further appeals or review expires.

1.5     Judgment. "Judgment" means a final judgment to be rendered by the District Court substantially in the form of Exhibit C hereto.

1.6     Lawsuit. "Lawsuit" means Civil No. 98-00792-SPK, in the United States District Court for the District of Hawaii, styled *Margery S. Bronster, Attorney General for the State of Hawaii, as parens patriae for the natural persons residing in Hawaii, and on behalf of the State of Hawaii, its Political Subdivisions and Governmental Agencies v. Chevron Corporation; Chevron U.S.A. Inc.; Tesoro Hawaii Corporation, as successor-in-interest to BHP Petroleum*

3

11959\7_C404!.DOC:358132

*Americas Refining Inc.; BHP Hawaii Inc.; Shell Oil Company; Shell Oil Products Company;*

*Texaco, Inc.; Texaco Refining and Marketing, Inc.; Tesoro Petroleum Corporation; Tesoro*

*Hawaii Corporation; Tosco Corporation; Union Oil Company of California; and Unocal*

*Corporation.*

1.7    Non-Settling Defendants. "Non-Settling Defendants" means Defendants who are not Settling Defendants.

1.8    Notice Expenses. "Notice Expenses" means the reasonable expenses incurred in providing reasonable notice to those natural persons residing or who have resided in the State of Hawaii pursuant to the Plan of Notice, including costs of publishing the Notice of Partial Settlement.

1.9    Notice of Partial Settlement. "Notice of Partial Settlement" means the notice of this Settlement Agreement and of the Settlement Hearing substantially in the form of Exhibit A hereto that is to be published pursuant to the Plan of Notice.

1.10    Opt-Out Claimant. "Opt-Out Claimant" means a natural person who has resided in the State of Hawaii at any time since January 1, 1990 who submits a timely and valid request for exclusion in accordance with the Order of Preliminary Approval and the Notice of Partial Settlement, and who does not revoke that request for exclusion in writing prior to or at the Settlement Hearing.

1.11    Opt-Out Claims. "Opt-Out Claims" means Settled Claims that belong to Opt-Out Claimants. Opt-Out Claims are not settled by this Settlement Agreement.

1.12    Order of Preliminary Approval. "Order of Preliminary Approval" means an order of the District Court substantially in the form of Exhibit B hereto.

4

1.13    Plaintiffs. "Plaintiffs" means the Attorney General of the State of Hawaii as *parens patriae* for the natural persons residing in the State of Hawaii at any time from January 1, 1990, to the present and all others on whose behalf the Attorney General of the State of Hawaii brought this lawsuit as identified in the Complaint, the First Amended Complaint, and the Second Amended Complaint; and the legal representatives, predecessors, successors, and assigns of Plaintiffs.

1.14    Plan of Notice. "Plan of Notice" means the plan to provide notice to the natural persons residing in the State of Hawaii at any time from January 1, 1990, to the present as described in section 3.2(a) below.

1.15    Released Parties. "Released Parties" means:   (i) severally and collectively, Settling Defendants, and all past and present agents, employees, officers, directors, representatives, attorneys, Affiliates, predecessors, successors and assigns of each Settling Defendant; and (ii) the State of Hawaii and its past and present Attorneys General and the agents, employees, representatives and attorneys of the Attorney General's office.

1.16    Settled Claims. "Settled Claims" means all claims, causes of action and liabilities of whatever nature or origin, known and unknown, that have been or could be asserted against Released Parties (including, but not limited to, contract claims, tort claims, and claims arising under state or federal statute, regulation or antitrust law) that arise from any act or acts occurring prior to the date of this Settlement Agreement and that relate to:  (1) the pricing, sale, purchase, manufacture, exchange, marketing, delivery, and/or offering of gasoline, diesel, jet fuel and/or any other petroleum product or products; (2) the sale or purchase of assets located in the State of Hawaii, including the sale and purchase of the capital stock of BHP Petroleum Americas

5

11959\7_C404!.DOC:358132

Refining Inc. and BHP Petroleum South Pacific Inc. and any government review process with respect to the sale and purchase of any assets; (3) any antitrust violation; (4) any allegation contained in the Lawsuit; or (5) any petroleum products that have been brought or that could have been brought by or on behalf of Plaintiffs in the Lawsuit.

"Settled Claims" does not include claims substantially unrelated to antitrust laws or regulations, deceptive trade practices, trade regulation or to claims in the Lawsuit, including, without limitation, environmental claims brought by the Plaintiffs and contractual claims of the Settling Defendants for monies owed by the Plaintiffs for the purchase of petroleum products by the Plaintiffs from the Settling Defendants.

1.17    Settlement Amount. "Settlement Amount" means the sum of $15 million.

1.18    Settlement Hearing. "Settlement Hearing" means the hearing to be held before the District Court to determine (a) whether this Settlement Agreement, including Exhibits, should be approved; (b) whether the Judgment should be entered; and (c) whether the applications for reimbursement to Settling Defendants of the Notice Expenses should be approved.

1.19    Settling Defendants. "Settling Defendants" means BHP Hawaii Inc.; Tesoro Hawaii Corporation; Tesoro Petroleum Corporation; and BHP Petroleum Americas Refining Inc.

1.20    Settling Parties. "Settling Parties" means Plaintiffs and Settling Defendants, severally and collectively.

## 2.    NO ADMISSION OF LIABILITY

Settling Defendants deny any wrongdoing or liability, and this Settlement Agreement and any statement herein shall not be construed or interpreted as an admission or evidence of any

6

liability by any Settling Defendant. Settling Defendants deny each of the claims alleged in the Lawsuit, and enter into this Settlement Agreement in order to avoid the further expenses and burden of protracted litigation. The settlement embodied in this Settlement Agreement and any Exhibits thereto is made to compromise and settle the Settled Claims without further litigation.

## 3.    RIGHTS AND DUTIES OF SETTLING PARTIES

3.1    Prompt implementation of this Settlement Agreement. It is the mutual intent of the Settling Parties to consummate this Settlement Agreement promptly. They agree to cooperate and to exercise their best efforts to the extent necessary to effectuate and implement all of its terms and conditions, as quickly as possible.

(a)    The Settling Parties shall promptly and jointly submit this Settlement Agreement, including the Exhibits hereto, to the District Court for preliminary approval and shall file a motion that requests the District Court to enter an Order of Preliminary Approval substantially in the form of Exhibit B hereto.

(b)    In proceedings before the District Court and before any appellate courts, if necessary, Plaintiffs and Settling Defendants shall affirmatively present their support for the Judgment approving this Settlement Agreement.

3.2    Publication of notice. After the District Court grants preliminary approval of the Settlement Agreement (including the Plan of Notice) and after the District Court enters the Order of Preliminary Approval, Plaintiffs shall cause to be published the Notice of Partial Settlement according to the Plan of Notice. Subject to approval by the District Court, Notice Expenses shall be paid initially by Settling Defendants, and then reimbursed to Settling Defendants by means of a deduction from the Settlement Amount.

11959\7_C404LDOC:358132

(a)    Plan of Notice.  The Notice of Partial Settlement attached as Exhibit A shall be placed as an advertisement in "The Honolulu Advertiser," "The Honolulu Star-Bulletin" (if it continues to be in operation), "The Hawaii Tribune Herald," "The Garden Island," "The West Hawaii Today," "The Maui News," and "USA Today."  The advertisements shall run in two consecutive weekday editions for the Hawaii newspapers and shall run in one weekday edition of the "USA Today."  The advertisements shall begin running within ten days after the entry of the Order of Preliminary Approval.  In addition, Plaintiffs will give notice on two consecutive Mondays as per the Hawaii State and County Public Notice Protocols at Plaintiff's expense.  A website will also be created by Plaintiffs' counsel at the expense of such counsel and for the purpose of providing access to this Settlement Agreement.

3.3    Requests for exclusion by Hawaii residents.  Any natural person residing in the State of Hawaii at any time from January 1, 1990, to the present may request to not participate in the settlement of the Lawsuit by submitting a timely request for exclusion in accordance with the Order of Preliminary Approval and the Notice of Partial Settlement.

(a)    An Opt-Out Claimant waives any and all claims to any part of the Settlement Amount and any benefits under this Settlement Agreement.

(b)    A natural person who submits a timely request for exclusion, but who thereafter revokes that request for exclusion in writing prior to or at the Settlement Hearing, will not be an Opt-Out Claimant.

(c)    Neither the Settling Parties nor their respective counsel shall in any way encourage any person to become an Opt-Out Claimant or discourage any such person from participating in this settlement.

8

(d)    The Settling Parties waive any right to appeal or collaterally attack the Judgment entered pursuant to this Settlement Agreement.

(e)    When counsel for Plaintiffs receives a request for exclusion from the settlement, such counsel shall deliver a copy of it to counsel for the Settling Defendants within one business day after receipt.

(f)    If more than 100 natural persons opt-out of this settlement and become Opt-Out Claimants, or if the Opt-Out Claims that could in the opinion of Settling Defendants reasonably be expected to be made by the Opt-Out Claimants exceed $1 million in the aggregate, the Settling Defendants have the right to cancel this agreement, with the Settling Defendants being required to exercise that right within 10 days after the date by which natural persons must submit their notice of becoming an Opt-Out Claimant.

3.4    Payment of Settlement Amount.  As soon as practicable after the Effective Date, the Settling Defendants shall pay the Settlement Amount, less any approved Notice Expenses, into the Registry of the District Court.  No distribution of the funds placed in the Registry of the District Court shall occur without an order from the District Court, less any approved notice expenses.  Of the $15 million included in the Settlement Amount, BHP Hawaii Inc. will pay a total of $12 million; and Tesoro Hawaii Corporation and Tesoro Petroleum Corporation (jointly and severally) will pay a combined total of $3 million.  Upon such payment by the Settling Defendants, their responsibility or liability, if any, for the use of the Settlement Amount is extinguished, and any liabilities relating to the use of the funds are the sole responsibility of the Plaintiffs.  Plaintiffs shall have sole responsibility for payment of taxes, if any, on the Settlement Amount and/or its earnings thereon while in the District Court's control.  Unless the District

9

Court otherwise orders, the Settlement Amount will not be distributed to anyone until the entire Lawsuit is concluded with respect to all Defendants.

(a)    It is the Settling Parties' intent that the Settlement Amount pursuant to this Settlement Agreement be established as and meet all requirements of a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1. The Settling Parties agree to take all reasonable steps necessary to establish and obtain District Court approval, if necessary, for the establishment of a Qualified Settlement Fund.

3.5    Entry of judgment dismissing Plaintiffs' Claims. The Settling Parties agree to the entry of a judgment dismissing with prejudice the Settling Defendants, contemporaneous with the District Court's final approval of this Settlement Agreement. The District Court shall be requested to consider at a hearing separate and apart from any hearing related to this Settlement Agreement any motions or applications concerning (i) attorneys' fees, costs, and expenses and (ii) the allocation of the settlement funds. Any objections, disputes, appeals or controversies relating to or arising from such matters shall not delay or impact the finality of the District Court's orders concerning the fairness and reasonableness of this Settlement Agreement and the releases herein. The Settling Parties agree to request a form of Judgment substantially in the form of Exhibit C. The Settling Parties agree that the Judgment must be a final judgment within the meaning of Fed. R. Civ. P. 54(b). The Judgment shall extinguish any liability of Settling Defendants with respect to the claims made in the Lawsuit and with respect to Settled Claims whether asserted against Settling Defendants or against Non-Settling Defendants.

3.6    Contribution and indemnity bar. It is the intent of this agreement that Settling Defendants' liability, if any, arising from the Released Claims be forever extinguished whether

such liability, if any, is asserted directly by Plaintiffs or indirectly by Non-Settling Defendants by way of claim for contribution, whether designated as a claim for contribution or for partial equitable indemnity.  In further consideration of this Settlement Agreement, to the extent that Non-Settling Defendants have any such rights to assert such claims against Settling Defendants arising from the claims by Plaintiffs against Non-Settling Defendants, Plaintiffs agree that this Settlement Agreement shall reduce all damages recoverable on behalf of Plaintiffs against all other joint tortfeasors, jointly and/or severally liable for any claims within the definition of Settled Claims or acts alleged in the lawsuit, by the sum of FIFTEEN MILLION DOLLARS ($15,000,000.00), or by the pro rata share or the percentage of liability of Settling Defendants if greater than the sum of FIFTEEN MILLION DOLLARS, in accordance with H.R.S. § 663-11 through § 663-17, as amended.

Any provision herein for reduction of damages on a pro rata basis (in addition to the $15,000,000 settlement amount) shall be in effect only if it is determined by the Court, or by any appellate or reviewing court, that contribution or partial equitable indemnity applies to the claims brought by Plaintiffs.

It is intended, agreed and understood by Plaintiffs and Settling Defendants that this paragraph 3.6 shall be interpreted to reduce Plaintiffs' total damages against the Non-Settling Defendants in the Lawsuit by the minimum amount necessary to release Settling Defendants from any contribution or partial equitable indemnity claims, asserted or that could be asserted, against Settling Defendants.

3.7     Continuing jurisdiction.  The Settling Parties agree that (i) the Judgment shall provide that, notwithstanding the entry of the Judgment, the District Court shall retain continuing

11

jurisdiction over the Settlement Amount and the Settling Parties; (ii) the District Court's continuing jurisdiction shall include jurisdiction to order injunctive relief for the purposes of enforcing, implementing, administering, construing and interpreting this Settlement Agreement; and (iii) entry of Judgment substantially in the form attached as Exhibit C is a condition of this settlement.

3.8    Release of Settled Claims.    As of the Effective Date, Plaintiffs on behalf of themselves and their predecessors, successors, assigns and legal representatives (i) release Settling Defendants from liability with respect to the Settled Claims, and (ii) release Released Parties from liability with respect to the Settled Claims.    Likewise, as of the Effective Date, Settling Defendants, on behalf of themselves and their predecessors, successors, assigns, and legal representatives release the State of Hawaii and its past and present Attorneys General and the agents, employees, representatives and attorneys of the Attorney General's office from liability with respect to the Settled Claims.

It is expressly understood that this settlement is to take place prior to the completion of discovery, and that the releases herein apply to all such Settled Claims, whether known or unknown, and regardless of whether after-discovered facts, if known, would have altered the decision to enter into this agreement.

(a)    All natural persons residing in the State of Hawaii at any time from January 1, 1990, to the present who do not become Opt-Out Claimants shall be deemed to release Settling Defendants from liability with respect to all Settled Claims and to release Released Parties with respect to all Settled Claims.

12                                    11959\7_C404!.DOC:358132

## 4.    EFFECT OF DISAPPROVAL

4.1    In the event that (a) the District Court does not enter the Judgment in accord with this Settlement Agreement, or (b) such Judgment is reversed or vacated on appeal or on other review, or (c) the Effective Date does not occur for any reason, or (d) the District Court does not approve the "Notice of Partial Settlement" or a notice substantially similar to the Notice of Partial Settlement, then

> (i)    this Settlement Agreement shall terminate,
>
> (ii)    any Judgment entered pursuant to this Settlement Agreement shall be vacated,
>
> (iii)    the Lawsuit against Settling Defendants shall proceed as if this Settlement Agreement had never been executed, and
>
> (iv)    this Settlement Agreement may not be used in this Lawsuit or otherwise for any purpose, including but not limited to any evidentiary purpose.

## 5.    ATTORNEYS' FEES AND EXPENSES

5.1    Plaintiffs may apply to the District Court for (i) an award of attorneys' fees and (ii) reimbursement of costs and those expenses incurred in prosecuting this Lawsuit.  Subject to approval of the District Court, such award and reimbursement shall be paid out of the Settlement Amount.  Any application by Plaintiffs for attorneys' fees, costs, and expenses, and any disputes or controversies arising therefrom shall be considered separate and apart from the District Court's consideration of the fairness and reasonableness of this Settlement Agreement.

5.2    Settling Defendants may apply to the District Court for reimbursement of the reasonable Notice Expenses advanced or incurred by Settling Defendants.    Any such reimbursement shall be paid by means of a deduction from the Settlement Amount.

11959\7_C404!.DOC:358132

6. **PUBLIC ANNOUNCEMENTS**

The parties shall issue the Press Release attached as Exhibit D.

7. **OTHER PROVISIONS**

7.1     Each of the Settling Parties has relied upon his or its own counsel's advice in entering into this Settlement Agreement and not upon the advice of any other party's counsel.

7.2     All of the Exhibits to this Settlement Agreement are material and integral parts hereof, and they are fully incorporated herein by reference.

7.3     This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of the Settling Parties or their successors in interest.

7.4     This Settlement Agreement may be executed in multiple counterparts.

7.5     This Settlement Agreement and the Exhibits hereto constitute the entire agreement between Plaintiffs on the one hand and Settling Defendants on the other hand and supersedes any prior agreement or communication, whether oral or written, with respect to the subject matter hereof.

7.6     This Settlement Agreement (including the Exhibits hereto) and all documents relating hereto shall be construed and interpreted under federal law where applicable and, otherwise, under the internal laws of the State of Hawaii without regard to conflict of law principles.

7.7     Except as otherwise provided in this Settlement Agreement or as provided in any separate agreement between or among the Settling Defendants, each Settling Party shall bear its own costs including taxable court costs.

14

7.8     The Settling Defendants will continue to assist the Attorney General in discovery, as appropriate.

7.9     The Settling Parties intend that the Settlement Agreement will forever end the Settling Defendants' involvement in the Lawsuit as parties to the Lawsuit. Plaintiffs' outside counsel will not cooperate or assist anyone in an investigation of facts or allegations similar to those alleged in the Lawsuit with respect to any claims based on conduct in Hawaii or with anyone who at any time files a suit, alleging facts similar to the allegations contained in the Lawsuit, in state or federal court in Hawaii or elsewhere, based on conduct in Hawaii. Documents or information produced to the State of Hawaii, to Plaintiffs or to Plaintiffs' counsel shall continue to be governed by the Confidentiality Order in the Lawsuit and applicable Hawaii statutes.

7.10    The undersigned each represents that he or she is fully authorized to execute this Settlement Agreement on behalf of the Settling Party(ies) for which he or she signs.

_____     Date: _Nov. 19, 1999_
Earl Anzai, Attorney General for the State of Hawaii

_____     Date: _Nov 19, 1999_
Spencer Hosie, Special Deputy Attorney
General for the State of Hawaii

15

Received Nov 18 00:21PM (17:16) on RightFAX line [4] for 'RE05170'
11/18/00   10:28 FAX

_(signature)_

On Behalf of Tesoro Petroleum Corporation

Date: __11/22/99__

Name   WILLIAM T. VAN KLEEF

Title   EXECUTIVE VICE PRESIDENT
       & CHIEF OPERATING OFFICER

_____

On Behalf of Tesoro Hawaii Corporation

Date: _____

Name

Title

_____

On Behalf of BHP Hawaii, Inc.

Date: _____

Name

Title

16

11/22/99   14:21 FAX 415 296 9802        HOSIE FROST & LARGE        ☒002

_____    Date: _____

On Behalf of Tesoro Petroleum Corporation

Name

Title


_____    Date: _____11/22/99_____

On Behalf of Tesoro Hawaii Corporation

Name    Faye W. Kurren

Title    President


_____    Date: _____

On Behalf of BHP Hawaii, Inc.

Name

Title


16                                    1195917_C104!.DOC:358132

_____    Date: _____
On Behalf of Tesoro Petroleum Corporation


Name


Title




_____    Date: _____
On Behalf of Tesoro Hawaii Corporation




Name


Title



_____    Date: _22 November, 1999_
On Behalf of BHP Hawaii, Inc.


Name   _JAMES S. LYONS_


Title   _VICE- PRESIDENT_

20-NOV-1999  14:33

HOSIE FROST & LARGE       415 296 8802   12:53   11/22/99