IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| EARL I. ANZAI, ATTORNEY GENERAL FOR THE STATE OF HAWAII, as *Parens Patriae* for the Natural Persons Residing in Hawaii, and on behalf of the State of Hawaii, its Political Subdivisions and Governmental Agencies,<br><br>Plaintiff,<br><br>vs.<br><br>CHEVRON CORPORATION; CHEVRON U.S.A., INC.; TESORO HAWAII CORPORATION, as Successor-In-Interest to BHP PETROLEUM AMERICAS REFINING, INC.; BHP HAWAII INC.; SHELL OIL PRODUCTS COMPANY; TEXACO, INC.; TEXACO REFINING AND MARKETING, INC.; TESORO PETROLEUM CORPORATION; TESORO HAWAII CORPORATION; TOSCO CORPORATION; UNION OIL COMPANY OF CALIFORNIA; and UNOCAL CORPORATION,<br><br>Defendants. | Civil No. 98-00792 MWJS-WRP<br><br>ORDER DISQUALIFYING THE UNDERSIGNED JUDGE |

**ORDER DISQUALIFYING THE UNDERSIGNED JUDGE**

The Attorney General for the State of Hawaiʻi (the "Attorney General") brought this *parens patriae* price-fixing and deceptive marketing lawsuit in October 1998 on behalf of the State, its political subdivisions and agencies, and every Hawaiʻi resident.

In a pair of settlement agreements signed in November 1999 and March 2002, the Attorney General settled the lawsuit for a total of $35 million, and this court incorporated the agreements into its final judgment and retained jurisdiction to enforce them.

Earlier this year, several of the defendant oil and gas companies—the "Movants" here—filed motions contending that the settlement agreements contain a release of any deceptive marketing claim related to the sale or marketing of a petroleum product, including claims unrelated to the conduct alleged in this lawsuit. In light of this release, and this court's retention of jurisdiction to enforce it, Movants argue that the court should enjoin the State—along with two counties within the State, and a county agency—to dismiss climate-related lawsuits currently pending in state court.

The court scheduled a hearing on the motions to enforce on August 26, 2026. Dkt. No. 1307. But in preparing for that hearing, the undersigned district judge identified a possible conflict of interest. The undersigned, the undersigned's spouse, and numerous other close family members were residents of Hawaiʻi in the 1990s. Given that this is a *parens patriae* lawsuit brought (and ultimately settled) on behalf of Hawaiʻi residents, the undersigned and the undersigned's loved ones—none of whom opted out of the settlement agreements over two decades ago—might arguably be considered "parties" to this case. And since time immemorial, courts with historical roots in English practice have recognized that "it is impossible that one should be Judge

and party." John V. Orth, Due Process of Law: A Brief History 15 (2003) (quoting Sir John Holt, C.J. (1701)); *see also id.* at 16–17 ("The problem of a man claiming jurisdiction in his own case appears in the very first book on English law ever printed, a book so old that it was written in 'Law French,' the vernacular of English courts for three centuries following the Norman Conquest in 1066.").

That hoary principle is today reflected in Canon 3C(1) of the Code of Conduct for United States Judges, which requires a judge to "disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Canon 3C(1). This includes instances in which "the judge knows that the judge . . . or the judge's spouse . . . has a financial interest in the subject matter in controversy . . . or any other interest that could be affected substantially by the outcome of the proceeding." Canon 3C(1)(c). It also includes situations in which "the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such person is . . . known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." Canon 3D(1)(d).

The court detailed this possible conflict at the August 26 hearing and invited any interested party to submit a supplemental brief addressing the issue by September 4, 2026. The Attorney General and Movants availed themselves of that opportunity. Dkt. Nos. 1309, 1310. Each of these parties contends that it is appropriate for the undersigned to resolve the pending motions.

As Movants acknowledge, however, there appears to be no guidance directly on point. *See id.* at PageID.5176 ("Movants have searched diligently and found no authority holding that a *parens patriae* action brought by a State on behalf of the general public makes individual members of the general public a 'party' to the proceeding."). Given the importance and apparent novelty of the question, on August 25, 2026, the undersigned solicited an opinion from the Committee on Codes of Conduct of the Judicial Conference of the United States. *See generally In re Bernard*, 31 F.3d 842 (9th Cir. 1994) (Kozinski, J.) (describing the process of soliciting an opinion from the Committee). And upon receiving them, the undersigned also forwarded the parties' supplemental submissions on the issue to the Committee for its consideration.

On September 9, 2026, the Committee responded to that inquiry. That letter, which is appended to this order, concludes that the undersigned and the undersigned's spouse "have 'a financial interest in the subject matter' of the action brought by the Attorney General now before [the undersigned] on proceedings to enforce the settlement agreements." Letter at 4. The letter further concludes that the undersigned, the undersigned's spouse, and the undersigned's covered relatives (and their spouses) who resided in Hawaiʻi "at the time the action was litigated and settled but who did not opt [out] of the settlement have interests 'that could be substantially affected by the outcome of the proceeding.'" *Id.* The Committee is careful not to opine on "what recusal obligations, if any, a judge might have in a typical *parens patriae* action brought

by the state in which that judge resides." *Id.* Its opinion is limited to the specific authority on which the Attorney General relied on this lawsuit, namely 15 U.S.C. § 15c. *Id.*

Having carefully considered the issue, the court finds the Committee's letter persuasive and therefore adopts its reasoning. And since a party cannot waive conflicts of this nature, *see* Canon 3D, the court cannot rely on the parties' view that disqualification is not required.

To be sure, the Committee's letter notes that a judge in the present circumstances might still avoid the need to disqualify by "tak[ing] action equivalent to opting out *after* the opt-out period expires so long as the action occurs promptly upon assignment and discovery of the potential conflict." *Id.* at 5 (cleaned up). But that is not a feasible option for the undersigned because, as the Committee explains, "such steps must be taken before the judge has invested 'substantial time' in the matter." *Id.* The undersigned devoted substantial time to preparing for the August 26 hearing—indeed, it was during those substantial preparations that the undersigned identified the conflict. What is more, the Committee explains that, in this case, "waivers would be required not only for [the undersigned] but also for [the undersigned's] spouse and any covered relatives (and spouses) who resided in Hawaii at the time of the litigation and settlements." *Id.* Given the number of individuals who fall within the scope of that

obligation, it would not be feasible for the undersigned to attempt to obtain waivers from all such individuals.

This conflict almost certainly extends, in one way or another, to all other district judges in the District of Hawaiʻi. Given that circumstance, the Committee notes that "whether [the undersigned] may hear the action under the rule of necessity or whether the case should be assigned to a judge from another district are . . . questions beyond the scope of [the Committee's] guidance." *Id.* The undersigned has carefully considered this question, but has concluded that even if all other district judges in this district indeed must disqualify, that is not a sufficient reason to invoke the rule of necessity under the circumstances. If needed, a judge from outside the district may be appointed as a visiting judge. That has been done in a number of other cases in the past, and can be done expeditiously here.

* * *

For the foregoing reasons, the undersigned judge DISQUALIFIES himself from any and all further proceedings in this case. This matter is returned to the Clerk's Office for reassignment.

//

//

//

//

IT IS SO ORDERED.

DATED: September 22, 2026, at Honolulu, Hawai‘i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge